

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

Peter R. Kramer
48 Cheney Dr.
Storrs, CT 06268

OCT 2 5 2004

In re Peter R. Kramer

: DECISION ON
: PETITION FOR REGRADE
: UNDER 37 CFR 10.7(c)

## MEMORANDUM AND ORDER

Peter R. Kramer (petitioner) petitions for regrading petitioner's answers to question 31 of the morning section and questions 9, 33 and 35 of the afternoon section of the Registration Examination held on October 15, 2003. The petition is <u>denied</u> to the extent petitioner seeks a passing grade on the Registration Examination.

## BACKGROUND

An applicant for registration to practice before the United States Patent and Trademark Office (USPTO) in patent cases must achieve a passing grade of 70 in both the morning and afternoon sections of the Registration Examination. Petitioner scored 68. On February 26, 2004, petitioner requested regrading, arguing that the model answers were incorrect.

As indicated in the instructions for requesting regrading of the Examination, in order to expedite a petitioner's appeal rights, a single final agency decision will be made regarding each request for regrade. The decision will be reviewable under 35 U.S.C. § 32. The Director of the USPTO, pursuant to 35 U.S.C. § 2(b)(2)(D) and

In re Peter R. Kramer                                                                                          Page 2

37 CFR 10.2 and 10.7, has delegated the authority to decide requests for regrade to the Director of Patent Legal Administration.

## OPINION

Under 37 CFR 10.7(c), petitioner must establish any errors that occurred in the grading of the Examination. The directions state: " No points will be awarded for incorrect answers or unanswered questions." The burden is on petitioners to show that their chosen answers are the most correct answers.

The directions to the morning and afternoon sections state in part:

Do not assume any additional facts not presented in the questions. The most correct answer is the policy, practice, and procedure which must, shall, or should be followed in accordance with the patent laws, rules and procedures as related in the Manual of Patent Examining Procedure (MPEP). Each question has only one most correct answer. Where choices (A) through (D) are correct and choice (E) is "All of the above," the last choice (E) will be the most correct answer and the only answer that will be accepted. Where two or more choices are correct, the most correct answer is the answer that refers to each and every one of the correct choices. Where a question includes a statement with one or more blanks or ends with a colon, select the answer from the choices given to complete the statement that would make the statement true. If it is determined by the USPTO that there is more than one most correct answer to a question, each most correct answer will be accepted, but only one point will be given for the question. The presence of multiple most correct answers does not, in itself, render the question ambiguous. Unless otherwise explicitly stated, all references to patents or applications are to be understood as being U.S. patents or regular (non-provisional) utility applications for utility

In re Peter R. Kramer                                                                                                    Page 3

inventions only, as opposed to plant or design applications for plant and design inventions. Where the terms "USPTO" or "Office" are used in this examination, they mean the United States Patent and Trademark Office.

Petitioner has presented various arguments attacking the validity of the model answers. All of petitioner's arguments have been fully considered. Each question in the Examination is worth one point.

Petitioner has been awarded an additional point for afternoon question 9. Accordingly, petitioner has been granted an additional point on the Examination. No credit has been awarded for morning question 31 and afternoon questions 33 and 35. Petitioner's arguments for these questions are addressed individually below.

In re Peter R. Kramer                                                                                                  Page 4

Morning question 31 reads as follows.
31.    Reexamination has been ordered following receipt of a request for reexamination of U.S. Patent X, filed by the patentee. Patent X contains independent claims 1 through 4, each directed to a hydrocyclone separator apparatus. They are the only claims that were ever presented during prosecution of the application that matured into Patent X. In the first Office action during reexamination, claims 1 through 4 are rejected as being obvious under 35 USC 103 over U.S. Patent Z. The apparatus is used for separating material, including fibers suspended in a liquid suspension, into a light fraction containing the fibers, and a heavy fraction containing rejects. Assume there are no issues under 35 USC 102, 103, or 112, and that any dependent claim is properly dependent. Recommend which of the following claims, if any, would be subject to rejection under 35 USC 305 for improperly enlarging the scope of the original claim in accordance with the patent laws, rules and procedures as related in the MPEP.

(A)    Claim 5.    A hydrocyclone separator apparatus according to claim 4, wherein said blades are configured in the form of generally plane surfaces curved in one plane only.
(B)    Claim 5.    A hydrocyclone separator apparatus according to claim 4, wherein the outlet duct is in the form of two frustro-conical portions joined at their narrow ends.
(C)    Claim 5.    A method of separating material including fibers suspended in a liquid suspension comprising the steps of separating the material into a light fraction containing the fibers and a heavy fraction containing rejects, and converting the light fraction into a pulp and paper stock suspension.
(D)    Claim 5.    A hydrocyclone separator apparatus according to claim 4, wherein the separator chamber is conical in shape having at the narrow end an outlet for the heavy fraction and at its wide end an outlet for the light fraction.
(E)    None of the above.


