February 20, 2004

Peter R. Kramer
48 Cheney Dr.
Storrs, CT 06268

Comp ID #:  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

Harry I. Moatz
Director of Enrollment and Discipline
Mail Stop OED
United States Patent and Trademark Office
P. O. Box 1450
Alexandria, VA  22313-1450

Director of Enrollment and Discipline:

My score on the October 15, 2003 registration exam was 68 and I am requesting a
regrade pursuant to 37 CFR 10.7(c).  The questions that I would like to have re-graded
are AM session question 31, and PM session questions 9, 33, and 35.

AM #31

Accepted answer C
My answer E

The question as written requires the selection of a claim that (emphasis added) **"would be
subject** to rejection under 35 USC 305 for improperly enlarging the scope of the original
claim."

(E) "None of the above," is the single most correct answer.  The question does not ask,
which is the most likely to be subject to rejection under 35 USC 305, but which would be
subject to rejection under 35  USC 305.  All reexamination claims are "subject" to the
statute, but "subject to rejection" clearly implies that the correct answer would be one
that actually enlarges the scope of the claims.  If (E) "None of the above," were not
included as a choice, then one might conclude that C is the most likely to expand the
scope of the claims and it would be the best answer, in part by default.  However, that is
not the context of the question nor is it the question that was actually presented.  Whether
a specific reexamination claim expands the scope of an invention is determined in
particular, not in general.  Thus "where there are no method claims present …is generally
considered as being a broadening of the invention" is not a determination that this
particular method claim enlarges the scope of the particular original "hydrocyclone
separator" invention.  It is quite possible that a method claim may be indistinguishable
from an invention that was originally described with apparatus claims.  In re Freeman

2

573 F.2d 1237, 197 USPQ 464. Without recitation of all of the claims 1-4 it is not possible to ascertain that (C) actually enlarges the scope of the invention, or even if the claim in (C) conceivably would enlarge the scope. It is not possible to judge a thing as possessing a property that is conceivable in relation to another thing if that other thing is unknown. Furthermore, since claims 1-3 might include "means for" language it may be necessary to include text from the specification to determine the scope of claims 1-3 thus E is the best answer given the information that is provided.

> Tillotston Ltd. v. Walbro Corp., 831 F.2d 1033, 1037 n.2, 4 USPQ2d 1450, 1453 n.2 (Fed. Cir. 1987) (internal citations omitted). Stated another way, a "claim is enlarged if it includes within its scope any subject matter that would not have infringed the original patent. In re Freeman, 30 F.3d at 1464.

> In re Freeman 573 F.2d 1237, 197 USPQ 464: Though a claim expressed in "means for" (functional) terms is said to be an apparatus claim, the subject matter as a whole of that claim may be indistinguishable from that of a method claim drawn to the steps performed by the "means."

PM #33

Accepted answer E
My answer C

My answer was C. B or C would each be correct. It is not explicitly stated which statute is the basis for rejection, and since there is a rejection rather than an objection the rejection must be based upon statute. Prior art teaching X as a flame retardant in compositions could be considered 35 USC 102 references. Inclusion of silica if it does not materially affect the flame retardant properties of a composition would be subject to a 102 rejection. Answer D is therefore incorrect since it would not overcome such a rejection, and indeed showing of an improved result might be required. B would overcome a 102 rejection based upon the examiner's comment. C would overcome a 103 rejection since it would abolish the question of *prima facie* obviousness thus rendering D moot, and C is clearly directed to a 35 USC 103 rejection. However since it is not clear that D is in reply to a 102 or 103 rejection, D is clearly not a correct answer. A rejection based upon 35 USC would always include enumeration of the specific statutes upon which a rejection is based precisely to avoid this type of ambiguity. Thus the question is defective and it is the defect in this question that specifically casts doubt on D rendering it as less than a good choice, and invalidating E as well.

E is also incorrect insofar as semantics are concerned. If it were stated that the rejection is solely a 103 obviousness issue, an answer such as (E) "C and D are both acceptable" or "Either C or D or both C and D would be sufficient" might be correct, but only the Boolean statement "C and D," which is incorrect because both together are not necessary is offered as a choice. "C or D is correct" or "C and/or D would be sufficient" but not "C AND D," since either alone would be sufficient to overcome a 103 rejection. There are three requirements to establish *prima facie* obviousness in which all must be fulfilled. If

any link in the chain is broken, it is broken irrevocably. As the question is directed to a proper reply which "could include" an argument, it is asking which argument is sufficient, not which is most likely to be successful. The bare Boolean statement "(E) C and D" immediately following answer C and answer D implies that "C and D" must be together to be sufficient in contrast to C or D alone. Because the question does not ask which is most likely to succeed, but which "could be" proper, i.e., which reaches a level of sufficiency, there is a distinction here between which is the best action in response to a rejection and which is the most correct answer regarding the actual question asked. The model answer assumes that these are one and the same, but the wording of the question is not consistent with this interpretation.

