UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

Peter R. Kramer
48 Cheney Dr.
Storrs, CT 06268

FEB 17 2005

In re Peter R. Kramer

DECISION ON REQUEST FOR
RECONSIDERATION OF
DECISION ON REGRADE

### MEMORANDUM AND ORDER

This is a response to the letter received by the Office on December 17, 2004 requesting reconsideration of the decision on petition for regrade under 37 CFR 10.7(c) mailed on October 25, 2004. Peter R. Kramer (petitioner) requests for reconsideration for the answers to question 31 of the morning session and question 33 of the afternoon section of the Registration Examination held on October 15, 2003. The request reconsideration is <u>denied</u> to the extent petitioner seeks a passing grade on the Registration Examination.

### BACKGROUND

An applicant for registration to practice before the United States Patent and Trademark Office (USPTO) in patent cases must achieve a passing grade of 70 in both the morning and afternoon sections of the Registration Examination. Petitioner scored 68. On February 26, 2004, petitioner requested regrading, arguing that the model answers were incorrect. Petitioner has been awarded an additional point for afternoon



question 9. Accordingly, petitioner's score was adjusted to 69. This score is insufficient to pass the Examination.

As indicated in the instructions for requesting regrading of the Examination, in order to expedite a petitioner's appeal rights, a single final agency decision will be made regarding each request for regrade. The decision will be reviewable under 35 U.S.C. § 32. The Director of the USPTO, pursuant to 35 U.S.C. § 2(b)(2)(D) and 37 CFR 10.2 and 10.7, has delegated the authority to decide requests for regrade to the Director of the Office of Patent Legal Administration. Petitioner's request for consideration received on December 17, 2004 has been forwarded to the Director of the Office of Patent Legal Administration for consideration.

## OPINION

Under 37 CFR 10.7(c), petitioner must establish any errors that occurred in the grading of the Examination. The directions state: " No points will be awarded for incorrect answers or unanswered questions." The burden is on petitioners to show that their chosen answers are the most correct answers. Please note that the provision for regrade of an examination set forth in former 37 CFR 10.7(c) has been eliminated and current 37 CFR 11.7(e) provides that "[s]ubstantive review of the answers or questions may not be pursued by petition for regrade" and "[a]n individual who failed the examination has the right to retake the examination an unlimited number of times upon payment of the fees required by § 1.21(a)(1)(i) and (ii) of this subchapter, and a fee charged by a commercial entity administering the examination." *See Changes to*

In re Peter R. Kramer                                                                                    Page 3

*Representation of Others Before the United States Patent and Trademark Office*, 69 Fed. Reg. 35428 (June 24, 2004), 1288 OG 109 (November 16, 2004) (final rule).

The directions to the morning and afternoon sections state in part:

Do not assume any additional facts not presented in the questions. The most correct answer is the policy, practice, and procedure which must, shall, or should be followed in accordance with the patent laws, rules and procedures as related in the Manual of Patent Examining Procedure (MPEP). Each question has only one most correct answer. Where choices (A) through (D) are correct and choice (E) is "All of the above," the last choice (E) will be the most correct answer and the only answer that will be accepted. Where two or more choices are correct, the most correct answer is the answer that refers to each and every one of the correct choices. Where a question includes a statement with one or more blanks or ends with a colon, select the answer from the choices given to complete the statement that would make the statement true. If it is determined by the USPTO that there is more than one most correct answer to a question, each most correct answer will be accepted, but only one point will be given for the question. The presence of multiple most correct answers does not, in itself, render the question ambiguous. Unless otherwise explicitly stated, all references to patents or applications are to be understood as being U.S. patents or regular (non-provisional) utility applications for utility inventions only, as opposed to plant or design applications for plant and design inventions. Where the terms "USPTO" or "Office" are used in this examination, they mean the United States Patent and Trademark Office.

In re Peter R. Kramer                                                                                      Page 4

Petitioner has presented various arguments attacking the validity of the model answers. All of petitioner's arguments have been fully considered. Each question in the Examination is worth one point. No credit has been awarded for morning question 31 and afternoon question 33. Petitioner's arguments for these questions are addressed individually below.

