UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER RONALD KRAMER,                )
                                    )
            Plaintiff,              )
                                    )
       v.                           )   Civil Action No. 05-1455 (HHK)
                                    )
UNITED STATES PATENT AND            )
TRADEMARK OFFICE,                   )
JON W. DUDAS, Director, USPTO,      )
JOHN J. DOLL, Commissioner for Patents, )
HARRY I. MOATZ, Director, Office of )
   Enrollment and Discipline,       )
ROBERT J. SPAR, Director, Office of )
   Patent Legal Administration,     )
                                    )
            Defendants.             )
                                    )
_____)

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS
UNDER RULE 11(b)(2)

**I. Introduction and Background**

I took the registration examination on October 15, 2003, and received a grade of 68. I petitioned under 37 C.F.R. 10.7(c) for re-grade, and my petition was denied insofar as receiving a passing grade is concerned, my score adjusted to 69. I petitioned for 10.2(c) review of the re-grade including the fee specified by 37 C.F.R. 1.21(a)(5). However, rather than perform required review, the task was assigned to Director of OPLA, Robert J. Spar, who had also performed the re-grade, and he merely reissued the re-grade decision himself with Harry Moatz returning the fee, falsely stating that there

RECEIVED

FEB 21 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Peter R. Kramer v USPTO, et. al.                                                                                      2

was no provision in the rules for review upon payment of a fee. The counterfeit decision of February 17, 2005 was captioned as "reconsideration" but does not fulfill criteria sufficient to be described as legitimate review. Defendants fraudulently and willfully disregarded rules governing procedure for re-grading and review of re-grading. Provision in 35 U.S.C. 32 for administrative review after "notice and opportunity" establishes administrative review as a due process right. 37 C.F.R. 10.2(c) is the singular mechanism in the rules that accommodate this mandate. My complaint was brought under 28 U.S.C. 1361 in order to compel defendants to follow their own rules in accordance with law. Defendants have attempted to avoid responsibility for unlawful wrongdoing (in order to avoid equitable estoppel of their time limitation defense) by trolling for statutes that might justify unlawful actions – an endeavor that necessarily requires misrepresentation of law. In particular, they characterize process, i.e., re-grading followed by administrative review, pursuant to rule and law, as merely an exercise in delegation of authority concerning who performs the re-grade, in an attempt to make review rights spontaneously dematerialize. Thus they have attempted to enforce rules not provided for in accordance with the APA, as required by 35 USC 2(b)(2)(B), which explicitly invokes section 553 of title 5. Furthermore they <u>frivolously misrepresented law claiming that they are empowered by 35 U.S.C. 2(b)(2)(D) to eliminate 10.2(c) review</u> by merely making a statement in letters to applicants who failed to achieve a passing grade that they should bypass review and go directly to the District Court. My amended complaint and subsequent pleadings demonstrate a continuous pattern of misbehavior and misrepresentation by the defendants. My amended complaint (as well as other pleadings)

Peter R. Kramer v USPTO, et. al.   3
also includes sufficient facts to overcome the contention that there exists no possibility that I could prevail. Accordingly defendants' Motion for Dismissal should be denied.

## II. Argument

### A. Defendants cast 35 USC 2(b)(2)(D) as concerned with delegation authority.

In order to avoid culpability for unlawful actions unwittingly disclosed by the defense (Gov. exhibit A, Def Motion to Dismiss), specifically extemporaneous establishment of an *ad hoc* impromptu rule eliminating administrative review, 37 CFR 10.2(c), which is required by 35 U.S.C.32, <u>defendants</u> have invoked 35 USC 2(b)(2)(D):

> Under 35 U.S.C. § 2(b)(2)(D), the Director of the USPTO may <u>delegate</u> [emphasis added] the task of "regrading of the examination" to any other directors and the PTO Director did so. As explained in the PTO's October 25, 2005 Order, the PTO Director "delegated the authority to decide requests for regrade to the Director [of the Office] of Patent Legal Administration." Def Reply at 7.

