UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PETER RONALD KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1455 (HHK) |
| | ) | |
| | ) | |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, | ) | |
| JON W. DUDAS, Director, USPTO, | ) | |
| JOHN J. DOLL, Commissioner for Patents, | ) | |
| HARRY I. MOATZ, Director, Office of | ) | |
| Enrollment and Discipline, | ) | |
| ROBERT J. SPAR, Director, Office of | ) | |
| Patent Legal Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed R Civ Rule 56(a) and LcvR 56.1, I the plaintiff, Peter R. Kramer,

respectfully move this Court to rule in favor of my Amended Complaint.  The record shows that

the decisions of the PTO are not valid, and as they are a nullity, the 30-day time limit does not

apply, therefore the 30-day clock will not commence until a legitimate 37 C.F.R. 10.2(c) decision

is rendered by the PTO.  Mandamus should be granted to compel the PTO act according to its

rules by remanding my petition for reconsideration to the Commissioner for Patents or an

alternative remedy should be granted.

Respectfully submitted

Peter R. Kramer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PETER RONALD KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1455 (HHK) |
| | ) | |
| | ) | |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, | ) | |
| JON W. DUDAS, Director, USPTO, | ) | |
| JOHN J. DOLL, Commissioner for Patents, | ) | |
| HARRY I. MOATZ, Director, Office of | ) | |
| Enrollment and Discipline, | ) | |
| ROBERT J. SPAR, Director, Office of | ) | |
| Patent Legal Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

I submit this memorandum in support of my motion for summary judgment.  I took the

registration examination on October 15, 2003, and received a grade of 68.  I petitioned under 37

C.F.R. 10.7(c) for regrade, and my petition was denied insofar as receiving a passing grade is

concerned, my score adjusted to 69.  The regrade was improperly performed by the Office of

Patent Legal Administration, (OPLA) rather than by the Office of Enrollment and Discipline

(OED).  The regrade was also improperly fashioned as a final agency action.  I then petitioned

for §10.2(c) review of the regrade including the fee specified by 37 C.F.R. 1.21(a)(5).  However,

rather than perform required review according to proper procedure, the task was improperly

assigned, ad hoc, to the Director of OPLA, Robert J. Spar, the same individual who had

previously decided the re-grade petition, and he, with considerable bias, reissued his own

previously rendered decision. Meanwhile, Harry Moatz, Director OED returned my fee,

fraudulently stating that the rules did not provide for a fee for reconsideration. Insofar as the

actions of the PTO violated their own rules and were also contrary to law, these agency actions

should be considered null and void. Accordingly the PTO should be compelled to follow their

own rules, by mandamus. Because the prior "final" agency actions are a nullity, defendants'

contentions concerning the 30-day time limitation specified in Local Civil Rule 83.7 are

baseless. Judicial review according to 35 U.S.C. 32 must follow exhaustion of administrative

review procedure, in this instance the procedure specified by 37 C.F.R. 10.2(c), which was

written pursuant to 35 U.S.C. 32. Even if the PTO actions were (somehow) to be considered

final agency actions, the 30-day limit should not be enforced. Insofar as the PTO attempted to

induce me to seek judicial review improperly by actively and fraudulently concealing availability

of §10.2(c), they sought to prevent legitimate judicial review, and thus should be estopped from

assertion of the 30-day limitation.

## RELEVANT RULES AND STATUTES

35 U.S.C. 32  Suspension or exclusion from practice.
The Director may, after notice and opportunity for a
hearing, suspend or exclude, either generally or in any
particular case, from further practice before the Patent
and Trademark Office, any person, agent, or attorney
shown to be incompetent or disreputable, or guilty of
gross misconduct, or who does not comply with the
regulations established under section 2(b)(2)(D) of
this title, or who shall, by word, circular, letter, or
advertising, with intent to defraud in any manner,
deceive, mislead, or threaten any applicant or prospective
applicant, or other person having immediate

or prospective business before the Office. The reasons
for any such suspension or exclusion shall be duly
recorded. The Director shall have the discretion to
designate any attorney who is an officer or employee
of the United States Patent and Trademark Office to
conduct the hearing required by this section. The
United States District Court for the District of Columbia,
under such conditions and upon such proceedings
as it by its rules determines, may review the action of
the Director upon the petition of the person so refused
recognition or so suspended or excluded.