31. MODEL ANSWER: (C). 35 U.S.C. § 305; MPEP §§ 2258 and 1412.03. MPEP § 2258, under the heading "Claims In Proceeding Must Not Enlarge Scope Of The Claims Of The Patent," states "[w]here new or amended claims are presented . . . the claims of the reexamination proceeding should be examined under 35 U.S.C. 305, to determine whether they enlarge the scope of the original claims. 35 U.S.C. 305 states that 'no proposed amended or new claim enlarging the scope of the claims of the patent will be permitted in a reexamination proceeding...'." Under the further subheading "Criteria for Enlargement of the Scope of the Claims," MPEP § 2258 states "A claim presented in a reexamination proceeding 'enlarges the scope' of the claims of the patent being reexamined where the claim is broader than each and every claim of the patent. See MPEP § 1412.03 for guidance as to when the presented claim is considered to be a broadening claim as compared with the claims of the patent, i.e., what is broadening and what is not. If a claim is considered to be a broadening claim for purposes of reissue, it is likewise considered to be a broadening claim in reexamination." MPEP § 1412.03, under the heading "New Category of Invention Added In Reissue – Broadening," states "[t]he addition of process claims as a new category of invention to be claimed in the patent (i.e., where there were no method claims present in the original patent) is generally considered as being a broadening of the invention. See Ex parte Wikdahl, 10 USPQ2d 1546, 1549 (Bd. Pat. App. &

In re Peter R. Kramer                                                                                                Page 5

Inter. 1989)." MPEP 2258, under the further subheading "Rejection of Claims Where There Is Enlargement," states "[a]ny claim in a reexamination proceeding which enlarges the scope of the claims of the patent should be rejected under 35 U.S.C. 305." Since no claims drawn to a method were ever presented during prosecution of Patent X (claims 1 through 4 "are the only claims that were ever presented during prosecution of the application that matured into Patent X"), the claim recited in (C) is not directed to "the invention as claimed." (A), (B), and (D) are all incorrect because each of their claims are directed to a hydrocyclone separator apparatus, i.e., "the invention as claimed," and they do not enlarge the scope of the claims in Patent X. (E) is an incorrect answer because (C) is the correct answer.

Petitioner argues that answer (E) is correct. The explanation of the model answer cites the general rule that addition of process claims as a new category of invention in a reexamination is generally an impermissible broadening of the invention. Petitioner contends that the fact pattern isn't specific enough to determine whether an exception to that rule applies here. Petitioner's arguments have been fully considered but are not persuasive. In order for an exception to the general rule to apply, it must be inconceivable that the method of model answer (C) be performed without infringing the patented apparatus claims. That is not the case here, however, as method claim 5 is broadly recited in model answer (C). Even though there is no reason to assume that the apparatus claims of the fact pattern were drafted with "means for" functional language, petitioner cites *In re Freeman*, 197 USPQ 464 (CCPA 1978) to show that an apparatus claim expressed in "means for" functional terms may be indistinguishable from a method claim directed to the steps performed by the "means." However, the issue in *In re Freeman* was whether both the method and apparatus claims were directed to statutory subject matter under 35 U.S.C. § 101 in a situation where the apparatus claims recited "means for" every step recited in the method claims. Morning question number 31 concerns the scope of claims under reexamination, where issues under § 101 may not even be considered. Accordingly, model answer (C) is correct and petitioner's answer (E) is incorrect.

      No error in grading has been shown. Petitioner's request for credit on this question is denied.


Afternoon question 33 reads as follows.
33.    A registered practitioner files an application on the client's discovery that adding silica to a known plastic composition containing the flame retardant, X, results in increased flame retardance. The application claims a composition comprising the known plastic composition containing X and also silica. The primary examiner rejects the claim on the basis that applicant admits that X was a known flame retardant and that there is no evidence of improved flame retardance. In accordance with the patent laws, rules and procedures as related in the MPEP, a proper reply could include which of the following argument(s) to rebut and overcome the rejection?

(A)    The examiner cannot rely on admitted prior art.
(B)    The examiner has not shown that the prior art appreciated applicant's discovery of silica to be a flame retardant.

(C)   The examiner has not made out a prima facie case of obviousness due to lack of motivation in the prior art or in the knowledge generally available to one of ordinary skill in the art for adding silica to the known plastic composition.
(D)   The applicant does not have to show an improved or unexpected result for the claimed invention.
(E)   (C) and (D).