PM #35

Accepted answer A

My answer C

Attention should be directed to the statement that competitors in the plural have copied the invention, and that copies of the competitors' advertisements were provided as evidence. If a multiplicity of competitors, who have had financial incentive to take advantage of the improvement, copy an invention but failed to utilize the improvement prior to its disclosure by the inventor, it is in itself greater than and distinct from the mere fact of copying by a competitor, which was the situation in *Cable Electric Products v. Genmark, Inc.*, 770 F.2d 1015, 1029, 1033, 226 USPQ 881, 890, 892-93 (Fed. Cir. 1985). Copying by a multiplicity of competitors is evidence of an advancement in the state of the art. In an analogous matter the courts have ruled that near simultaneous invention may indicate advancement of the level of the state of the art. *In re Merck & Co.*, 231 USPQ 375, 380 (Fed. Cir. 1986) and *International Glass Co. v. U.S.*, 159 USPQ 434. 442 (US CICt 1968). Obviously it is impossible for near simultaneous invention unless there is a plurality of inventors. It is evident that if a multiplicity of competitors have failed to utilize a particular improvement prior to its disclosure by the inventor, then strong evidence is established of a prior absence of skill vis-a-vis the particular invention and what constituted ordinary skill in the art at the time of the invention.

Although a plurality of simultaneous inventors is of significance concerning obviousness and the level of the state of the art at the time of an inventive act, a plurality of infringing competitors who have previously failed to implement an inventive improvement is more compelling concerning non-obviousness and the level of ordinary skill in the art. This is in part because it is possible for two genuinely inventive acts to occur coincidentally, but the absence of a plurality cannot occur by coincidence. In addition, if an invention is adopted by several competitors, it necessarily shows that there had to be an improvement in market share as well, which is a consequence of extent of copying rather than for example the advertising of a competitor. Copying by a multiplicity of competitors is qualitatively distinct from mere copying by a competitor and constitutes evidence directed toward the technical merits of the invention. Indeed

4

every example cited in the MPEP 716.06, concerning the lack of persuasiveness of mere copying pertains to an individual infringing entity and not a multiplicity of competitors. Thus C must be a correct answer.

Concerning this type of secondary evidence, according to the MPEP, "great reliance [is] placed on this type of evidence by the Supreme Court." MPEP 716.01(b). Thus it cannot be said that A is the single best answer. C is at least equally good and possibly superior.

PM #9

Accepted – all answers

My answer: NULL (i.e., left blank)

My answer, the NULL answer is the single most correct answer. That this is evident is obvious in consideration that, answer E is mutually exclusive of all other possible responses A-D. It is a logical impossibility for all to be correct. The statement, in respect to the contradiction between A-D and E, that "ALL ANSWERS ARE CORRECT," is essentially an admission that there is no proper response if one is to select one of the given choices. In fact it is most true that all are incorrect since NULL is the single most correct answer. Thus the directive that one must select and mark a choice in order to be given credit is in this particular case in opposition to the directive that one must select the single most correct answer and is therefore invalidated since both directives cannot be simultaneously satisfied.

Merely stating that credit will not be given for questions that are not marked does not relieve the exam administrator of responsibility incurred by an egregiously and defectively constructed question, especially when the statement is in opposition to the directive that the single most correct answer must be chosen. Indeed, failure to recognize the NULL answer in this case is contrary to the intent of the examination insofar as an illogically constructed question begs to remain unanswered because the examinee cannot make a best selection. The denial of credit penalizes the exam taker for being cognizant of the contradiction whereas in contrast a test taker who naively selects an actually incorrect choice is given credit. Note that since A-D and E are logically incompatible, it is a true and non-contestable statement that there exists at least one "actually incorrect" selection. The truth of this conclusion cannot be invalidated by merely stating "ALL ANSWERS ARE CORRECT." Furthermore, it should be noted that this is the only question that was left unmarked on my answer sheet, thus the claim that my answer is in fact the NULL answer is supported by the pattern of my responses and it is not one of several unanswered questions, some of which do have a single most correct answer. Indeed the only question that was given the NULL answer is in fact a question that did not have a correct answer explicitly offered, as the question was absolutely invalid.

Please note that arguments concerning the invalidity of the question constitute a positive rationale supporting the NULL answer and in fact address the merits of this response.

5

Merely stating that it is required to "prove that your darkened answer is the most correct answer" presupposes an invalid premise in this case. This is because it is falsely assumed that there is a single most correct answer and it does not excuse misplaced adherence to a logical contradiction. The test taker is essentially forced to either ignore the directive to answer the single most correct answer or to ignore the directive to mark all questions. Ignoring the former results in the awarding of a point, while ignoring the latter results in the denial of a point. This is utterly arbitrary and contrary to reason. The NULL answer should be awarded a point for this question.

It is perhaps for the aforementioned reason that it is a nearly universal practice to award all test takers credit for defective exam questions. As a former university professor I can attest to the fact that I have never known of any other test in which a question is effectively stricken from an exam, but credit is unequally awarded. The effect is to penalize some test takers for responding to an error for which they were not responsible. The policy is preposterous on its face.

Thank you for your consideration.

Sincerely,

Peter R. Kramer