Morning question 31 reads as follows.
31.    Reexamination has been ordered following receipt of a request for reexamination of U.S. Patent X, filed by the patentee. Patent X contains independent claims 1 through 4, each directed to a hydrocyclone separator apparatus. They are the only claims that were ever presented during prosecution of the application that matured into Patent X. In the first Office action during reexamination, claims 1 through 4 are rejected as being obvious under 35 USC 103 over U.S. Patent Z. The apparatus is used for separating material, including fibers suspended in a liquid suspension, into a light fraction containing the fibers, and a heavy fraction containing rejects. Assume there are no issues under 35 USC 102, 103, or 112, and that any dependent claim is properly dependent. Recommend which of the following claims, if any, would be subject to rejection under 35 USC 305 for improperly enlarging the scope of the original claim in accordance with the patent laws, rules and procedures as related in the MPEP.

(A)    Claim 5.    A hydrocyclone separator apparatus according to claim 4, wherein said blades are configured in the form of generally plane surfaces curved in one plane only.
(B)    Claim 5.    A hydrocyclone separator apparatus according to claim 4, wherein the outlet duct is in the form of two frustro-conical portions joined at their narrow ends.
(C)    Claim 5.    A method of separating material including fibers suspended in a liquid suspension comprising the steps of separating the material into a light fraction containing the fibers and a heavy fraction containing rejects, and converting the light fraction into a pulp and paper stock suspension.
(D)    Claim 5.    A hydrocyclone separator apparatus according to claim 4, wherein the separator chamber is conical in shape having at the narrow end an outlet for the heavy fraction and at its wide end an outlet for the light fraction.
(E)    None of the above.


31. MODEL ANSWER: (C). 35 U.S.C. § 305; MPEP §§ 2258 and 1412.03. MPEP § 2258, under the heading "Claims In Proceeding Must Not Enlarge Scope Of The Claims Of The Patent," states "[w]here new or amended claims are presented . . . the claims of the reexamination proceeding should be examined under 35 U.S.C. 305, to determine whether they enlarge the scope of the original claims. 35 U.S.C. 305 states that 'no proposed amended or new claim enlarging the scope of the claims of the patent will be permitted in a reexamination proceeding...'." Under the further subheading "Criteria for Enlargement of the Scope of the Claims," MPEP § 2258 states "A claim presented in a reexamination proceeding 'enlarges the

Case 1:05-cv-01455-HHK   Document 9-3   Filed 11/08/2005   Page 5 of 17
Case 1:05-cv-01455-HHK   Document 1-7   Filed 07/22/2005   Page 5 of 10

In re Peter R. Kramer                                                    Page 5

scope' of the claims of the patent being reexamined where the claim is broader than each and every claim of the patent. See MPEP § 1412.03 for guidance as to when the presented claim is considered to be a broadening claim as compared with the claims of the patent, i.e., what is broadening and what is not. If a claim is considered to be a broadening claim for purposes of reissue, it is likewise considered to be a broadening claim in reexamination." MPEP § 1412.03, under the heading "New Category of Invention Added In Reissue – Broadening," states "[t]he addition of process claims as a new category of invention to be claimed in the patent (i.e., where there were no method claims present in the original patent) is generally considered as being a broadening of the invention. See Ex parte Wikdahl, 10 USPQ2d 1546, 1549 (Bd. Pat. App. & Inter. 1989)." MPEP 2258, under the further subheading "Rejection of Claims Where There Is Enlargement," states "[a]ny claim in a reexamination proceeding which enlarges the scope of the claims of the patent should be rejected under 35 U.S.C. 305." Since no claims drawn to a method were ever presented during prosecution of Patent X (claims 1 through 4 "are the only claims that were ever presented during prosecution of the application that matured into Patent X"), the claim recited in (C) is not directed to "the invention as claimed." (A), (B), and (D) are all incorrect because each of their claims are directed to a hydrocyclone separator apparatus, i.e., "the invention as claimed," and they do not enlarge the scope of the claims in Patent X. (E) is an incorrect answer because (C) is the correct answer.