For over one year, defendant Robert J. Spar has described nullification of § 10.2(c) administrative review as 'delegation authority,' see Reply Gov. Exh. B at 1-2 and also Reply Gov. Exh. C at 2. <u>Nullification of a rule is not delegation of authority.</u> Now faced with the accusation of frivolous misrepresentation, defendants wish to blame me for their misrepresentation. By whatever word that is called, the powers and duties of the Director in regulating representation before the PTO are specified in 35 U.S.C. 2(b)(2)(D).

35 USC 2(b)(2)(D) indeed is concerned with regulation of representation before the PTO, and the regulations established enumerate many powers and assign many duties. Simply because Mr. Spar in his prior writings, and the defense in its reply memorandum has called assignment of duties as specified in 37 C.F.R 10.2 and 10.7 'delegation,' and I

Peter R. Kramer v USPTO, et. al.                                                                                                  4

in turn borrowed their usage, does not mean that I do not understand the meaning of delegation, and it surely does not excuse the defense from responsibility for their misrepresentations. By mislabeling assignment of duties as 'delegation' it does not change the essential nature of the duties assigned. Mr. Spar correctly realized that § 10.2, § 10.6, and § 10.7 indeed specify who should perform what duties. For example, § 10.7(b) specifies that the Director of OED should perform grading. Whatever you call it, § 10.7(b) is a regulation that assigns duties related to representation. If I or Mr. Spar call this a 'delegation,' it does not make it a delegation under 35 U.S.C. 3(b)(3). Establishment of procedures, and assignment of the tasks associated with those procedures <u>couples the act and actor</u>. I will show (in section D 2, below) that 37 C.F.R. 10 when considered as a whole can <u>only</u> assign regrading responsibilities exclusively to the Director of OED.

### B. Defendants contentions fail the test for Rule 11 violation.

Defendants have correctly identified the test: whether a "reasonable inquiry would have revealed that there is no basis in law or fact for the asserted claim." *Laverne Johnson Reynolds, et al. v. The U.S. Capitol Police Board*, 357 F.Supp.2d 19, 23 (D.D.C. 2004). It goes without saying that all frivolous misrepresentations are unsupportable. Yet defendants argue, "even if the Court subsequently finds that a party failed to sustain its burden of proof with respect to a contention, this hardly demonstrates a Rule 11 violation. <u>Naegele v. Albers</u>, 355 F.Supp.2d 129, 147 (D.D.C. 2005)." Def Opp at 3. However, <u>unsupportability is not the test</u>. In this instance a <u>reasonable inquiry</u> would consist of merely reading the whole of the statute rather than taking one part out of

Peter R. Kramer v USPTO, et. al.                                                                                              5
context; 35 U.S.C. 2(b)(2)(B) clearly states that rules must be established in accordance with section 553 of title 5.

### C. Delegation of authority under 35 U.S.C. 3(b)(3) does not provide for extemporaneous nullification of regulations any more than does 35 U.S.C. 2(b)(2)(D).

Faced with the prospect of sanctions for an obviously frivolous misrepresentation, defendants now wish to virtually redact 35 U.S.C. 2(b)(2)(D) from their pleading and substitute 3(b)3 in its place. It is obvious that 35 U.S.C. 3(b)(3) does not entitle the PTO to violate another law found under the same title, i.e., § 2(b)(2)(B). Defense has proposed an equally frivolous misrepresentation in place of their prior frivolous misrepresentation. Def Opp at 11. The PTO Director indeed assigned responsibility to the director of OED <u>by establishing regulation</u> 37 C.F.R. 10.2(c) through an appropriate administrative procedure, defendants have impliedly conceded this point. "Mr. Kramer, however, erroneously relies upon several old published regrade requests to argue that the Director of Enrollment and Discipline was responsible for regrading exams. Opp. at 5-6. That old delegation practice was superseded by the PTO's December 22, 2003 letter to Mr. Kramer…" Def. Reply at 8. Those "old published regrade requests" (Hintz's and Panzer's) are actually requests for reconsideration that the PTO construed as rule 10.2(c) petitions for review, not § 10.7(c) regrading as stated in Defendants' reply. (There are 18 other § 10.2(c) reviews of OED regrades at the OED website that I have identified.) These were reviewed according to <u>regulation</u> (not self-reviews) established by the