35 U.S.C. 2 Powers and duties. [in part]
(a) IN GENERAL.— The United States Patent
and Trademark Office, subject to the policy direction
of the Secretary of Commerce—
(1) shall be responsible for the granting and
issuing of patents and the registration of trademarks;
and
(2) shall be responsible for disseminating to
the public information with respect to patents and
trademarks.
(b) SPECIFIC POWERS.— The Office—
(1) shall adopt and use a seal of the Office,
which shall be judicially noticed and with which letters
patent, certificates of trademark registrations, and
papers issued by the Office shall be authenticated;
(2) may establish regulations, not inconsistent
with law, which—
(A) shall govern the conduct of proceedings
in the Office;
(B) shall be made in accordance with section
553 of title 5;
(C) shall facilitate and expedite the processing
of patent applications, particularly those
which can be filed, stored, processed, searched, and
retrieved electronically, subject to the provisions of
section 122 relating to the confidential status of applications;
(D) may govern the recognition and conduct
of agents, attorneys, or other persons representing
applicants or other parties before the Office, and
may require them, before being recognized as representatives
of applicants or other persons, to show that
they are of good moral character and reputation and
are possessed of the necessary qualifications to render
to applicants or other persons valuable service,
advice, and assistance in the presentation or prosecution
of their applications or other business before the
Office;

37 C.F.R § 10.2 Director of Enrollment and Discipline.
(a)  Appointment. The Commissioner shall appoint a Director

of Enrollment and Discipline. In the event of the absence of the Director or a vacancy in the Office of the Director, the Commissioner may designate an employee of the Office to serve as acting Director of Enrollment and Discipline. The Director and any acting Director shall be an active member in good standing of the bar of a State.

(b) Duties. The Director shall:

(1) Receive and act upon applications for registration, prepare and grade the examination provided for in § 10.7(b), maintain the register provided for in § 10.5, and perform such other duties in connection with enrollment and recognition of attorneys and agents as may be necessary.

(2) Conduct investigations into possible violations by practitioners of Disciplinary Rules, with the consent of the Committee on Discipline initiate disci-plinary proceedings under § 10.132(b), and perform such other duties in connection with investigations and disciplinary proceedings as may be necessary.

(c) Review of Director's decision. Any final decision of the Director refusing to register an individual under § 10.6, recognize an individual under § 10.9 or § 10.14(c), or reinstate a suspended or excluded petitioner under § 10.160, may be reviewed by petition to the Commissioner upon payment of the fee set forth in § 1.21(a)(5). A petition filed more than 30 days after the date of the decision of the Director may be dismissed as untimely. Any petition shall contain (1) a statement of the facts involved and the points to be reviewed and (2) the action requested. Briefs or memoranda, if any, in support of the petition shall accompany or be embodied therein. The petition will be decided on the basis of the record made before the Director and no new evidence will be considered by the Commissioner in deciding the petition. Copies of documents already of record before the Director shall not be submitted with the petition. An oral hearing on the petition will not be granted except when considered necessary by the Commissioner.

## STATEMENT OF FACTS

1. On October 15, 2003, I took the Registration Examination for patent attorneys or agents ("the patent bar exam" or "the exam"), required by the PTO.

2. On December 22, 2003, Harry I. Moatz, PTO Director of Enrollment and Discipline mailed to me a "Notice of Results of October 15, 2003 Registration Examination." (Def. exh. Mot. Dismiss.)

3. The Notice included instructions for requesting a regrade pursuant to 37 C.F.R.

§ 10.7(c).