33. MODEL ANSWER: (E) is the most correct answer. MPEP §§ 2141, 2142, 2143 and 2143.01. Regarding (C) MPEP 2142 under the heading "ESTABLISHING A PRIMA FACIE CASE OF OBVIOUSNESS," states "To establish a prima facie case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or to combine reference teachings. Second, there must be a reasonable expectation of success. Finally, the prior art reference (or references when combined) must teach or suggest all the claim limitations. The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, and not based on applicant's disclosure. In re Vaeck, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991). See MPEP § 2143 for decisions pertinent to each of these criteria." MPEP § 2143 states the same criteria, and further "The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, not in applicant's disclosure. In re Vaeck, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991)." Regarding motivation, MPEP 2143.01 states "Obviousness can only be established by combining or modifying the teachings of the prior art to produce the claimed invention where there is some teaching, suggestion, or motivation to do so found either explicitly or implicitly in the references themselves or in the knowledge generally available to one of ordinary skill in the art. 'The test for an implicit showing is what the combined teachings, knowledge of one of ordinary skill in the art, and the nature of the problem to be solved as a whole would have suggested to those of ordinary skill in the art.' In re Kotzab, 217 F.3d 1365, 1370, 55 USPQ2d 1313, 1317 (Fed. Cir. 2000). See also In re Fine, 837 F.2d 1071, 5 USPQ2d 1596 (Fed. Cir. 1988); In re Jones, 958 F.2d 347, 21 USPQ2d 1941 (Fed. Cir. 1992)." The examiner has not shown any suggestion or motivation, either in the prior art or in the knowledge generally available to one of ordinary skill in the art, to modify the known plastic composition. Regarding (D) MPEP § 2142 states "The examiner bears the initial burden of factually supporting any prima facie conclusion of obviousness. If the examiner does not produce a prima facie case, the applicant is under no obligation to submit evidence of nonobviousness. If, however, the examiner does produce a prima facie case, the burden of coming forward with evidence or arguments shifts to the applicant who may submit additional evidence of nonobviousness, such as comparative test data showing that the claimed invention possesses improved properties not expected by the prior art." (E) is the most correct answer since it addresses both issues raised by the examiner, obviousness and evidence of improved results. (C) alone is incorrect inasmuch as it does not address the examiner's comments regarding improved results. (D) alone incorrect because it does not address the examiner's burden of presenting a prima facie case of obviousness. (A) is not correct. MPEP § 2129. Admissions by applicant can be used as prior art. (B) is not correct. MPEP § 2144. It is not necessary for a finding of obviousness that prior art be combined for the same advantage or result as applicant.

In re Peter R. Kramer                                                                                      Page 7

Model answer (E) recognizes the arguments of both answers (C) and (D) as arguments to be included in a proper reply. Petitioner contends that the answer (D) argument is improper, and that answer (C) is the only argument to be included in a proper reply. Petitioner's arguments have been fully considered but are not persuasive. Contrary to petitioner's contention, because answer (C) states a proper argument, it must be the case that answer (D) also states a proper argument. Because no prima facie case of obviousness was made by the examiner (the answer (C) argument), the applicant is not required to submit evidence of nonobviousness (the answer (D) argument). Petitioner asserts that it is not clear that the examiner's rejection was an obviousness rejection under 35 U.S.C. § 103, because "[P]rior art teaching X as a flame retardant in compositions could be considered 35 USC 102 references." That is incorrect. In section 706.02, under the heading "DISTINCTION BETWEEN 35 U.S.C. 102 AND 103", the MPEP explains:

> For anticipation under 35 U.S.C. 102, the reference must teach every aspect of the claimed invention either explicitly or impliedly. Any feature not directly taught must be inherently present. Whereas, in a rejection based on 35 U.S.C. 103, the reference teachings must somehow be modified in order to meet the claims.

Accordingly, the "prior art X teaching" could not be used under 35 U.S.C. § 102. Petitioner's choice of answer (C) was an apparent recognition that the examiner's rejection was an obviousness rejection under § 103. Further, if such a rejection was mistakenly made under § 102, the argument of answer (D) would still be correct as not even a prima facie case of obviousness was made. Accordingly, model answer (E) is correct and petitioner's answer (C) is incorrect.

No error in grading has been shown. Petitioner's request for credit on this question is denied.

Afternoon question 35 reads as follows.
35.    The sole claim in an application filed by A and having an effective filing date of June 5, 2002, recites an electrical signal amplifier comprising a plurality of germanium transistors connected together in a particular configuration. The claim is rejected under 35 USC 103(a) as being obviousness over a primary nonpatent reference publication (Reference P) in view of a secondary nonpatent reference publication (Reference S). Reference P has an effective date of April 3, 2002, and names A and B as the authors. Reference S has an effective date of December 10, 2001, and names C as the sole author. Reference P discloses an electrical signal amplifier including a plurality of silicon transistors connected together in the same configuration as that set forth in the claim. Reference S discloses a signal amplifier employing germanium transistors connected in a configuration different from the claimed configuration. The applicant does not deny that the references render the claimed subject matter prima facie obvious. Which, if any, of the declarations under 37 CFR 1.132 set forth below should be sufficient under the patent laws, rules and procedures as related in the MPEP to overcome the rejection?