Petitioner argues that the determination of whether a claim enlarges the scope claimed in an original patent is determined in particular not in general, and that "conceivability concerning enlargement of the scope of claims in reexamination cannot be determined in general but in relation to an original patent, and that conceivability must be judged relative to that which is known, as comparison cannot be made between stated knowns and omitted unknowns." Petitioner further argues that the "failure to recite the claims left open the possibility that certain methods language equivalents might be included as, e.g., 'means for' could have been present in the unrecited claims."

Petitioner's arguments presented in the original petition and in the request for reconsideration have been fully considered but are not persuasive. The question specifically provides that Patent X contains independent claims 1 through 4, each directed to a hydrocyclone separator apparatus. There is no indication in the question that the claims in the patent are written in means-plus-function language under 35 U.S.C. 112, sixth paragraph. MPEP § 2181 set forth that a claim limitation will be interpreted to invoke 35 U.S.C. 112, sixth paragraph, if it meets the 3-prong analysis: (A) the claim limitations must use the phrase "means for" or "step for"; (B) the "means for" or "step for" must be modified by functional language; and (C) the phrase "means for" or "step for" must not be modified by sufficient structure, material or acts for

In re Peter R. Kramer                                                                 Page 6

achieving the specified function. MPEP § 2181 provides that the USPTO will not apply 35 U.S.C. 112, sixth paragraph, if the claim language does not meet the 3-prong test. Since the question did not provide that the claims in Patent X meet the 3-prong test, the facts presented in the question do not support Petitioner's contention that apparatus claims might include "means for" language. Furthermore, the facts presented in the question do not support Petitioner's contention that certain method claims may be indistinguishable from the apparatus claims in Patent X. The question did not provide for any facts to indicate that the method claim in answer (C) contains all the limitations of any of the apparatus claims in the patent. Therefore, to imply that the method claim in answer (C) may be indistinguishable from the apparatus claims in Patent X would be improper because the examination instructions specifically state "[d]o not assume any additional facts not presented in the questions." Therefore, the addition of the method claim in answer (C) as a new category of invention where there were no method claims present in Patent X is considered as being a broadening of the invention under 35 U.S.C. 305. Accordingly, answer (C) is the most correct answer.

No error in grading has been shown. Petitioner's request for credit on this question is denied.


Afternoon question 33 reads as follows.
33.    A registered practitioner files an application on the client's discovery that adding silica to a known plastic composition containing the flame retardant, X, results in increased flame retardance. The application claims a composition comprising the known plastic composition containing X and also silica. The primary examiner rejects the claim on the basis that applicant admits that X was a known flame retardant and that there is no evidence of improved flame retardance. In accordance with the patent laws, rules and procedures as related in the MPEP, a proper reply could include which of the following argument(s) to rebut and overcome the rejection?

(A)    The examiner cannot rely on admitted prior art.
(B)    The examiner has not shown that the prior art appreciated applicant's discovery of silica to be a flame retardant.
(C)    The examiner has not made out a prima facie case of obviousness due to lack of motivation in the prior art or in the knowledge generally available to one of ordinary skill in the art for adding silica to the known plastic composition.
(D)    The applicant does not have to show an improved or unexpected result for the claimed invention.

In re Peter R. Kramer                                                                                          Page 7

(E)     (C) and (D).