Peter R. Kramer v USPTO, et. al.                                                                                                6

Director[1]. Rule 10.2(c) was in force at the time I took the exam, and was never legitimately nullified. The defendants <u>coupled nullification of a regulation to a so-called 'delegation.'</u> Nevertheless, they wish to portray this dual act as purely 'delegation' or task assignment. Such a contention is ridiculous on its face. They knowingly violated § 2(b)(2)(B) of title 35 and § 553 of title 5.

### D. The PTO's new interpretation of their old regulations is inconsistent and also contrary to law.

#### 1. PTO interpretation is inconsistent.

Prior to extemporaneous nullification of Rule 10.2(c) the Director of OED graded and re-graded examinations. Following 10.7(c) denial, applicants could seek administrative review, a due process right. Review of the OED decision was carried out by the Commissioner's office. This is an essential aspect of review. Review is not an exercise in self-serving, self-justifying, <u>self-review</u>. The commissioner reviewed OED decisions. Similarly, higher courts review decisions of lower courts. When the PTO Director delegated authority to the director of OPLA to conduct the re-grading, a new issue arose – who should perform the review? This is not a matter arguing procedural niceties, but <u>goes to the essence of legitimate review and due process</u>. Defendants unlawfully established new rules without thinking through the consequences. They had directed applicants to forgo administrative review, but when faced with a petition for review, they didn't know what to do with it and handed it right back

---

[1] The defense has attempted to characterize my mandamus action as 35 U.S.C. 32 subject matter by likening it to Franchi. It should be pointed out that Franchi received the benefit of formal § 10.2(c) review: "Plaintiff then petitioned the Commissioner seeking an administrative review of the Director's decision, pursuant to 37 C.F.R. § 10.2(c)." *Franchi v Manbeck*, 1991 U.S. Dist. LEXIS 5449; 19 U.S.P.Q.2D (BNA) 1316. Franchi had no due process issue to argue in contrast to my case.

Peter R. Kramer v USPTO, et. al. 7

to Mr. Spar, Director, OPLA, to self-review his abusive re-grading of my examination[2].

2. **PTO position is inconsistent with plain reading, and also unlawful.**

Plain reading of 37 C.F.R. 10.2, 10.6, and 10.7 inescapably points to OED as responsible for performing re-grading decisions. I have previously pointed out with authorities citing here and elsewhere, Plaintiff Opp. at 5: "35 U.S.C. 32 provision for administrative review prior to judicial review is a matter of due process right. Applicants are entitled to § 10.2(c) administrative review although they do not have a statutory right to an in-person hearing without extraordinary circumstances. [*In re Roe*, 178 U.S.P.Q. 559, and *in re Doe*, 178 U.S.P.Q. 560]." <u>Defendants have never opposed this contention</u>[3]. Reading the