4. 37 C.F.R. § 10.2(c), which had provided for review of decisions refusing admission to practice, was in effect at the time I took the exam.

5. The Notice, fraudulently concealing § 10.2(c), improperly stated: "[i]n order to expedite your appeal rights, all regrade requests will be considered in the first instance by the Director of the United States Patent and Trademark Office. Decisions on regrade requests are final agency decision [sic], and are reviewable in the United States District Court for the District of Columbia under 35 U.S.C. § 32."

6. In February 2004, I petitioned OED for a regrade according to Rule 10.7(c). (Document 1-11, filed 22 July 2005.)

7. On October 25, 2004, the Director, Office of Patent Legal Administration (OPLA), issued a memorandum and order denying my petition for regrade insofar as a passing grade is concerned. My score was adjusted from 68 to 69. (Document 1-10, filed July, 22, 2005.)

8. On December 17, 2004, the PTO received my petition for reconsideration of the regrade decision. I asked for reconsideration concerning question AM #31 and PM #33 of the October 15, 2003, examination. I included the fee required for § 10.2(c) review, $130.00, according to § 1.21(a)(5).

9. On February 17, 2005, the Director, Office of Patent Legal Administration, issued a (self)-review of his October, 2004 decision. Included in the mailed envelope was a letter from Harry Moatz, Director, OED, returning my $130.00 fee, fraudulently stating that the rules did not provide for a fee for reconsideration. (Documents 1-7,

and 1-8, filed July 22, 2005.)

10. I sent a letter dated February 28, 2005, to Mr. Spar concerning serious errors in both decisions that he had rendered. The letter noted our prior telephone conversation earlier in that week, Mr. Spar having suggested that I write him a letter. (See document 1-6, filed July 22, 2005.)

11. I sent a follow-up letter to Mr. Spar dated March 22, 2005. (Document 1-5, filed July 22, 2005.)

12. I received a letter from Mr. Spar, dated March 28, 2005. (Document 1-4 filed July 22, 2005). The letter falsely stated, "[T]here are no rules or procedures for a petitioner to request for reconsideration of a decision on a petition for regrade under 37 C.F.R. 10.7(c)." (Document 1-4, filed July 22, 2005.)

13. I filed a petition under 37 C.F.R. 10.2(c);  the filing date was April 11, 2005. (Document 1-3, filed 22 July 2005.) I included the fee required by Rule 1.21(a)(5), a money order in the amount of $130.00. The money order was subsequently processed.

14. I received a letter from Mr. Spar, dated May 18, 2005. The letter, which was not an official memorandum and order, stated that my request under § 10.2(c) was improper because the PTO decisions had not been performed by OED. (Document 1-2, filed 22 July 2005.)

15. I subsequently telephoned the Commissioner's office and left a voicemail message with an individual identified as "Mr. Barr," with whom I later spoke to on two later occasions, in regard to Mr. Spar's letter of May 18, 2005.

16. I filed my complaint in this Court on July 22, 2005.

<u>DISCUSSION</u>

A.    <u>Applicants who took the October 15, 2003 Registration Examination were entitled to administrative review of regrading decisions.</u>

According to 35 U.S.C. 32 as supplemented by Local Civil Rule 83.7, applicants to practice are entitled to judicial review of the Commissioner's final action. The statute provides for an administrative review procedure prior to judicial review. The local rule expresses the expectation that the Commissioner's proceedings be on the record. Former 37 C.F.R. 10.2(c) is the regulation which provided the mechanism whereby administrative proceedings should have been conducted. Since the law required proceedings on the record and there was a rule in place providing the manner of conducting the procedure, the PTO was <u>required</u> to follow their own procedure. <u>American Airlines, Inc.v. Department of Transp</u>., 202 F.3d 788 (C.A.5 Tex). Under these circumstances, impromptu adjudication does not fall within the bounds of permissible discretionary authority. Thus this case is quite distinct from Premysler v. Lehman 71 F.3d 387.