(A) An uncontradicted declaration by A asserting that the subject matter relied on by the examiner in reference P constitutes A's sole invention, with the result that Reference P is not available as prior art against the claim.
(B) A declaration by A asserting that "the claimed amplifier has satisfied a long-felt need in the art."
(C) A declaration by A and accompanying copies of competitors' advertisements which conclusively show that those competitors have exactly copied appellant's commercial embodiment of the claimed amplifier.
(D) A declaration by A and supporting documentation establishing that ever since the filing date of A's application, sales of the commercial embodiment of A's claimed amplifier have consistently constituted ninety percent or more of the relevant signal amplifier market in the United States.
(E) None of the above.

35. MODEL ANSWER: (A) is the correct answer. See MPEP § 716.10, which states "Under certain circumstances an affidavit or declaration may be submitted which attempts to attribute an activity, a reference or part of a reference to the applicant. If successful, the activity or the reference is no longer applicable. . . . An uncontradicted 'unequivocal statement' from the applicant regarding the subject matter disclosed in an article, patent, or published application will be accepted as establishing inventorship. In re DeBaun, 687 F.2d 459, 463, 214 USPQ 933, 936 (CCPA 1982)." (B) is insufficient in the absence of "objective evidence that an art recognized problem existed in the art for a long period of time without solution." MPEP § 716.04 under heading "THE CLAIMED INVENTION MUST SATISFY A LONG☐FELT NEED WHICH WAS RECOGNIZED, PERSISTENT, AND NOT SOLVED BY OTHERS." Regarding (C), see MPEP § 716.06: "[M]ore than the mere fact of copying is necessary to make that action significant because copying may be attributable to other factors such as a lack of concern for patent property or contempt for the patentees ability to enforce the patent. Cable Electric Products, Inc. v. Genmark, Inc., 770 F.2d 1015, 226 USPQ 881 (Fed. Cir. 1985)." (D) is insufficient in the absence of evidence demonstrating that the sales are attributable to the technical merits of the invention rather than to other factors, such as "heavy promotion or advertising, shift in advertising, consumption by purchasers normally tied to applicant or assignee, or other business events extraneous to the merits of the claimed invention, etc. In re Mageli, 470 F.2d 1380, 176 USPQ 305 (CCPA 1973) (conclusory statements or opinions that increased sales were due to the merits of the invention are entitled to little weight); In re Noznick, 478 F.2d 1260, 178 USPQ 43 (CCPA 1973)." MPEP § 716.03(b) under heading "COMMERCIAL SUCCESS MUST BE DERIVED FROM THE CLAIMED INVENTION." (E) is incorrect because (A) is correct.

Petitioner acknowledges that model answer (A) is correct, but argues that answer (C) is also correct. Petitioner's arguments have been fully considered but are not persuasive. Petitioner contends that answer (C) is "at least equally good and possibly superior" to model answer (A), because copying by competitors is compelling evidence of nonobviousness. In support, petitioner cites *Cable Electronic Products v. Genmark, Inc.*, 226 USPQ 881 (Fed. Cir. 1985). In *Cable v. Genmark*, the patent at issue was held to be invalid despite evidence of copying. In this regard, the court stated "[I]t is our conclusion that more than the mere fact of copying by an

In re Peter R. Kramer                                                                                    Page 9

accused infringer is needed to make that action significant to a determination of the obviousness issue." The court further explained:
> Rather than supporting a conclusion of obviousness, copying could have occurred out of a general lack of concern for patent property, in which case it weighs neither for nor against the nonobviousness of a specific patent. It may have occurred out of contempt for the specific patent in question, only arguably demonstrating obviousness, or for the ability or willingness of the patentee financially or otherwise to enforce the patent right, which would call for deeper inquiry. Even widespread copying could weigh toward opposite conclusions, depending on the attitudes existing toward patent property and the accepted practices in the industry in question. It is simplistic to assert that copying per se should bolster the validity of a patent.

The declaration of model answer (A) is clearly the best choice, because it proves that Reference P is not even available as prior art to begin with. That would clearly be sufficient to overcome the obviousness rejection. Accordingly, model answer (A) is correct and petitioner's answer (C) is incorrect.

No error in grading has been shown. Petitioner's request for credit on this question is denied.