33. MODEL ANSWER: (E) is the most correct answer. MPEP §§ 2141, 2142, 2143 and 2143.01. Regarding (C) MPEP 2142 under the heading "ESTABLISHING A PRIMA FACIE CASE OF OBVIOUSNESS," states "To establish a prima facie case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or to combine reference teachings. Second, there must be a reasonable expectation of success. Finally, the prior art reference (or references when combined) must teach or suggest all the claim limitations. The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, and not based on applicant's disclosure. In re Vaeck, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991). See MPEP § 2143 for decisions pertinent to each of these criteria." MPEP § 2143 states the same criteria, and further "The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, not in applicant's disclosure. In re Vaeck, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991)." Regarding motivation, MPEP 2143.01 states "Obviousness can only be established by combining or modifying the teachings of the prior art to produce the claimed invention where there is some teaching, suggestion, or motivation to do so found either explicitly or implicitly in the references themselves or in the knowledge generally available to one of ordinary skill in the art. 'The test for an implicit showing is what the combined teachings, knowledge of one of ordinary skill in the art, and the nature of the problem to be solved as a whole would have suggested to those of ordinary skill in the art.' In re Kotzab, 217 F.3d 1365, 1370, 55 USPQ2d 1313, 1317 (Fed. Cir. 2000). See also In re Fine, 837 F.2d 1071, 5 USPQ2d 1596 (Fed. Cir. 1988); In re Jones, 958 F.2d 347, 21 USPQ2d 1941 (Fed. Cir. 1992)." The examiner has not shown any suggestion or motivation, either in the prior art or in the knowledge generally available to one of ordinary skill in the art, to modify the known plastic composition. Regarding (D) MPEP § 2142 states "The examiner bears the initial burden of factually supporting any prima facie conclusion of obviousness. If the examiner does not produce a prima facie case, the applicant is under no obligation to submit evidence of nonobviousness. If, however, the examiner does produce a prima facie case, the burden of coming forward with evidence or arguments shifts to the applicant who may submit additional evidence of nonobviousness, such as comparative test data showing that the claimed invention possesses improved properties not expected by the prior art." (E) is the most correct answer since it addresses both issues raised by the examiner, obviousness and evidence of improved results. (C) alone is incorrect inasmuch as it does not address the examiner's comments regarding improved results. (D) alone incorrect because it does not address the examiner's burden of presenting a prima facie case of obviousness. (A) is not correct. MPEP § 2129. Admissions by applicant can be used as prior art. (B) is not correct. MPEP § 2144. It is not necessary for a finding of obviousness that prior art be combined for the same advantage or result as applicant.

Petitioner selected answer (C) which did not include answer (D). The model answer (E) includes both answer (C) and answer (D). Petitioner argues that "the statutory nature of the

In re Peter R. Kramer                                                    Page 8

examiner's rejection was unclear." Petitioner contends that "it is not clear if D is in response to a § 102 or § 103 rejection or other statutes" and "D (which is independent from C) can be an inadequate response to a 102 rejection where the issue of whether the addition of silica materially affects the composition may indeed be relevant..." Petitioner alleges also that answer (E) is incorrect insofar as semantics because the Boolean statement "C and D" is incorrect. Petitioner further argues that answer (B) is also correct.

Petitioner's arguments presented in the original petition and in the request for reconsideration have been fully considered but are not persuasive. Answer (E) is correct because both answer (C) and answer (D) are correct. The question provides that the application claims a composition comprising the known plastic composition containing X and also silica, and the primary examiner rejects the claim on the basis that applicant admits that X was a known flame retardant and that there is no evidence of improved flame retardance. The question asks in accordance with the patent laws, rules and procedures as related in the MPEP, a proper reply could include which of the following argument(s) to rebut and overcome the rejection.

For anticipatory rejections under 35 U.S.C. 102, the reference must teach every aspect of the claimed invention either explicitly or impliedly. See MPEP 706.02. The rejection made by the examiner is not a rejection under 35 U.S.C. 102 because the admitted prior art presented in the question did not show adding silica to the flame retardant X. Therefore, the admitted prior art did not show every aspect of the claimed invention. The facts presented in the question did not support Petitioner's contention that "inclusion of silica if it does not materially affect the flame retardant properties of a composition would be subject to a 102 rejection."

For obviousness rejections under 35 U.S.C. 103(a), there must be a motivation to modify the prior art composition. The examiner must show there is a suggestion or motivation either in the prior art or in the knowledge generally available to one of ordinary skill in the art, to modify the known plastic composition by adding silica. The examiner bears the initial burden of factually supporting any prima facie conclusion of unpatentability. See MPEP 2142. Answer (C) correctly addresses to the examiner's burden of presenting a prima facie case of unpatentability.