---

[2] Their procedures were in disarray. Mr. Moatz returned my $130 fee submitted with my December, 2004 petition for review, on February 17, 2005 stating that there was no provision in the rules for a fee. However, Mr. Spar rendered a (counterfeit) decision denying my petition. When I later petitioned again for § 10.2(c) review, April, 2005, with another $130 money order, Mr. Spar replied in a letter that was not an official decision, but they processed my $130 money order. In other words, they issued an order without accepting the appropriate fee, but then accepted the appropriate fee without issuing an official order.
    When I called the PTO inquiring about the status of my December 17, 2004 petition for administrative review on February 1, 2005, Mr. Valentine at OED did not know anything about my petition. I also called the Commissioners office on February 1, and spoke with Donetta Alston. She was unaware of the existence of my petition, and seemed skeptical that I had submitted one, as she should have handled some of the paperwork. However I told her that I held the return receipt in my hand as we spoke, and she agreed to let me fax her a copy. I then called on February 3, 2005 just to be sure it was delivered to Mr. Moatz, and Ms. Alston apologetically explained that the petition had disappeared from the fax machine before she could retrieve it. I then re-faxed the petition, and Ms. Alston retrieved it immediately and delivered it to Mr. Moatz. Later I called Mr. Spar after receiving his February, 2005 decision. He directed me to write him a letter. See Amended Compl. at 3. I wrote him twice. If he had no intention to act, what was his purpose in soliciting a letter — to induce me to delay filing judicial review? In the midst of this disarray, I don't see how they can say that <u>any</u> of their instructions were clear.

[3] One reason for their silence is that due process rights are a sensitive issue. The new rule, 37 C.F.R. 11.7(e) eliminates availability of [the subjectively onerous task of] regrading, "Substantive review of the answers or questions may not be pursued by petition for regrade." However, § 11.2(d) does not explicitly bar applicants to petition for reconsideration of the OED decision where test scores are concerned. Although it may appear to be lawful on its face, unless the PTO permits challenge of exam scores through § 11.2(d), or through some other mechanism, due process rights would be violated. § 11.7(e) does not permit applicants to take notes when viewing their test results and questions (while under supervision.) Where is the opportunity to be heard, i.e., administrative review, mandated by 35 U.S.C. 32, when applicants are not permitted reasonable access to prepare a petition for reconsideration? The examination

Peter R. Kramer v USPTO, et. al.                                                                                      8

whole of part 10 of 37 C.F.R. reveals that the sole provision for review of exclusion (including re-grading) of an applicant to practice before the PTO is Rule 10.2(c). Thus Rule 10.2(c) inescapably assigns re-grading duties to the Director of OED, otherwise due process rights would be violated because of the technicality that § 10.2(c) wording limits to decisions by the Director of OED. Taking 10.7(c) out of context is disingenuous, and 'delegation' of re-grading to OPLA is clearly erroneous. Furthermore, because Rule 10.2(c) fulfills the statutory requirement for administrative review as a due process right, delegation practice (or whatever they want to call it) that eliminates § 10.2(c) review is unlawful.

### E. It is not necessary to show bad faith.

Misrepresentations of facts or law that fail the reasonable inquiry test are sanctionable under Rule 11 without regard to the issue of bad faith. Failure to meet the criteria for reasonable inquiry is sufficient. *Sherman Treaters Ltd. v Ahlbrandt* (1987 DC Dist Col) 115 FRD 519. See also *Slater v Skyhawk Transp., Inc.*, 187 F.R.D. 185 (D.N.J. 1999).

### F. Defendants have displayed a continuous pattern of misrepresentation.

Defendants are officers of the PTO, and are represented by a PTO solicitor and an Assistant US Attorney. Individuals most closely associated with the PTO are primarily responsible for the misrepresentations. If the defendant parties cannot be sanctioned

---

is a six hour exam with many complex and lengthy questions. Without taking notes, only an idiot-savant with a hard drive for a memory could reasonably petition for reconsideration.

Peter R. Kramer v USPTO, et. al.                                                                                                   9

because they did not sign the pleadings, then the PTO solicitor should be held accountable. The PTO is a government agency, and is represented by a solicitor who should be familiar with laws and regulations governing that agency. Misrepresentation of laws governing an agency by representatives of that agency is a <u>serious</u> abuse. They have misrepresented facts law in their official ex parte decisions and before the District Court[4]. They have repeatedly taken portions of laws and rules out of context in order to mislead the plaintiff and the Court. They also omitted mention of equitable estoppel in their Motion to Dismiss, citing cases related to equitable tolling but avoiding the adverse issue of estoppel. The Motion to Dismiss was neither written nor signed by Mr. Truong, and I'm afraid he has gotten caught in the cross-fire. I believe him to be more a victim of the defendants' misconduct than a perpetrator.