1.    35 U.S.C. 32, which is essentially identical to its predecessor, 35 U.S.C. 11, provides that proceedings may be concerned with "substantial basis" for "grading of the examination." <u>Cupples v. Marzall</u>, 101 F. Supp. 579, (D.D.C. 1952).

2.    Cupples v. Marzall, id., also shows that the applicants must be <u>fairly heard</u>: "It is the position of the Commissioner of Patents that the function of the court in reviewing the action of the Commissioner under the provisions of 35 U.S.C.A. § 11 is not that of a trier of the facts, but is merely to review what has been done to determine whether or not a <u>fair hearing</u> [emphasis added] has been had and

whether there is substantial evidence to support the action of the Patent Office. With this the court agrees."

3.  37 C.F.R. §§ 10.2(c) and 10.7(b) require regrading by OED.  Rule 10.2(c) is broad in scope since it includes refusing registration under § 10.6, and § 10.6(b) in turn includes requirements under all of Part 10: "Any citizen of the United States who is not an attorney and **who fulfills the requirements of this part** [emphasis added] may be registered as a patent agent to practice before the Office."  Rule 10.7(b) requires grading by OED.  Regrading is a form of grading; it is not an administrative hearing of any sort, thus § 10.7(c) clearly expects OED to perform regrading.  Following a regrading decision by OED, Rule 10.2(c) provides for administrative review OED's decision by the Commissioner.  There is only one rule in 37 C.F.R. 10 that can conceivably apply to review of denial to practice, namely 10.2(c), which obviously expects the decision to deny registration to be carried out by the OED director.  <u>This is indeed the practice that was followed by the PTO until they fraudulently announced that § 10.2(c) had been "superseded."</u>[1]  Therefore, my interpretation of §§ 10.2(c) and 10.7(c) is clearly in agreement with the prior <u>actions</u> of the PTO, which the PTO itself had obviously carried out according to its construction of its rule.  Their claim that the rule had been "superseded" clearly shows that <u>they were aware that they could not change procedure unless they changed the rule</u>.

---

[1] A pdf document with several § 10.2(c) decisions is attached, Exh. A1-A3.  These were obtained from the same website that is listed in footnote2.

4.      Rules 10.2(c) and 10.7(c) were in effect at the time I took the exam.  These rules govern the process concerning administrative adjudication of my registration application.  The new rules superseding these were put in effect prospectively only.  Failure to follow these rules by the PTO constitutes denial of due process.

5.      The Director of the PTO does not have authority to extemporaneously establish regulations that change pre-existing rules.  35 U.S.C. 2(b)(2)(B) clearly states that regulations established under § 2(b)(2)(D) must comply with section 553 of title 5.  It is a self-evident principle that one cannot delegate authority that one does not enjoy.  As the Director does not have the power to violate section 553, he may not delegate authority permitting any subordinate to violate section 553.  Whoever the Director delegates authority to is bound by the same laws as bind the Director himself.  The PTO has performed an illusory and unlawful creation of authority that had never been delegated by Congress to the agency.  As stated earlier, the PTO had for many years routinely granted § 10.2(c) review of OED regrade decisions (since 1985 when the rule was established.)  However, ca., 2000, the agency began routinely deceiving applicants claiming that the rule had been superseded[2].  It should be noted that the rule had not been superseded until July 24, 2004 as announced in the Federal Register, 69 *Fed. Reg.* 35428.

---

[2]

This was excerpted from a PTO decision of an anonymous petitioner's § 10.2(c) request, found at the PTO web site http://www.uspto.gov/web/offices/com/sol/foia/oed/regrades/e117.pdf (Ex. B): "The USPTO condensed the regrade process for the April 12, 2000, exam. The previous two-step regrade and review process provided by 37 CF.R. §§ 10.7(c) and 10.2( c) was superseded. The Director of the USPTO delegated authority for deciding petitions under 37 CF.R. §§ 10.7(c) and 1O.2(c) to the Deputy Commissioner for Patent Examination Policy, who in turn delegated this authority to the Director of the Office of Patent Legal Administration. Accordingly, the January 5th decision said it was a final agency decision: "[a]s indicated in the instructions for requesting regrading of the Examination, in order to expedite a petitioner's appeal rights, all regrade requests have been considered in the first instance by the Director of the USPTO .... This is a final agency action."  I have identified 97 instances at this URL where PTO documents fraudulently inform unwitting applicants that § 10.2(c) has been

B.    The PTO decisions of October 25, 2004 and February 17, 2005 are illegitimate; they should be considered null and void.