In re Peter R. Kramer                                                   Page 9

      The examiner also raises the issues that there is no evidence of improved flame retardance. Answer (D) properly addresses this issue raised by the examiner. If the examiner does not produce a *prima facie* case of unpatentability, the applicant is under no obligation to submit any evidence of an improved or unexpected result for the claimed invention. The examination instructions provide that "where two or more choices are correct, the most correct answer is the answer that refers to each and every one of the correct choices." Answer (E) is correct because both answer (C) and answer (D) are correct. Petitioner's selected answer (C) which did not include answer (D) is not the most correct answer.

      No error in grading has been shown. Petitioner's request for credit on this question is denied.

In re Peter R. Kramer                                                                 Page 10

## ORDER

For the reasons given above, no point has been added to petitioner's score on the Examination. Therefore, petitioner's score is 69. This score is insufficient to pass the Examination.

Upon consideration of the request for regrade to the Director of the USPTO, it is ORDERED that the request for a passing grade on the Examination is <u>denied</u>.

This is <u>a final agency action</u>.

571-272-7700

_____
Robert J. Spar
Director, Office of Patent Legal Administration
Office of the Deputy Commissioner
    for Patent Examination Policy

February 20, 2004

Peter R. Kramer
48 Cheney Dr.
Storrs, CT 06268

Comp ID #: 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

Harry I. Moatz
Director of Enrollment and Discipline
Mail Stop OED
United States Patent and Trademark Office
P. O. Box 1450
Alexandria, VA 22313-1450

Director of Enrollment and Discipline:

My score on the October 15, 2003 registration exam was 68 and I am requesting a regrade pursuant to 37 CFR 10.7(c). The questions that I would like to have re-graded are AM session question 31, and PM session questions 9, 33, and 35.

AM #31

Accepted answer C
My answer E

The question as written requires the selection of a claim that (emphasis added) **"would be subject** to rejection under 35 USC 305 for improperly enlarging the scope of the original claim."

(E) "None of the above," is the single most correct answer. The question does not ask, which is the most likely to be subject to rejection under 35 USC 305, but which would be subject to rejection under 35 USC 305. All reexamination claims are "subject" to the statute, but "subject to rejection" clearly implies that the correct answer would be one that actually enlarges the scope of the claims. If (E) "None of the above," were not included as a choice, then one might conclude that C is the most likely to expand the scope of the claims and it would be the best answer, in part by default. However, that is not the context of the question nor is it the question that was actually presented. Whether a specific reexamination claim expands the scope of an invention is determined in particular, not in general. Thus "where there are no method claims present ...is generally considered as being a broadening of the invention" is not a determination that this particular method claim enlarges the scope of the particular original "hydrocyclone separator" invention. It is quite possible that a method claim may be indistinguishable from an invention that was originally described with apparatus claims. In re Freeman



GOVERNMENT EXHIBIT
Reply D

2

573 F.2d 1237, 197 USPQ 464. Without recitation of all of the claims 1-4 it is not possible to ascertain that (C) actually enlarges the scope of the invention, or even if the claim in (C) conceivably would enlarge the scope. It is not possible to judge a thing as possessing a property that is conceivable in relation to another thing if that other thing is unknown. Furthermore, since claims 1-3 might include "means for" language it may be necessary to include text from the specification to determine the scope of claims 1-3 thus E is the best answer given the information that is provided.

> Tillotston Ltd. v. Walbro Corp., 831 F.2d 1033, 1037 n.2, 4 USPQ2d 1450, 1453 n.2 (Fed. Cir. 1987) (internal citations omitted). Stated another way, a "claim is enlarged if it includes within its scope any subject matter that would not have infringed the original patent. In re Freeman, 30 F.3d at 1464.

> In re Freeman 573 F.2d 1237, 197 USPQ 464: Though a claim expressed in "means for" (functional) terms is said to be an apparatus claim, the subject matter as a whole of that claim may be indistinguishable from that of a method claim drawn to the steps performed by the "means."