Defendants have also displayed an affinity for misleading statements taken out of context. The offending contention concerning 35 U.S.C. 2(b)(2)(D) that is the primary subject of my Motion for Sanctions is exemplary. They merely needed to read §2(b)(2)(B) to see that their contention is preposterous. The contention that 37 C.F.R. 10.2(c) can be nullified by invoking delegation authority under 35 U.S.C. 3(b)(3) is similarly groundless and frivolous. A striking example of taking statements out of

---

[4] The October 25, 2004 Decision, Plaintiff's Complaint Exhibit 9, Document 1-10 at 5, rendered by Robert J. Spar, Director OPLA, contains an egregious misrepresentation concerning the applicability of *In re Freeman*, 197 USPQ 464 (CCPA 1978), to 35 U.S.C. 305. This issue is discussed in my Amended Complaint at 6. Defendants' repeated insistence that the October, 2005 and February, 2005 fully addressed my argument is also a misrepresentation, see footnote 2 Def. Reply at 4. I addressed the issue of the nonresponsive nature of the February 17 decision in my Amended Complaint at 9: "I had caught them red-handed, and in response, they have attempted to behave as though it never happened." Defendants apparently believe that by simply repeating the same misrepresentations continuously, that wretched falsity will become transfigured into pristine truth.

Peter R. Kramer v USPTO, et. al.                                                          10

context is found in the February 17, 2004 Decision by Robert J. Spar[5]. The suggestion that 37 C.F.R. 10.7(c) permits anyone to be delegated the task of re-grading is similarly taking a rule out of context. 10.7(c) is concerned with petitioners' rights for re-grading, rather than who should perform the re-grade. Rethinking is (a form of) thinking, rereading is (a form of) reading, and re-grading is (a form of) grading. How much more plainly can it be stated?

### G. Defendants should be estopped from assertion of a time limitation defense.

Defendants claim in their Opposition to my Motion for Sanctions, that the February 17, 2005 decision was rendered by an appropriate official, and in their November 8, Reply state, "Equitable Estoppel Does Not Apply Because The PTO Followed Its Regulations Properly And Gave Full Consideration To Mr. Kramer's Exam Regrade Requests." I have thoroughly demonstrated in my pleadings that they have not followed regulations properly, and that they have indeed behaved unlawfully. The contention that

---

[5] The February 17, 2005, PTO decision, Reply Gov. Exh. C at 6 contains another egregious misrepresentation, "Furthermore, the facts presented in the question do not support Petitioner's contention that certain method claims may be indistinguishable from the apparatus claims in Patent X. The question did not provide for any facts to indicate that the method claim in answer (C) contains all the limitations of any of the apparatus claims in the patent. Therefore, to imply that the method claim in answer (C) may be indistinguishable from the apparatus claims in Patent X would be improper because the examination instructions specifically state "[d]o not assume any additional facts not presented in the questions."" The issue of whether a claim contains "all the limitations" is derived from the last sentence in MPEP 1412.03: "Although this amendment of the claims adds a method of making product B or adds a method of using product A, this is not broadening (i.e., this is not an enlargement of the scope of the original patent) because the 'newly claimed invention' contains all the limitations of the original patent claim(s)." Mr. Spar however, conveniently ignored another part of 1412.03 which states that newly added claims "should be analyzed to determine whether they contain every limitation …" This advice in the manual is undoubtedly derived from *Hockerson-Halberstadt, Inc.* v. *Converse Inc.*, 183 F.3d 1369 (Fed. Cir. 1999) which states that broadening in reexamination is a matter of claims construction and that the newly added claims must be compared to the original claims. The issue concerning the exam question is: How can one analyze, concerning every limitation, when the original claims were never recited in the in the first place? I have yet to hear from Mr. Spar any enumeration of any facts that I improperly assumed.