Review according to 37 C.F.R. 10.2(c) is a matter of due process right. The PTO's Notice of Results of October 15, 2003 Registration Examination, announced that the PTO did not intend to fulfill its procedural obligation.  The February 17, 2005 action was certainly not conducted according to Rule 10.2(c).  The rule provides for review of an OED decision by the Commissioner.  In this instance, Robert J. Spar reviewed the decision of Robert J. Spar.  As noted above, the PTO was required to perform review according to this rule.  The PTO failed to follow its own rules and created an environment begging for a biased decision.  They openly admitted that the February, 2005 decision was not according to Rule 10.2(c), returning my fee on February 17, and later, (see plaintiff's exh., document 1-4 filed 22 Jul 2005,) refused to perform the required review because of a contrived technicality – a technicality created by their failure to follow proper procedure.


C.    The PTO should be estopped from assertion of time limitation defense.

The PTO Notice of Results fraudulently concealed the availability of Rule 10.2(c).  By attempting to prevent me from exhausting administrative procedures prior to filing for judicial review the defendants attempted to prevent me from filing a legitimate claim with the Court.  It is certainly reasonable that I would pursue exhaustion of proper administrative procedures.  I should not have to forgo judicial review because I properly pursued administrative review as required by rule and law.  The defendants should not be rewarded for their fraudulent and

---

"superseded."  The document e17.pdf cited above is also included as an attachment along with the other similar documents. Exh. C.

deceptive behavior.  The defendants have consistently maintained that they have done nothing

wrong by ignoring Rule 10.2(c), even to the extent of misrepresenting 35 U.S.C. §§ 2(b)(2)(D)

and 3(b)(3).  (See Plaint. Mot. for Sanctions., and Reply Memorandum.)


      D.     <u>The decision of February 17, 2005 was inherently biased.</u>

      Because the PTO assigned both decisions to the Director of OPLA, the February 17, 2005

decision was obviously biased.  I had criticized the October, 2004 decision rather strongly

questioning the integrity of grading.  I had commented that some of Mr. Spar's statements

concerning question MA #31 were unacceptably false and misleading.  As far as #33PM is

concerned I commented "[r]ather than answer my statements, it appears that a straw man has

been erected and shot down as a proxy; a situation that is entirely unacceptable …"  Several

other highly critical statements were also included.  Furthermore, because the PTO had already

declared the October 25, 2004 decision as a final action, it is clear that not only was Mr. Spar

obviously 'psychologically wedded to' his previous position, but that this issue had been

adjudged in advance.  It is clear that the conditions required to conclude unacceptable probability

of unfairness in administrative proceeding have been met, and violation of procedural due

process has also occurred.[3]

---

[3] Excerpted from U.S. v State of Oregon, 1991 U.S. Dist. LEXIS 14495, 774 F. Supp. 1568 (D.Or 1991): Absent the presence of a personal or financial stake in the outcome of the proceedings by the adjudicator, the test for determining a probability of unfairness has been articulated as one in which:

1) the presumption of honesty and integrity among administrative adjudicators is balanced against a realistic appraisal of psychological tendencies and human weaknesses where administrators have made prior judgments or commitment such that they would be so psychologically wedded to their previous positions that they would consciously or unconsciously avoid the appearance of having erred or changed position. Withrow v. Larkin, 421 U.S. at 55; and

2) whether "a disinterested observer may conclude that [the agency] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." Cinderella Career and Finishing Schools, Inc. v. FTC, 138