PM #33

Accepted answer E
My answer C

My answer was C. B or C would each be correct. It is not explicitly stated which statute is the basis for rejection, and since there is a rejection rather than an objection the rejection must be based upon statute. Prior art teaching X as a flame retardant in compositions could be considered 35 USC 102 references. Inclusion of silica if it does not materially affect the flame retardant properties of a composition would be subject to a 102 rejection. Answer D is therefore incorrect since it would not overcome such a rejection, and indeed showing of an improved result might be required. B would overcome a 102 rejection based upon the examiner's comment. C would overcome a 103 rejection since it would abolish the question of *prima facie* obviousness thus rendering D moot, and C is clearly directed to a 35 USC 103 rejection. However since it is not clear that D is in reply to a 102 or 103 rejection, D is clearly not a correct answer. A rejection based upon 35 USC would always include enumeration of the specific statutes upon which a rejection is based precisely to avoid this type of ambiguity. Thus the question is defective and it is the defect in this question that specifically casts doubt on D rendering it as less than a good choice, and invalidating E as well.

E is also incorrect insofar as semantics are concerned. If it were stated that the rejection is solely a 103 obviousness issue, an answer such as (E) "C and D are both acceptable" or "Either C or D or both C and D would be sufficient" might be correct, but only the Boolean statement "C and D," which is incorrect because both together are not necessary is offered as a choice. "C or D is correct" or "C and/or D would be sufficient" but not "C AND D," since either alone would be sufficient to overcome a 103 rejection. There are three requirements to establish *prima facie* obviousness in which all must be fulfilled. If

3

any link in the chain is broken, it is broken irrevocably. As the question is directed to a proper reply which "could include" an argument, it is asking which argument is sufficient, not which is most likely to be successful. The bare Boolean statement "(E) C and D" immediately following answer C and answer D implies that "C and D" must be together to be sufficient in contrast to C or D alone. Because the question does not ask which is most likely to succeed, but which "could be" proper, i.e., which reaches a level of sufficiency, there is a distinction here between which is the best action in response to a rejection and which is the most correct answer regarding the actual question asked. The model answer assumes that these are one and the same, but the wording of the question is not consistent with this interpretation.

PM #35

Accepted answer A

My answer C

Attention should be directed to the statement that competitors in the plural have copied the invention, and that copies of the competitors' advertisements were provided as evidence. If a multiplicity of competitors, who have had financial incentive to take advantage of the improvement, copy an invention but failed to utilize the improvement prior to its disclosure by the inventor, it is in itself greater than and distinct from the mere fact of copying by a competitor, which was the situation in *Cable Electric Products v. Genmark, Inc.*, 770 F.2d 1015, 1029, 1033, 226 USPQ 881, 890, 892-93 (Fed. Cir. 1985). Copying by a multiplicity of competitors is evidence of an advancement in the state of the art. In an analogous matter the courts have ruled that near simultaneous invention may indicate advancement of the level of the state of the art. *In re Merck & Co.*, 231 USPQ 375, 380 (Fed. Cir. 1986) and *International Glass Co. v. U.S.*, 159 USPQ 434. 442 (US ClCt 1968). Obviously it is impossible for near simultaneous invention unless there is a plurality of inventors. It is evident that if a multiplicity of competitors have failed to utilize a particular improvement prior to its disclosure by the inventor, then strong evidence is established of a prior absence of skill vis-a-vis the particular invention and what constituted ordinary skill in the art at the time of the invention.

Although a plurality of simultaneous inventors is of significance concerning obviousness and the level of the state of the art at the time of an inventive act, a plurality of infringing competitors who have previously failed to implement an inventive improvement is more compelling concerning non-obviousness and the level of ordinary skill in the art. This is in part because it is possible for two genuinely inventive acts to occur coincidentally, but the absence of a plurality cannot occur by coincidence. In addition, if an invention is adopted by several competitors, it necessarily shows that there had to be an improvement in market share as well, which is a consequence of extent of copying rather than for example the advertising of a competitor. Copying by a multiplicity of competitors is qualitatively distinct from mere copying by a competitor and constitutes evidence directed toward the technical merits of the invention. Indeed

4

every example cited in the MPEP 716.06, concerning the lack of persuasiveness of mere copying pertains to an individual infringing entity and not a multiplicity of competitors. Thus C must be a correct answer.