Peter R. Kramer v USPTO, et. al.                                                                                          11

they gave full consideration to my exam regrade requests is groundless, and has been fully discussed in my complaint and attached exhibits. Furthermore, as stated previously in Plaintiff's Opp at 8: "According to the principle of equitable estoppel, it may apply no matter how unequivocally the applicable time limitation is expressed. [*Bomba* v. *W 1. Belvidere, Inc.*, 579 F.2d 1067, (1978)]: "Since equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it may apply no matter how unequivocally the applicable limitations period is expressed." It also does not matter that they urged me to prematurely (but not necessarily timely) file a 35 U.S.C. 32 action, i.e., that they intended to induce me to file. The fact that their deception produced an unintended consequence, that I filed for rule 10.2(c) petition in response to the February 17, 2005, decision (because I correctly believed that my due process rights had been violated,) is immaterial. "To invoke doctrine of equitable estoppel to preclude a defendant from relying on a statute of limitations it is not necessary that defendant have intentionally misled or deceived plaintiff or even intended by its conduct to induce delay." Id. Indeed, since the defendants continue to maintain that their conduct was proper, their current representations are relevant: "Even though statements made by defendants after the statute of limitations had expired could not have induced plaintiff to allow the period to expire, those representations were clearly relevant to the reasonableness of plaintiff's delay." *City of Bedford v James Leffel & Co.*, 558 F.2d 216 (C.A.VA 1977). Indeed, because equitable estoppel acts on the defendant and is based on their actions, their continued insistence that they have done no wrong should continue to toll the deadline — that is — if it were decided that my complaint is purely a

Peter R. Kramer v USPTO, et. al.                                                    12

matter of 35 U.S.C. 32 subject matter jurisdiction, a condition that I genuinely doubt could apply.

### H. My Motion for Sanctions is not a Sur-Reply.

Frequently the issues concerning a Rule 11 motion are only tangentially related to the issues of primary concern to a civil action. Sometimes Rule 11 issues are so removed from the primary issues that they are considered satellite proceedings. However, when a contention or contentions submitted to the Court clearly violate Rule 11, as ascertained by an objective test, it should not be held that the argument for sanctions is a sur-reply merely because the argument is similar to others set forth in prior pleadings. It is the <u>defendants</u>' contentions that are at issue here, <u>not</u> my arguments.

### I. It does matter who does the re-grade.

Defense contends that the mere existence of a model answer set insures uniform grading. Def Opp at 6. If a machine were to perform grading and re-grading that contention would be true. Regrading involves <u>evaluation of arguments</u> and determination if they are <u>sufficiently persuasive</u>: "You are required to prove that your darkened answer is the most correct answer." (Def Exhibit A, Mot. to Dismiss) If there were no human intelligence exercising discretion, <u>there would be no point to regrading</u> except to check if the machine scored all of the marked bubbles on the answer sheet faithfully. (Re-grading is not like checking for hanging chads.) I <u>proved</u> my answers to AM 31 and PM 33 to be <u>absolutely</u> correct. The PTO simply refuses to admit error.

### III. Conclusion

In view of the foregoing arguments, my Motion for Sanctions should be granted.

Peter R. Kramer v USPTO, et. al.                                                          13

                                                        Respectfully submitted,

                                                        Peter R. Kramer

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Reply Memorandum to be served by Federal Express this 20th day of February, 2006, on:

John C. Truong
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, DC 20530

Peter R. Kramer
7 High St
Terryville, CT 06786
(860) 299-5364 cell
(860) 872-7000 ext 1292 (work)
(860) 533- 9795 (home)