      E.      <u>The February 17, 2005 decision refused to consider all of my arguments.</u>

The main counter-argument put forth in both the October and February decisions dismissing my contention, (question PM#33,) concerning the lack of clarity about the statutory basis of an examiners rejection, are patently absurd.  I pointed out in my request for reconsideration in December, 2004, that their reasoning is self-contradictory and thus absurd on its face.  This issue was never addressed.  The PTO had a duty to consider all of the evidence I presented.  Agencies have a duty to consider all evidence in making adjudicatory decisions.  The PTO decisions are simply not supported by substantial evidence in the record, and as described in my amended complaint.  The PTO decisions fail the arbitrary and capricious standards.  Not only has the PTO failed to consider all of my arguments, but there are clear errors in judgment that have been plainly elucidated in my amended complaint.  For example the PTO maintained that I must have assumed facts not provided for in question AM#31, despite that fact that I made no factual assumptions, yet they remain unable to enumerate a single improper factual assumption.  It is evident that the PTO actions clearly fail standards for review according to <u>Overton Park v. Volpe</u>, 401 U.S. 402.  Not only was the PTO action arbitrary and capricious, but it involved obvious abuse of discretion, and was without observance of required procedure.  One may question not if they did anything wrong, but rather if they did anything right.

      F.      The environment created by deviant procedures precluded the possibility of a fair hearing of my petition for reconsideration.

I am not asking the Court to review the PTO actions according to 35 U.S.C. 32.  Despite the fact that I have raised issues normally considered in this type of review, the key issue is that

---

App. D.C. 152, 425 F.2d 583, 591 (D.C. Cir. 1970). Furthermore, to find a violation of procedural due process, it is the decision maker who must be biased; it is not sufficient to allege that other state officials not serving as the

procedural defects caused by <u>deliberate misconduct</u> prevented fair review, and indeed rendered the PTO actions a nullity. The issue is not that administrative review of refusal of recognition was unfair, but that it never happened. Rather than review the PTO proceedings, I believe that the Court should order the PTO to conduct bona fide proceedings. The proceedings carried out by the PTO are counterfeit procedures designed to avoid accountability associated with a fair hearing. The PTO should simply be ordered to follow their own rules. Both regrade and review were improperly conducted. I am asking the court to declare a nullity, that which has not been performed. This contrasts with Franchi, <u>Franchi v Manbeck</u>, 1991 U.S. Dist. LEXIS 5449, U.S.P.Q.2D (BNA) 1316, who received bona fide Rule 10.2(c) review of his regraded examination, where the court stated "[w]hat plaintiff seeks is to treat as a nullity what has been done." Franchi attempted to subvert the "orderly administrative mechanism established for review" through mandamus. <u>Franchi v. Manbeck</u>, 972 F.2d 1283. In contrast, I ask the Court to enforce the orderly mechanism, and order the PTO to conduct the review according to proper procedural mechanism, 37 C.F.R. 10.2(c). Alternatively, if this issue were considered to be subject matter of 35 U.S.C. 32, the PTO record, and my arguments in earlier pleadings before this Court, provide ample evidence in support of equitable estoppel. The record clearly shows that I diligently attempted to exhaust administrative remedies[4], and that defendants' fraudulent actions confused the issues concerning administrative procedures. Defendants continue to insist that they have done nothing wrong. Thus the cause for estoppel remains extant, and my motion should be granted.

---

adjudicator may be biased. Hammond v. Baldwin, 866 F.2d 172 (6th Cir. 1989).
[4] Following receipt of Mr. Spar's May 18, 2005 letter I was undecided concerning my next action, whether I should write another letter to the Commissioner, or whether I should petition the Director; I couldn't be sure if the 30-day

Respectfully submitted,

Peter R. Kramer

---

limit applied.  My confusion was directly caused by the defendants' deception.  My action with this Court in no way
subverts the intent of the 30-day time limit.