Concerning this type of secondary evidence, according to the MPEP, "great reliance [is] placed on this type of evidence by the Supreme Court." MPEP 716.01(b). Thus it cannot be said that A is the single best answer. C is at least equally good and possibly superior.

PM #9

Accepted – all answers

My answer: NULL (i.e., left blank)

My answer, the NULL answer is the single most correct answer. That this is evident is obvious in consideration that, answer E is mutually exclusive of all other possible responses A-D. It is a logical impossibility for all to be correct. The statement, in respect to the contradiction between A-D and E, that "ALL ANSWERS ARE CORRECT," is essentially an admission that there is no proper response if one is to select one of the given choices. In fact it is most true that all are incorrect since NULL is the single most correct answer. Thus the directive that one must select and mark a choice in order to be given credit is in this particular case in opposition to the directive that one must select the single most correct answer and is therefore invalidated since both directives cannot be simultaneously satisfied.

Merely stating that credit will not be given for questions that are not marked does not relieve the exam administrator of responsibility incurred by an egregiously and defectively constructed question, especially when the statement is in opposition to the directive that the single most correct answer must be chosen. Indeed, failure to recognize the NULL answer in this case is contrary to the intent of the examination insofar as an illogically constructed question begs to remain unanswered because the examinee cannot make a best selection. The denial of credit penalizes the exam taker for being cognizant of the contradiction whereas in contrast a test taker who naively selects an actually incorrect choice is given credit. Note that since A-D and E are logically incompatible, it is a true and non-contestable statement that there exists at least one "actually incorrect" selection. The truth of this conclusion cannot be invalidated by merely stating "ALL ANSWERS ARE CORRECT." Furthermore, it should be noted that this is the only question that was left unmarked on my answer sheet, thus the claim that my answer is in fact the NULL answer is supported by the pattern of my responses and it is not one of several unanswered questions, some of which do have a single most correct answer. Indeed the only question that was given the NULL answer is in fact a question that did not have a correct answer explicitly offered, as the question was absolutely invalid.

Please note that arguments concerning the invalidity of the question constitute a positive rationale supporting the NULL answer and in fact address the merits of this response.

Merely stating that it is required to "prove that your darkened answer is the most correct answer" presupposes an invalid premise in this case. This is because it is falsely assumed that there is a single most correct answer and it does not excuse misplaced adherence to a logical contradiction. The test taker is essentially forced to either ignore the directive to answer the single most correct answer or to ignore the directive to mark all questions. Ignoring the former results in the awarding of a point, while ignoring the latter results in the denial of a point. This is utterly arbitrary and contrary to reason. The NULL answer should be awarded a point for this question.

It is perhaps for the aforementioned reason that it is a nearly universal practice to award all test takers credit for defective exam questions. As a former university professor I can attest to the fact that I have never known of any other test in which a question is effectively stricken from an exam, but credit is unequally awarded. The effect is to penalize some test takers for responding to an error for which they were not responsible. The policy is preposterous on its face.

Thank you for your consideration.

Sincerely,

Peter R. Kramer

In re Peter R Kramer            -7-

2003. I hereby request adjustment of my score by two points.


Yours most sincerely and respectfully,

*[signature: Peter R Kramer]*

Peter R. Kramer, Ph. D.

# Chart 1

## Logical Pathways
## Process Claim ( C ) (*In re Freeman*)

| Pathway A | Pathway B | Pathway C |
|---|---|---|
| Indistinguishable (Assumption) | Distinguishable (Assumption) | Uncertain (Inference) |
| Not New Category | New Category | Uncertain if New Category |
| Do not Reject MPEP 1412.03 | Reject MPEP 1412.03 | Do not Reject MPEP 1412.03 |
| | | Improper Omnibus Rejection |
| Conclude (E) Correct | Conclude ( C ) Correct | Conclude (E) Correct |
| Logic Incorrect Improper Assumption | Logic Incorrect Improper Assumption | Logic Correct Valid Inference |