UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

|  |  |
|---|---|
| ) | APR 2 6 1999 |
| ) | Decision on |
| In re    ) | Petition for Review |
| ) | Under 37 C.F.R. § 10.2(c) |
| ) |  |

### MEMORANDUM AND ORDER

(hereafter "Petitioner") seeks review of the decision of the Director of the Office of Enrollment and Discipline (hereafter "Director"), dated August 7, 1998, denying his request for a higher score on the Examination to Practice in Patent Cases Before the U.S. Patent and Trademark Office (hereinafter "examination"), held on August 27, 1997.  The petition is denied.

### Background

An applicant for registration to practice in patent cases before the Patent and Trademark Office (hereafter "PTO") must achieve a passing score of 70 in both the morning and afternoon sections of the examination.  Petitioner took the examination held on August 27, 1997, and received a score of 66 on the morning section.

After receiving his morning section score, Petitioner requested that questions 28 and 29 be regraded, and that his score be raised two points for each question.  On August 7, 1998,

the Director denied the request and refused to increase Petitioner's score.

Petitioner now seeks review, under 37 C.F.R. § 10.2(c), by the Commissioner of Patents and Trademarks, of the Director's decision denying credit for Petitioner's answers to questions 28 and 29. Petitioner urges that two points be added to his score for each of these questions, and that he thereby be awarded a passing grade for the morning section of the examination held on August 27, 1998.

<u>Opinion</u>

Petitioner bears the burden of establishing error in the grading of his answers to examination questions 28 and 29. 37 C.F.R. § 10.7(c). All of Petitioner's arguments have been considered and, for the following reasons, no points will be added to his morning section score for the examination held on August 27, 1997.


<u>Question 28</u>

Question 28 reads as follows:

28. Inventor Jones received a patent that, through error and without deceptive intent, failed to disclose an embodiment of the invention. Eighteen months later, Jones asks whether a reissue application may be filed. Jones also tells you that the original patent with the blue ribbon seal has been lost. Your advice to Jones should include:

    (A)   under 35 U.S.C. § 251, new matter cannot be added to a reissue application.
    (B)   any added claims to the new embodiment would not satisfy 35 U.S.C. § 112.

2

(C)  under 35 U.S.C. § 251, it is too late to enlarge
     the scope of the issued claims in a reissue
     application.
(D)  under 35 U.S.C. § 251, Jones cannot get a reissue
     of a patent that has been lost.
(E)  (A) and (B).

The correct answer is (E).  More specifically, the question

inquires which of four statements should be included in advice to

inventor Jones who received a patent that, through error and

without deceptive intent, failed to disclose an embodiment of the

invention.  Eighteen months later, Jones asks whether a reissue

application may be filed.  Jones also informs you that the

original patent with the blue ribbon has been lost.  Choice (A)

is a correct statement, because new matter cannot be added to a

reissue application.  35 U.S.C. § 251.  Choice (B) is also

correct, because any added claims to the new embodiment, which

according to the fact pattern has not been disclosed, would not

satisfy 35 U.S.C. § 112.  In particular, the written description

requirement of the first paragraph of § 112 would not be

satisfied.  Choice (C) is not correct, because a broadening

reissue can be filed within 2 years of the issued claims, and

only 18 months have elapsed.  Choice (D) is not correct, because

35 U.S.C. § 251 does not preclude reissuance of a patent because

the blue-seal copy has been lost.  See 37 C.F.R. § 1.178

(providing that an affidavit attesting to the loss of the patent

may be submitted in lieu of the original patent).  Accordingly,

the best answer is choice (E), which is both (A) and (B).

3

Petitioner urges that choice (A) is also a good answer because choice (B) is ambiguous.  Petitioner argues that additional language must be added to make choice (B) unambiguous. This argument is without merit.  While Petitioner's rewording of choice (B),

> (B)  Any added claims <u>drawn</u> to <u>the subject matter contained in</u> the new embodiment would not satisfy 35 U.S.C. § 112

is a true statement, the added verbiage neither adds to nor shades the meaning of the original statement.

Petitioner argues further that the following alternative interpretation of choice (B) is justified, and false:

> (B)  Any added claims <u>drawn to subject matter disclosed but not claimed in the original disclosure, appended</u> to the new embodiment would not satisfy 35 U.S.C. § 112.

This argument is without merit.  Petitioner's interpretation of choice (B) contradicts the facts given in the statement of the question, <u>i.e.</u>, that the original patent failed to disclose the new embodiment.  Examinees are warned expressly in the Directions on the cover sheet of the examination: "[d]o not assume any additional facts not presented in the question."  Petitioner's interpretation ignores this prohibition.  Moreover, although on the facts of question 28, claims could be presented to "subject matter disclosed but not claimed in the original disclosure," such claims, if "appended to the <u>new embodiment</u>," (emphasis added) would not satisfy 35 U.S.C. § 112.  By hypothesis, the

4

"new embodiment" is not disclosed in the original patent.

Accordingly, Petitioner's version of choice (B) is also a true

statement.

In view of the preceding considerations, Petitioner is not

entitled to credit for his answer to question 28.


Question 29

Question 29 reads as follows:

29.  You have filed a complete plant patent application
claiming 1) a distinct and new plant variety and 2) a method
for obtaining the plant variety.  Which of the following
statements is/are false?

    I.    You may not amend the application to add
additional description of the plant variety
inadvertently omitted from the original
application.

    II.    You may be required to deposit an adequate sample
of the plant variety with an acceptable depository
and the claims may be rejected under 35 U.S.C.
§ 112 without the deposit.

    III.    You may be required to restrict the claims between
plant variety and plant method inventions you want
examined for ultimate issuance as the single claim
in the plant patent application to which you are
entitled.

(A)    III.
(B)    II and III.
(C)    I and II.
(D)    I and III.
(E)    I, II, and III.

The correct answer is (C), because statements I and II are false,

whereas statement III is true.  Petitioner agrees that statements

I and II are false, but urges that statement III is also false,

and therefore (E) is the most correct answer.

Section 161 of the Patent Act states that "[t]he provisions of this title relating to patents for inventions shall apply to patents for plants, except as otherwise provided." As explained in MPEP 1608, the sole exception is set forth in 35 U.S.C. § 162. Restriction, pursuant to 35 U.S.C. § 121, is part of the examination process and is not excluded in Section 162. Thus, because the examiner could restrict the claims pursuant to 35 U.S.C. § 121, Statement III is a true statement.

Petitioner urges that statement III is false relative to the fact pattern of question 29, "[y]ou have filed a complete plant patent application . . . ." Petitioner urges that restriction is improper in this case because restriction practice is optional under 35 U.S.C. § 121. In particular, Petitioner argues that "in the case of a plant patent application, such a restriction is not permitted to be optional, according to 37 C.F.R. § 1.164." Petitioner urges further that 37 C.F.R. §§ 1.163(c)(10), 1.164 and MPEP § 1605 constitute exceptional provisions under 37 C.F.R. § 1.161 that preclude the application of the other rules of Title 37, Code of Federal Regulations. Accordingly, Petitioner concludes that choice (E) (I, II and III are false) is the correct answer.

Petitioner's arguments are not persuasive. Question 29 asks only whether "you" may be required to restrict the claims. A restriction requirement only requires that the claims be directed towards independent and distinct inventions. These independent

6

and distinct inventions may, or may not, constitute patentable subject matter. When two claims are restricted, it is impossible to know, prior to examination, whether either claim will be allowed. No provision in 37 C.F.R. § 1.164 mandates the imposition of a restriction requirement, which is discretionary, by statute. Nor do any provisions in Sections 1.163 or 1.164 preclude application of 37 C.F.R. § 1.142, which governs restriction. Accordingly, since Statement III states you "may" be required to restrict the claims, it is a true statement.

In view of the preceding considerations, Petitioner is not entitled to credit for his answer to question 29.

ORDER

Upon consideration of the petition to the Commissioner for a higher score on the morning section of the examination held on August 27, 1997, it is

ORDERED that the petition is <u>denied</u>.


Q. Todd Dickinson
Acting Assistant Secretary of Commerce and
   Acting Commissioner of Patents and Trademarks

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

|   |   |
|---|---|
| In re | ) |
|   | ) Decision on |
|   | ) Petition for Review |
|   | ) Under 37 C.F.R. § 10.2(c) |
|   | ) |

## MEMORANDUM AND ORDER

(Petitioner) seeks review of the decision of
the Director of the Office of Enrollment and Discipline (OED)
dated July 30, 1996, denying Petitioner's request for a higher
score on the morning and afternoon sections of the Examination to
Practice in Patent Cases Before the U.S. Patent and Trademark
Office held on May 3, 1995 (1995 Examination).  The petition is
denied-in-part and dismissed-in-part.

### Background

An applicant for registration to practice before the Patent
and Trademark Office (PTO) in patent cases must achieve a passing
grade of 70 in both the morning and afternoon sections of the
examination.  Petitioner originally received a score of 60 on the
morning section of the 1995 Examination and a score of 56 on the
afternoon section of the 1995 Examination.

As indicated in a Notice to Petitioner dated September 27,
1995, two points were added to Petitioner's score on the morning
section because of an error in programming the answer key.  Thus,

1

the original score on the morning section was raised from 60 to 62.

On October 4, 1995, Petitioner sent a Request for Regrading of questions 1, 15-18, 21, 22, 38, and 46 from the morning section of the 1995 Examination and questions 1-4 from the afternoon section of the 1995 Examination. A decision from OED was mailed to Petitioner on December 12, 1995. This decision did not add any points to Petitioner's score for the morning section, but the score for the afternoon section was changed from 56 to 64.

By petition to the Director of OED dated December 21, 1995, Petitioner requested reconsideration of the December 12, 1995 decision. In a decision mailed July 30, 1996, the Director determined that no additional points should be awarded to Petitioner's score for the morning section, which remained at 62. The Director determined that Petitioner's score for the afternoon section should be raised from 64 to 66.

By petition received August 4, 1996, Petitioner requests that the Commissioner reverse the Director's denial of credit for questions 1, 15-18, 22, 38, and 46 from the morning section of the 1995 Examination. Petitioner also took exception to certain points made in the July 30, 1996, decision with regard to Petitioner's score on the afternoon section of the 1995 Examination.

2

On August 28, 1996, Petitioner once again sat for the Examination to practice in Patent Cases Before the U.S. Patent and Trademark Office (1996 Examination).   Petitioner successfully passed the afternoon section of the 1996 Examination.

Opinion

## 1. Morning Section

Pursuant to 37 C.F.R. § 10.7(c), Petitioner must particularly point out any errors that occurred in the grading of the 1995 Examination.   The directions to the morning section state: "No points will be awarded for incorrect answers or unanswered questions."   The burden is upon the Petitioner to show that his chosen answer is the most correct answer.   Petitioner has failed to meet this burden.

Furthermore, Petitioner's arguments are replete with assumptions that are not supported by the facts presented in the questions.   The directions to the morning section state:

> Do not assume any additional facts not presented in the questions.   When answering each question, unless otherwise stated, assume that you are a registered patent agent.   The most correct answer is the policy, practice and procedure which must, shall or should be followed in accordance with U.S. patent statutes, the PTO rules of practice or procedure, the Manual of Patent Examining Procedure (MPEP), and the Patent Cooperation Treaty (PCT) articles and rules, unless modified by a subsequent court decision or a notice in the Official Gazette.

For the following reasons, no points will be added to Petitioner's score for the morning section of the 1995 Examination.

3

QUESTION 1

Question 1 reads as follows:

1.    You represented Hale before the PTO in conjunction with
a patent application filed January 8, 1992, which issued May
4, 1993.  That application had a divisional patent
application filed December 22, 1992, which issued July 27,
1993.  Both applications (parent and divisional) were based
upon a foreign application filed December 23, 1991, in
France. In the parent application, a claim for benefit of
foreign priority was made and the requirements of
35 U.S.C. 119 were met before issuance of the patent.
However, a claim for benefit of foreign priority was not
made in the divisional application prior to its issuance as
a patent. What, if any, is the *most appropriate procedure*
for perfecting this benefit of foreign priority after the
divisional has issued as a patent?

      (A)    File a substitute patent application.

      (B)    File a petition and proper fee to have the benefit
           of foreign priority of the parent application
           entered in the record of the divisional
           application.

      (C)    The omission of the benefit of foreign priority
           may not be corrected in any manner.

      (D)    File a request for Certificate of Correction and
           Fee.

      (E)    File a request and proper fee for reexamination of
           the divisional application.

In the model answer, choice (D) is identified as the correct

answer on the basis of 35 U.S.C. § 255; 37 C.F.R. § 1.323; and

MPEP § 201.16[1]. Petitioner chose choice (C).

A certificate of correction may be used to correct clerical,

typographical or minor errors in a patent, which are not the

---

[1] All references to the MPEP are addressed to the Original
Sixth Edition of the MPEP, dated January 1995.

4

fault of the PTO.  35 U.S.C. § 255.  The omission of a claim for priority under 35 U.S.C. § 119 in a continuing application, where the parent application included the claim for priority, is such an error.  Cf. In re Van Esdonk, 187 USPQ 671 (Comm. Pat. 1975) (holding that the omission of a claim for priority in a continuation application can be corrected with a certificate of correction where the parent application made the claim for priority).  See also MPEP § 201.16 (stating that the holding of Van Esdonk is applicable to all applications having benefits under 35 U.S.C. § 120).  Therefore, choice (D) is correct.

Petitioner argues that choice (C) is correct.  Choice (C) states that there is no manner to correct the omission of a claim for foreign priority.  However, as noted above, the claim for priority may be added via a certificate of correction. Therefore, choice (C) is incorrect.

Petitioner also argues that Van Esdonk refers to a continuation application, not a divisional application.  Both continuation and divisional applications are "continuing" applications entitled to the benefits of 35 U.S.C. § 120. 37 C.F.R. § 1.53(b)(1).  Therefore, a certificate of correction may be used to add a claim for foreign priority in the present situation.

Petitioner further argues that the relative timing of the perfecting of the foreign priority in the parent and the filing

5

of the divisional are unknown.  <u>Van Esdonk</u> holds only that a

certificate of cörrection may be used to add a claim for priority

under 35 U.S.C. § 119 in a continuing application, where the

claim for priority was perfected in the parent application.  It

does not state that the claim for priority must be perfected in

the parent application prior to filing the continuing

application.

Petitioner's request for credit on question 1 is denied.

**QUESTION 15**

Question 15 read as follows:

15.  Jones received a Notice of Allowance and Issue Fee Due
     on January 4, 1994, for a traffic warning sign that may
     be placed on the surface of a roadway to warn passing
     motorists of the presence of a disabled vehicle ahead.
     Sadly, however, on the day Jones received the Notice, a
     motor vehicle accident left Jones in a coma for many
     months and in the hospital until April 4, 1995.  In the
     pile of doctor and hospital bills in his home, Jones
     found a Notice of Abandonment for failure to pay the
     issue fee.  The notice was dated April 18, 1994.
     Jones, in a panic at the thought of losing his patent,
     has sought you out today to act on his behalf before
     the office to save his patent.  Which of the following
     would be the most appropriate response for you to make
     on Jones behalf?

     (A)  File a petition to the Commissioner to accept a
          late fee accompanied by the proper petition fee,
          late payment fee, and issue fee.  Also, include a
          verified statement that the delay was
          unintentional and a description of the
          circumstances surrounding the abandonment to make
          the record clear.

     (B)  File a petition to the Commissioner to waive the
          statutory requirement for paying the application
          issue fee, and a verified showing that the delay
          was unavoidable.

6

(C)   File an affidavit or declaration explaining the
      circumstances regarding why the payment of the
      issue fee was late, together with a terminal
      disclaimer and the issue and late payment fees.

(D)   File a new application because a petition to
      revive his application and to accept
      unintentionally late payment of the issue fee must
      be filed within one year of the date of the Notice
      of Allowance and Issue Fee Due.

(E)   File a petition to the Commissioner to revive his
      application accompanied by the proper issue fee,
      late payment fee and petition fee. Also, include
      a verified statement showing that the delay was
      unavoidable and a terminal disclaimer and fee to
      cover the period of abandonment.

        In the model answer, choice (E) was identified as the
correct answer.

        When an application is abandoned for failure to pay the
issue fee, the Commissioner may accept the issue fee under the
provisions of 37 C.F.R. § 1.316(b) and (c). See MPEP § 203.07.

        When the delay in payment is unavoidable, the Commissioner
may accept late payment of the issue fee upon the submission of a
petition including: (1) the issue fee, if not already paid, (2)
the fee for late payment under 37 C.F.R. § 1.17(l), and (3) a
showing that the delay was unavoidable. 37 C.F.R. § 1.316(c).
In addition, a terminal disclaimer is required dedicating the
term of abandonment to the public. 37 C.F.R. § 1.316(d).

        When the delay in payment is unintentional, the Commissioner
may accept late payment of the issue fee upon the submission of a
petition including: (1) the issue fee, if not already paid, (2)
the fee for unintentionally delayed payment under

7

37 C.F.R. § 1.17(m) and 3) a statement that the delay was
unintentional. 37 C.F.R. § 1.316(c). In addition, the petition
must be filed either: (1) within one year of the date on which
the application became abandoned or (2) within three months of
the date of a first decision of a petition for acceptance of a
late payment of a fee, where the delay was unavoidable under
section 1.316(b). 37 C.F.R. § 1.316(c)(4).

Petitioner has failed to show that choice (A) is more
correct than choice (E). The facts provide that the Notice of
Issue Fee Due was dated January 4, 1994. Therefore, the date of
abandonment was April 4, 1994. See 37 C.F.R. § 1.316(a). No
petition under 37 C.F.R. § 1.316(b) was filed. Therefore, choice
(A) is clearly incorrect, as more than a year has elapsed since
the date of abandonment. See 37 C.F.R. § 1.316(c)(4).

Petitioner's argument that choice (E) is missing the
requirement of 37 C.F.R. § 1.137(a)(1) of a proposed response to
continue prosecution is not convincing. Section 1.137(a) deals
with abandonment for failure to prosecute. The facts state that
the application was abandoned for failure to pay the issue fee,
which is governed by 37 C.F.R. § 1.316. Therefore,
37 C.F.R. § 1.137(a) does not apply. Choice (E) is clearly more
correct than choice (A).

Petitioner also argues that precedent indicates that a car
accident is "unintentional" and not "unavoidable." Petitioner
has not cited any precedent. Petitioner bears the burden of

8

showing that his answer is correct.    Hence, Petitioner has not

carried his burdén.

        Petitioner's request for credit on question 15 is denied.

## QUESTION 16

        Question 16 read as follows:

16.    Which one of the following statements is *false* regarding
        practice before the PTO?

        (A)    A computer program listing which is less than 10
                printed pages may be submitted as drawings in a
                patent application.

        (B)    A preliminary amendment to the specification filed
                after the filing date of the application, but
                before the first Office action, becomes part of
                the original disclosure of the application.

        (C)    A personal interview after a final Office action
                is permissible provided the examiner is advised of
                the intended purpose and content of the interview,
                either orally or in writing, prior to the
                interview.

        (D)    After a non-final second action where the claims
                were twice rejected, an appeal may be taken to the
                Board of Patent Appeals and Interferences.

        (E)    A request for reexamination of a patent can be
                made anonymously through an attorney.

        In the model answer, choice (B) was identified as the best

answer, citing MPEP § 714.09.    Petitioner chose choice (C).

        An amendment filed after the filing date cannot add new

matter to the disclosure.    35 U.S.C. § 132; 37 C.F.R. §§ 1.53(b),

1.118.    Therefore, any matter added by amendment after the filing

date is not entitled to the original filing date and is not part

of the original disclosure.    See MPEP § 714.09 (stating that an

                                        9

amendment, filed before the first action, but not filed along with the original application, is not part of the original disclosure). Therefore, as admitted by Petitioner, choice (B) is clearly a false statement.

Petitioner asserts that choice (C) is also an false statement, citing MPEP § 713.09. In order for an interview after a final Office action to be proper the examiner must be: 1) advised, orally or in writing, of the purpose and content of the interview, and 2) be convinced that disposal or clarification of the issue for appeal may be accomplished with only nominal further consideration. MPEP § 713.09. Petitioner argues that choice (C) only states the first requirement. Therefore, according to Petitioner, it is "clearly false to state that an interview may be granted based solely on the request itself, when the MPEP states that an interview may be granted based on the examiner's evaluation of the substance of the request and the extent of reconsideration required to disposition [sic] the request." Petition at page 2.

Choice (C) states that an interview is permissible when the listed conditions are met. The term permissible is defined as: "that [which] may be permitted: allowable; admissible." Webster's Third New International Dictionary Of The English Language Unabridged 1683 (1993). Choice (C), therefore, does not state that an examiner must grant an interview when the examiner is advised of the intended purpose and content of the interview,

10

but rather that the examiner may grant an interview when advised

of the intended purpose and content of the interview.  As such,

choice (C) is clearly in accordance with MPEP § 713.09, and is a

true statement.

Petitioner's request for credit on question 16 is denied.

## QUESTION 17

Question 17 read as follows:

17.  X and Y are joint inventors of the subject matter
     claimed in an application pending before the PTO.
     However, only X through error and without deceptive
     intent of the part of X and Y, was named as the sole
     inventor at the time the application was filed.
     Assuming payment of any fees involved, can the
     inventorship be corrected and if so, how?

     (A)  No, because an inventorship error of this type
          cannot be corrected.

     (B)  Yes by filing an amendment naming Y as a joint
          inventor and a new oath signed by both X and Y.

     (C)  Yes, by filing a request for certificate of
          correction.

     (D)  Yes, by filing a continuing application with a
          declaration signed by both X and Y.

     (E)  Yes, by filing a reissue application with an oath
          naming both X and Y as the inventors along with a
          new oath signed by X and Y setting forth how the
          error arose without deceptive intent.

In the model answer, choice (D) is identified as the correct

answer, citing 35 U.S.C. § 116, 37 C.F.R. §§ 1.48(a) and 1.324,

and MPEP §§ 201.03, 1402, and 1481.

When, through error and without deceptive intent, a person

is not named as an inventor in an application, the application

11

may be amended to include that person as an inventor, under such terms as provided by the Commissioner. 35 U.S.C. § 116. If at least one of the correct inventors has been named in an application, but it is discovered that correction of inventorship is necessary, applicant may correct the inventorship by abandoning the application and filing a continuing application under 37 C.F.R. § 1.53, naming the correct inventive entity. MPEP § 201.03. Thus, a person may correct inventorship by filing a "continuation" application. Therefore, choice (D) is the correct answer.

Petitioner selected choice (B).

Inventorship may also be changed by filing an amendment accompanied by a petition, according to 37 C.F.R. § 1.48(a) (entitled "Correction of Inventorship"), which states:

> If the correct inventor or inventors are not named in a application for patent through error without any deceptive intentions on the part of the actual inventor or inventors, the application may be amended to name only the actual inventor or inventors. Such amendment must diligently be made and must be accompanied by:
>
> (1) A petition including a statement of facts verified by the original inventor or inventors establishing when the error without deceptive intention was discovered

> (2) An oath or declaration by each actual inventor or inventors as required by § 1.63
>
> (3) The fee set forth in § 1.17

(Emphasis added).  Therefore, choice (B) is incorrect since it does <u>not</u> include the filing of a petition along with the amendment as required by 37 C.F.R. § 1.48(a).

Petitioner contends that choice (D) fails to indicate that the prior application is abandoned.  An application will become abandoned if no action is taken with respect thereto.  See 37 C.F.R. § 1.135(a) ("If an applicant of a patent application takes no action within the time period provided under §§ 1.134 and 1.136, the application will become abandoned . . . .").  Moreover, since abandonment has no effect on change of inventorship, whereas a petition is required to change inventorship by amendment, choice (D) is more correct than choice (B).

Finally, Petitioner argues that choice (D) is missing 1 of 2 requirements advised by the MPEP while choice (B) is missing 1 of 3 requirements of the C.F.R. and, therefore, choice (B) is more correct than choice (D).  As noted above, under choice (D), the original application will go abandoned by inaction, providing the "missing" requirement.

Petitioner's request for credit on question 17 is denied.

**QUESTION 18**

Question 18 read as follows:

> 18.    On April 14, 1995, you filed a patent application in the PTO together with a check to cover the filing fees. However, due to unforeseen circumstances, measures were not taken to cover the amount of your check written

13

against your bank account.  Consequently, you received
a notice from the PTO dated April 30, 1995, that your
check has been returned for insufficient funds.  In
order to avoid abandonment of your recently filed
application, what steps do you need to take in addition
to depositing ample funds in your bank account?

(A)  You need only pay the difference in funds for the
     filing fee, within the period set in the notice.

(B)  You must timely open a deposit account, and ask
     that the remaining portion of the fee due for
     filing the application be charged against your
     deposit account.

(C)  Make payment to encompass the filing fee including
     a return check charge in a timely fashion.

(D)  Make payment to encompass the filing fee, a
     returned check charge, and a surcharge fee in a
     timely fashion.

(E)  Do (A) or (B)

The model answer identified choice (D) as correct, citing

MPEP § 509.01.  Petitioner chose choice (E).

The facts state that the initial check for the filing fee

was returned for insufficient funds.  Therefore, the filing fee

is still due.  In addition, 37 C.F.R. § 1.16(e) requires a

surcharge for paying the filing fee at a date later than the

filing date and 37 C.F.R. § 1.21(m) requires a charge for a

returned check.  Hence, choice (D) includes all of the fees

necessary under the rules and is therefore the correct choice.

Petitioner argues that choice (D) is incorrect in that the

model answer refers to MPEP § 509.01, which covers deposit

accounts.  The citation provided to support the correct answer,

14

choice (D), in the model answer booklet references MPEP § 509.01.
This explains why choice (B) is incorrect.

Petitioner also argues that choice (E) is correct in that
the language of choices (A) and (B) are ambiguous enough to cover
the fees required by 37 C.F.R. § 1.21(m). Choice (A) however,
does not include all of the fees necessary under the rules. In
addition, choice (B) does not include a specific request to
charge the fee for a returned check under 37 C.F.R. § 1.21(m).
See MPEP § 509.01 (stating that fees under 37 C.F.R. §§ 1.19,
1.20, and 1.21 will not be charged as a result of a general
authorization under 37 C.F.R. § 1.25).

Petitioner's request for credit on question 18 is denied.

## QUESTION 22

Question 22 read as follows:

22. Your office is located in close proximity to the PTO.
    A client comes to you this morning and wants a design
    patent application filed on a coffee pot. After a
    brief discussion with your client, you determine that
    the application must be filed today in order to avoid a
    statutory bar. Your client hands you several very
    clear black and white photographs of the pot which show
    all sides and a good perspective view of the pot. You
    know that there is no way that ink drawings can be
    prepared by the end of the day. Can you file a design
    application today and be accorded a May 3, 1995 filing
    date?

    (A)  No, because a novelty search must be completed
         before a design application can be filed.

    (B)  No, because photographs are not acceptable (other
         than for plant patents) and ink drawings are
         required for a complete application.

15

(C)  Yes, by filing a proper specification and claim today, and filing formal drawings and an executed oath at a later date along with the appropriate fee.

(D)  Yes, by filing a proper specification and claim today, together with the photographs, petition, and appropriate fee.

(E)  Yes, by filing a proper specification and claim today, together with an oath and filing fee, and later submitting the drawings by amendment.

In the model answer, the correct answer was identified as choice (D), citing 37 C.F.R. §§ 1.53(b) and 1.84(b) and MPEP §§ 608.02 and 1503.02.  Petitioner selected choice (B).

Photographs are not ordinarily permitted in design or utility applications, but may be accepted upon petition under 37 C.F.R. § 1.84(b).  Choice (B), therefore, is clearly incorrect because ink drawings are not required in all instances for design or utility applications.

Choice (D), however, correctly includes all of the necessary procedural steps of 37 C.F.R. § 1.84(b) for getting photographs approved in place of ink drawings.  Choice (D) is, therefore, the correct answer.

Petitioner's request for credit on question 22 is denied.

QUESTION 38

Question 38 read as follows:

38.  Which of the following is not required in a request for reexamination?

(A)  A form PTO-1465 (Request for Reexamination Transmittal Form).

16

(B)    A copy of the original patent.

(C)    A copy of every patent or printed publication relied upon.

(D)    An identification of every claim for which reexamination is requested.

(E)    A statement pointing out each substantial new question of patentability based on prior patents and printed publications.

In the model answer, the correct answer was identified as choice (A), citing 37 C.F.R. §§ 1.510 and 1.560 and MPEP § 2214. Petitioner chose choice (B).

Form PTO-1465, is helpful to persons filing a reexamination request, but is not required in a request for reexamination.  See MPEP § 2214.  Therefore, as admitted by Petitioner, choice (A), stating that form PTO-1465 is not required in a reexamination request is a correct choice.

Petitioner asserts that Choice (B) is also a correct choice. Choice (B) provides that a copy of the original patent is not required in a reexamination request.  A request for reexamination must include the entire specification (including claims) of the original patent in the form of cut up copies of the original patent with only a single column on each page and a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent.  37 C.F.R. § 1.510(b)(4). Therefore, a copy of the patent is clearly required.  The copy is a modified version of the original publication from the PTO. However, it is still a copy of the original patent, as it has all

17

of the original subject matter. Hence, a copy of the original

patent is required in a reexamination request and, therefore,

choice (B) is a wrong answer.

Petitioner argues that a mere copy of the original patent

does not meet the requirements of the rule, as the rule requires

any disclaimers, certificates of correction, or reexamination

certificates. This argument fails, as the fact that more than a

copy of the patent may be required does not detract from the fact

that a copy is required.

Petitioner's request for credit on question 38 is denied.

**QUESTION 46**

Question 46 read as follows:

46. Inventors A and B originally gave attorney Z a power of
attorney to prosecute their application before the PTO.
At this time, inventor B has decided that she no longer
wants attorney Z to represent her. Instead, inventor B
wants you to represent her. Thus, inventor B wants the
power of attorney to attorney Z revoked. Inventor A
does not agree and wants attorney Z to continue. How,
if at all, should the revocation and appointment of a
new power of attorney be properly handled.

(A) Papers revoking the power of attorney/appointing a
new power of attorney signed only by inventor A
should be accompanied by a petition giving good
and sufficient reasons for acceptance should be
filed together with an appropriate fee.

(B) Papers revoking the power of attorney/appointing a
new power of attorney cannot be accepted without
the concurrence of inventor A.

(C) Papers revoking the power of attorney/appointing a
new power of attorney cannot be accepted without
concurrence of attorney Z.

18

(D)    Papers revoking the power of attorney/appointing a
       new power of attorney need to be signed by
       inventor B and must include a statement from
       inventor A indicating that A wishes to retain his
       current attorney.

(E)    Papers revoking the power of attorney/appointing a
       new power of attorney signed only by you should be
       accompanied by a petition giving good and
       sufficient reasons as to why such papers should be
       accepted should be filed together with an
       appropriate fee.

In the model answer, the correct answer was identified as
choice (A), citing MPEP § 402.10. Petitioner chose choice (B).

Petitioner argues that both inventors A and B must sign the
revocation of power of attorney in order for it to be effective.
This is incorrect. One joint inventor may change attorneys in a
patent application without the consent of the other(s) by filing
a revocation of power attorney and a new power of attorney,
signed only by that inventor, along with a petition and fee under
37 C.F.R. § 1.182, setting forth good and sufficient reasons for
the change. See MPEP § 402.10 (setting forth the procedure for
one inventor to change attorneys without the consent of the
other(s)).    This is the procedure set forth in choice (A).

The absolute language in choice (B) that a revocation of
power of attorney and appointment of a new power of attorney from
B can never be accepted without concurrence from A is clearly
contrary to MPEP § 402.10. Therefore, choice (B) is incorrect.

Petitioner argues that a mere disagreement is not enough to
show good and sufficient reasons for B filing a revocation and

19

appointment without A's concurrence.   However, choice (A) clearly sets forth the proper procedure for petitioning for a change of inventorship without approval of all inventors, as set forth in MPEP § 402.10.

Petitioner's request for credit on question 46 is denied.

## 2. Afternoon Section

In considering Petitioner's request, the Commissioner notes that Petitioner passed the afternoon section of the 1996 Examination.   Thus, a decision on Petitioner's pending petition on the afternoon section of the 1995 Examination has been rendered moot.

### CONCLUSION

Petitioner's grade for the morning section of the 1995 Examination will not be changed.   The final grade for the morning section is 62 points.   Also, since Petitioner has passed the afternoon section of the 1996 Examination, a decision on Petitioner's petition on the afternoon section of the 1995 Examination is dismissed.

20

## ORDER

Upon consideration of the Petition to the Commissioner under 37 C.F.R. § 10.2(c), it is

ORDERED that the petition is <u>denied-in-part</u> and <u>dismissed-in-part</u>.


<u>3/27/97</u>

Date

Lawrence J. Goffney, Jr.
Acting Deputy Assistant Secretary of Commerce
   and Deputy Commissioner of Patents
   and Trademarks

A:\REGRADEJ.WPD

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

|       |   |                          |
|-------|---|--------------------------|
|       | ) |                          |
|       | ) | Decision on              |
| In re | ) | Petition for Review      |
|       | ) | Under 37 CFR § 10.2(c)   |
|       | ) |                          |

## MEMORANDUM AND ORDER

(Petitioner) seeks review of the decision

of the Director of the Office of Enrollment and Discipline (OED)

dated August 12, 1996, denying Petitioner's request for a higher

score on the morning section of the Examination to Practice in

Patent Cases Before the U.S. Patent and Trademark Office held on

May 3, 1995 (Examination).    The petition is denied.

### Background

An applicant for registration to practice before the Patent

and Trademark Office (PTO) in patent cases must achieve a passing

grade of 70 in both morning and afternoon sections of the

Examination.    Petitioner scored a 68 on the morning section of

the Examination.[1]

_____

[1]  As indicated in a Notice (dated September 27, 1995) that
was forwarded to Petitioner, two points were added to
Petitioner's initial morning Examination score of 66 due to an
error in programming the answer key, thus giving Petitioner a
score of 68.

1

On October 25, 1995, petitioner requested a regrade of questions 17 and 44 from the morning section of the Examination. On March 14, 1996, OED denied Petitioner's regrade request adding no points to Petitioner's score.

On April 5, 1996, Petitioner requested reconsideration of the decision denying Petitioner's regrade request for questions 17 and 44. On August 12, 1996, the Director of OED denied Petitioner's reconsideration request adding no points to Petitioner's score.

Petitioner now asks the Commissioner to reverse the Director's decision denying credit for questions 17 and 44, and add four points to Petitioner's morning Examination score.

### Opinion

Pursuant to 37 C.F.R. § 10.7(c), Petitioner must establish any errors that occurred in the grading of the examination. The directions to the morning section state: "No points will be awarded for incorrect answers or unanswered questions." The burden is upon the Petitioner to show that her chosen answer is the most correct answer. Petitioner has failed to meet this burden.

Furthermore, Petitioner's arguments are replete with assumptions that are not supported by the facts presented in the questions.  The directions to the morning section state in part:

> Do not assume any additional facts not presented in the questions.  When answering each question, unless otherwise stated, assume that you are a registered patent agent.  The most correct answer is the policy, practice, and procedure which must, shall, or should be followed in accordance with U.S. patent statutes, the PTO rules of practice and procedure, the Manual of Patent Examining Procedure (MPEP), and the Patent Cooperation Treaty (PCT) articles and rules, unless modified by a subsequent court decision or a notice in the Official Gazette.

validity of the model answers and the Director's decision.  All of petitioner's arguments have been considered, but lack merit.  For the following reasons, no points will be added to Petitioner's score for the morning section of the Examination.

(B)    Yes, by filing an amendment naming Y as a joint inventor and a new oath signed by both X and Y.

(C)    Yes, by filing a request for a certificate of correction.

(D)    Yes, by filing a continuing application with a declaration signed by X and Y.

(E)    Yes, by filing a reissue application with an oath naming both X and Y as the inventors along with a new oath signed by X and Y setting forth how the error arose without deceptive intent.

In the model answer, choice (D) is identified as the correct answer on the basis of 35 U.S.C. § 116; 37 C.F.R. §§ 1.48(a) and 1.324; and MPEP 201.03, 1402, and 1481.

MPEP 201.03, entitled "Correction of Inventorship in an Application," states:

> Correction of inventorship is permitted by amendment under 35 U.S.C. 116. If at least one of the correct inventors has been named in an application but it is discovered that correction of inventorship is necessary, applicants are advised to consider abandoning the application and the filing of a continuing application under 37 C.F.R. 1.53 with the correct inventive entity named. This will eliminate the need for a petition for correction of inventorship under 37 C.F.R. 1.48. See 35 U.S.C. 120 and 37 C.F.R. 1.78 regarding claiming the benefit of the filing date of a prior application.

(Emphasis added). Thus, MPEP 201.03 expressly provides that one can correct inventorship by filing a "continuation application." Therefore, choice (D) is the correct answer. Petitioner,

however, selected choice (B).

One may also correct inventorship by filing an amendment accompanied by (1) a petition. (2) a declaration, (3) the appropriate fee, and (4) a written consent of any assignee. See 37 C.F.R. § 1.48(a). Section 1.48(a) (entitled "Correction of inventorship") states:

> If the correct inventor or inventors are not named in a nonprovisional application through error without any deceptive intention on the part of the actual inventor or inventors, the application may be amended to name only the actual inventor or inventors. Such amendment must be diligently made and <u>must be accompanied by</u>:

> (1) <u>A petition including a statement of facts verified by the original named inventor or inventors establishing when the error without deceptive intention was discovered and how it occurred</u>;

> (2) An oath or declaration by each actual inventor or inventors as required by § 1.63;

> (3) The fee set forth in § 1.17(h); and

> (4) The written consent of any assignee.

Therefore, choice (B) is incorrect since it does <u>not</u> include the filing of a petition along with the amendment as required by 37 C.F.R. § 1.48(a).

Petitioner makes several arguments as to why Petitioner believes choice (B) is the correct answer, none of which have merit. Petitioner argues that the statement in the body of the

5

question "[a]ssuming payment of any fees involved" indicates that a petition was included with the amendment and the oath recited in choice (B). The statement regarding fees simply indicated . that the reader need not concern oneself with the appropriate amount of fees that needed to be paid. The reader was told to assume that all fees would be paid for "any" action regardless of the action. This statement did not indicate that a petition accompanied the amendment and the oath of choice (B).

Petitioner next argues that although choice (D) is "correct," it fails to mention 35 U.S.C. § 120 and also fails to indicate that the prior application must be abandoned. First, Section 120 concerns the benefit of the early filing date and is unrelated to the issue at hand (i.e., correction of inventorship). In addition as Petitioner concedes, an application will become abandoned if no action is taken with respect thereto. See 37 C.F.R. § 1.135(a) ("If an applicant of a patent application fails to respond within the time period provided under §§ 1.134 and 1.136, the application will become abandoned . . . .")[2] Moreover, since abandonment has no effect on the change of inventorship, whereas a petition is required to

―――――――

[2] Petitioner's discussion of 37 C.F.R. § 1.138 is irrelevant since it deals with express abandonments.

6

change inventorship by amendment, choice (D) is the correct answer.

Finally, Petitioner argues that it is more prudent to correct inventorship by amendment as opposed to filing a continuing application. This is irrelevant to the question at hand because the filing of an amendment alone would not correct inventorship. Quite simply, if one followed the actions recited in choice (B) chosen by Petitioner, inventorship would not be corrected since a petition was not included as is required. Therefore, choice (B) is an incorrect answer; choice (D) is the correct answer.

Petitioner's request for credit on question 17 is denied.

**QUESTION 44**

Question 44 read as follows:

44. You submitted through the U.S. Postal Service a patent application containing a specification and claims to the PTO which describe amino acid sequences. The application was accompanied by a certificate of mailing under 37 C.F.R. § 1.8 dated May 5, 1994. The application was received by the PTO on May 12, 1994. The name of the inventor was inadvertently omitted and was filed with the PTO on May 15, 1994, along with a petition setting forth the reasons for the delay and the petition and surcharge fees. The amino acid sequences, in Computer Readable Format (CRF) were filed in the PTO on May 20, 1994, and were entered into the case on June 20, 1994. Your application is entitled to a filing date of:

7

        (A) May 5, 1994.
        (B) May 12, 1994.
        (C) May 15, 1994.
        (D) May 20, 1994.
        (E) June 20, 1994.

In the model answer, choice (B) was identified as the correct answer on the basis of 37 C.F.R. §§ 1.8(a)(2)(i)(A) and 1.53(b); and MPEP 512 and 601.01.

Section 1.53(b)(1) of 37 C.F.R. states:

> The filing date of an application for patent filed under this section, except for a provisional application, is the date on which: a specification containing a description pursuant to § 1.71 and at least one claim pursuant to § 1.75; and any drawing required by § 1.81(a), are filed in the Patent and Trademark Office in the name of the actual inventor or inventors as required by § 1.41.

Therefore, since the question indicates that the "application containing a specification and claims . . . . was received by the PTO on May 12, 1994," choice (B) is the correct answer. See MPEP 601.01(a). Petitioner, however, selected choice (D).

Petitioner argues that choice (D) (May 20, 1994), the date the CRF was filed with the PTO, is the correct answer. However, since a CRF is not a prerequisite to obtain a filing date (as for example a claim is), Petitioner's argument fails.

The presence of a sequence listing is not required for an application to obtain a filing date. MPEP 2429 ("Compliance is

8

not a filing date issue."). In addition, Section 1.821(g) of 37 C.F.R. provides procedures for the correction of an application that fails to comply with the sequence rules. For example, if a satisfactory listing is not submitted at the time of filing, the PTO sends a notice to the applicant indicating the compliance requirements. Thus, failure to comply with the sequence listing requirements is curable. More importantly, the failure to submit a CRF in no way affects the filing date of an application.

Petitioner argues that the submission of the CRF amounted to the submission of "new matter" and thus a later filing date. Since there is nothing in the question to indicate that the CRF contained new matter, Petitioner's argument fails.

Petitioner's request for credit on question 44 is denied.

## CONCLUSION

Petitioner's grade for the morning section will not be changed. The final grade for the morning section is 68 points.

ORDER

Upon consideration of the Petition to the Commissioner under

37 CFR § 10.2(c), it is

ORDERED that the petition is denied.


6-3-97
Date

Lawrence J. Goffney, Jr.
Acting Deputy Assistant Secretary of Commerce
  and Deputy Commissioner of Patents
  and Trademarks


cc:

10

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

```
                    )
                    )     Decision on
In re               )     Petition for Review
                    )     Under 37 C.F.R. § 10.2(c)
_____ )
```

## MEMORANDUM AND ORDER

("Petitioner") seeks review of the decision of the Director of the Office of Enrollment and Discipline ("Director") denying his request for a higher score on the afternoon section of the Patent Practitioner's Examination ("exam") held on May 3, 1995. Petitioner also requests a waiver of the fee required by 37 C.F.R. § 10.2(c) and set forth in 37 C.F.R. § 1.21(a)(5). The petition is <u>dismissed</u> for failing to timely file for review. 37 C.F.R. § 10.2(c).

### BACKGROUND

An applicant for registration to practice before the Patent and Trademark Office ("Office") in patent cases must achieve a passing grade of 70 on the afternoon section of the Exam. Petitioner originally scored 44 points on the afternoon section. Responsive to Petitioner's Request for Regrade, 14 points were restored in the decision on Request for Regrade dated December

11, 1995, and Petitioner's score on the afternoon section was raised to 58. Petitioner received a passing grade on the morning section upon regrading and the passing score is duly noted in the December 11, 1995, decision. Petitioner subsequently filed a Request for Reconsideration of the Decision for Regrade of the Afternoon Section of the Examination held on May 3, 1995. Reconsideration of the Decision on Regrade of Petitioner's answers to the afternoon section of the exam resulted in no additional points being added to his score as indicated by the Director's decision dated August 7, 1996.

By petition, dated September 13, 1996, and received on September 18, 1996, Petitioner requests the Commissioner to review and overturn the final decision of the Director pursuant to 37 C.F.R. § 10.2(c) and to waive the required petition fee for this review pursuant to 37 C.F.R. § 10.170.

<u>OPINION</u>

A.  <u>Dismissal</u>

The Director's Decision on Request for Reconsideration of Decision on Regrade of the Afternoon Section of the Examination held on May 3, 1996, specifically states, at page 18, that "[a]ny petition to the Commissioner for review of this decision must be

2

filed pursuant to 35 CFR 10.2(c) within thirty (30) day after the date of this decision." Petitioner's petition is dated in what appears to be his own handwriting as September 13, 1996, more than thirty days after the date of the Director's decision. Petitioner did not request a waiver of the deadline and, in fact, provided no explanation for his failure to timely file his petition. Deadlines are an important part of the practice before the Office and, accordingly, in the absence of any request for a waiver, the petition is dismissed for not being timely made. 37 C.F.R. § 10.2(c).*

Finally, I note that even if his petition was considered on the merits, it would have been unlikely that it would have resulted in any relief. The burden is on the Petitioner to show that his draft claims provided as answers to the afternoon portion of the May 3, 1995, exam included no errors in view of the exam's instructions. In particular, Petitioner presented

---

* Petitioner also requests a waiver of the petition fee. Had the petition been accepted, his request for waiver of the review fee would have been denied. In particular, Petitioner failed to establish an "extraordinary situation," and failed to provide a statement of facts that could support granting such a waiver on the ground that "justice requires" such a waiver. See 37 C.F.R. § 10.170. Rather than provide specific facts to support his request, Petitioner merely opines that his financial position has deteriorated.

three arguments to support his petition, none of which are directed to the merits of his draft claims or the errors in the grader's deduction of points. Rather than point out and distinctly discuss specific alleged errors in the grading of his exam answers, Petitioner merely summarily argues three points: (1) the grader made an "intentional" error in adding points deducted (albeit the error worked in his favor); (2) the "regrade process did not address [the] entirely flawed grading of the exam;" and (3) his petition for reconsideration was "an exercise in futility."

None of these arguments rise to the level of providing a statement of the facts involved and the points to be reviewed as required by 37 C.F.R. § 10.2(c)(1). Consequently, no error in the grading of his examination was established.

<u>ORDERED</u>

The petition is <u>dismissed</u>.

May 13, 1997
Date

LAWRENCE J. GOFFNEY, JR.
Acting Deputy Assistant
Secretary of Commerce and
Acting Deputy Commissioner of
Patents and Trademarks

cc:

5

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

|  |  |  |
|---|---|---|
| In re | ) ) ) ) ) | Decision on **APR 2 6 1999**<br>Petition for Review<br>Under 37 C.F.R. § 10.2(c) |

## MEMORANDUM AND ORDER

(Petitioner) seeks review of the decision on the Request for Regrade by the Director of the Office of Enrollment and Discipline (Director), dated September 1, 1998, denying petitioner's request for a higher score on the afternoon section of the Examination to Practice in Patent Cases Before the U.S. Patent and Trademark Office held on August 27, 1997. The petition is <u>denied</u> to the extent Petitioner seeks a passing grade. Two additional points are added to Petitioner's score.

### Background

An applicant for registration to practice before the Patent and Trademark Office (PTO) in patent cases must achieve a passing grade of 70 in both morning and afternoon sections of the examination. Petitioner originally passed the morning section of the examination and scored a 65 on the afternoon section of the examination held on August 27, 1997. No additional points were awarded in the September 1, 1998, Decision on Request for Regrade. To achieve a passing grade, petitioner must acquire five additional points on the afternoon section of the examination.

In his October 2, 1998, Petition to the Commissioner, Petitioner continues to challenge the Director's grading of six questions in the afternoon section. Specifically, Petitioner requests

review of his answers to the following questions:  Part 1- question 7; Part 2-questions 5, 18, 25, 27; and, Part 3-question 3.

**Opinion**

Pursuant to 37 CFR § 10.7(c), Petitioner must particularly point out the errors which the applicant believed occurred in the grading of his or her examination in the request for regrade. The directions also state that: "[n]o points will be awarded for incorrect answers or unanswered questions."  The directions further state:

> Where two or more choices are correct, the most correct answer is the answer which refers to each and every one of the correct choices. . . . The most correct answer is the policy, practice, and procedure which must, shall, or should be followed in accordance with the U.S. patent statutes, the PTO rules of practice and procedure, the Manual of Patent Examining Procedure (MPEP), and the Patent Cooperation Treaty (PCT) articles and rules, unless modified by a subsequent court decision or a notice in the *Official Gazette*.  There is only one most correct answer for each question.

The burden is upon the Petitioner to show that his chosen answer is the most correct answer.

**Part 1- Question 7:**

Question 7 reads as follows:

> 7.    Publications dated after the filing date of an application providing information or the current state of the art first publicly disclosed after the filing date can supplement the disclosure in the application to make the disclosure enabling where the application did not disclose how to make or use the claimed invention, and claims in the application should not be rejected under 35 U.S.C. § 112, first paragraph, for lack of an enabling disclosure.

The question calls for a True/False answer, (A) being True and (B) being False.  Petitioner selected answer (A), True.  In the model answers, choice (B), False, is stated as the correct

- 2 -

answer on the basis of 35 U.S.C. § 112, first paragraph and MPEP § 2164.05(a), which states in relevant part:

> Publications dated after the filing date providing information publicly first
> disclosed after the filing date **generally** cannot be used to show what was known
> at the time of filing . *In re Gunn*, 537 F.2d 1123, [1128], 190 USPQ 402 [405-06]
> (CCPA 1976) . . . . [A] later dated publication cannot supplement an insufficient
> disclosure in a prior dated application to make it enabling . . . . (Emphasis added).

Petitioner seizes on the word "generally" in this passage to argue that this statement in the MPEP is not "all inclusive," and therefore can sometimes be True. Accordingly, Petitioner argues that "both answers true (A) and false (B) are equally correct."

Use of the word "generally" in the cited MPEP section cannot be used to controvert well established law under 35 U.S.C. § 112. For purposes of enablement, "the issue is not what the state of the art is today or what a skilled artisan today would believe, but rather what the state of the art was [at the filing date of the application] and what a skilled artisan would have believed at that time." In re Wright, 999 F.2d 1557, 1563 n. 8, 27 USPQ2d 1510, 1514 n.8 (Fed. Cir. 1993) (citing Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384, 231 USPQ 81, 94 (Fed. Cir. 1987) and In re Hogan, 559 F.2d 595, 604, 194 USPQ 527, 535 (CCPA 1977)). The Federal Circuit has stated that for purposes of enablement, developments occurring after the effective filing date of the application "are of no significance regarding what one skilled in the art believed as of that date." Wright, 999 F.2d at 1563, 27 USPQ2d at 1514. Thus, the law clearly requires enablement to be established as of the filing date of the application.

Petitioner has made no suggestion as to how the later dated document described in question 7, having information not publicly disclosed until after the filing date of the application, can establish the state of the art as of the filing date. Instead, Petitioner argues that "PTO is in a

better position to identify the circumstances" than he is. Petitioner bears that burden, however, not the PTO. In this case, the burden has not been met. The directions for the examination clearly state that the most correct answer is the "policy, practice, and procedure which must, shall, or should be followed in accordance with" the patent statute, regulations, MPEP and case law. Here, the law and the MPEP are clear that documents dated after the filing date providing information publicly disclosed after the filing date "generally" cannot be used to establish knowledge in the art as of the filing date. Clearly, the most correct answer to the question consistent with the law and PTO policy is (B), false. No error has been shown and no points are awarded.

**Part 2- Question 5:**

Question 5 reads as follows:

5.     You draft a patent application disclosing and describing an adjustable doll stand shown in the drawing to the right (Figure 1) having a clamp to hold a doll upright. You draft the following independent claim:

1.     A doll stand comprising a base (1), a hollow threaded tube (2) upstanding from the base, said hollow threaded tube having an outer diameter and an upper surface parallel to said base, a threaded rod (3) disposed in and threadedly interrelated with said hollow threaded tube, and a clamp consisting of two metal wires (4 and 5) secured to said rod.

In the absence of question of supporting disclosure, which of the following would not be a proper dependent claim in the application when the application is filed in the PTO.

(A)     2.     A doll stand according to Claim 1 further comprising a ring (6) coaxially disposed with respect to said hollow tube and threadedly interconnected with said rod, said ring having a bottom surface disposed in flat face contacting relation with the upper surface of the hollow tube, said ring being seated flush with said hollow tube.

(B)     2.     A doll stand according to Claim 1 wherein said base is pecan resin.

- 4 -

(C)    2.    A doll stand according to Claim 1 wherein said claim further comprises horizontally disposed ceramic arms on the end of said metal wires.

(D)    (A) and (C).

(E)    (A), (B), and (C).

Petitioner selected answer (A). In the model answer, choice (C) is correct because the use of the limiting language "consisting of" in claim 1 in the clause reciting the clamp would prohibit any dependent claim from reciting additional elements as part of the clamp. The dependent claims recited in answers (A) and (B) are not improper.

Petitioner argues that dependent claim (A) is invalid on the basis of indefiniteness under 35 U.S.C. § 112, ¶ 2 for lack of antecedent basis. Specifically, Petitioner states in his original petition for regrade that:

> Answer (A) is a dependent claim which contains references to "said hollow tube" and "the hollow tube", which lack antecedent basis and are confusing. The independent claim makes reference to "a hollow threaded tube" and "said hollow threaded tube". It is unclear if the tube referenced in the dependent claim is the same tube in the independent claim. Therefore, the dependent claim of answer (A) is indefinite because it contains words or phrases whose meaning is unclear and confusing. (MPEP 2173.05(e)).

It is not clear how Petitioner came to the conclusion that the dependent claim lacks antecedent basis for the phrase "the hollow tube." Petitioner admits that claim 1 describes a "hollow threaded tube." No other hollow tube is mentioned or shown in the Figure, which presumptively includes all of the claimed elements. To conclude that there is some other "hollow tube" present would be to assume facts not presented in the question. Therefore, because there is no other possible hollow tube presented by the question, there is no chance of confusion and, therefore, no indefiniteness problem.

Even if it is assumed, for the sake of argument, that the dependent claim in (A) were improper for indefiniteness, (A) would not be the best answer because the claim in (C) is also not proper for the reasons stated above. Petitioner never contests that answer (C) is a proper claim. Thus, given this hypothetical, answer (D) would have been the best answer because it includes both (A) and (C). Therefore, answer (A) would never be the best answer, even accepting all of Petitioner's arguments. Because Petitioner has not established how answer (A) could be the "most correct" answer under any circumstances, no error has been shown and no points are awarded.

### Part 2 - Question 18:

Question 18 reads as follows:

18. Your client informs you that he has discovered a chemical compound that exhibits outstanding insecticidal properties, and he provides you with reliable test data establishing this fact. Assume that the name "compound Z" fully and definitely identifies such compound. Preliminary to preparing a patent application, you conduct a search of the prior art, and find that the compound *per se* and a method for its preparation are disclosed in a scientific journal that was published some 75 years ago. Notwithstanding, you decide to file a patent application on your client's invention. Which of the following is the best way to claim your client's invention?

(A) A method of preparing compound Z, said compound being characterized by outstanding insecticidal properties.
(B) An insecticidal compound consisting of compound Z.
(C) A process for using compound Z as an insecticide.
(D) An insecticide substantially as shown and described.
(E) An insecticide comprising compound Z and a carrier.

Question 18 is ambiguous, making it unclear which answer is most correct. Therefore, no points will be deducted for this question. Two points will be added to Petitioner's score.

**Part 2 - Question 25:**

Question 25 reads as follows:

Applicant filed a patent application relating to a prefabricated water-tight structure which utilized steel panels to which is bonded an elastomeric chlorosulphonated polythene. The elastomeric chlorosulphonated polythene is sold under the trademark HYPALON. It is acknowledged that those skilled in the art know how to make such materials adaptable for a variety of building applications. Assuming no issue of support arises, which of the following claims is properly rejectable under 35 U.S.C. § 112, second paragraph?

(A)    1. A prefabricated panel for a building system having a surface comprising HYPALON continuously bonded to a surface of a thin sheet steel member by an adhesive which is resistant to corrosive fluids.

(B)    1. A prefabricated water-tight structure comprising a prefabricated panel, said panel comprising a thin sheet steel member bonded by an adhesive to an elastomeric chlorosulphonated polythene, said elastomeric chlorosulphonated polythene being sold under the trademark HYPALON, and said adhesive being resistant to corrosive fluids.

(C)    1. A prefabricated water-tight structure comprising an elastomeric chlorosulphonated polythene, an adhesive, and a thin sheet steel member, said elastomeric chlorosulphonated polythene being sold under the trademark HYPALON, and characterized by good wear resistance, and said elastomeric chlorosulphonated polythene being continuously bonded by said adhesive to a surface of a thin sheet steel member, said adhesive being resistant to corrosive fluids.

(D)    1. The prefabricated panel for a structure having a surface comprising a thin membrane of an elastomeric chlorosulphonated polythene, said elastomeric chlorosulphonated polythene being continuously bonded to a surface of a thin sheet steel member by an adhesive.

(E)    1. A prefabricated water-tight structural system comprising a diaphragm characterized by good heat, ozone and water resistance, said diaphragm having a surface comprising a thin membrane of an elastomeric chlorosulphonated polythene, said elastomeric chlorosulphonated polythene continuously bonded to a surface of a thin sheet steel member by an adhesive which is resistant to corrosive fluids.

In the model answer, choice (A) is identified as the best answer. Petitioner chose choice

(E), but argues that the question is flawed because all of the answer choices are rejectable under

35 U.S.C. § 112 for indefiniteness.

As the model answer and the Director's decision point out, choice (A) would properly be rejectable under 35 U.S.C. § 112 as indefinite because it uses a trademark as a limitation to describe the claimed compound.  MPEP § 2173.05(u) and the cases cited therein make it very clear that a trademark or trade name may only be used to identify a source of goods, *not the goods themselves*.  Thus, the claim in choice (A) is indefinite, because the trademark in that claim is used as a limitation to describe the claimed compound itself, not as a designation as to the source of the claimed compound.  In contrast, the trademark HYPALON in choices (B) and (C) is appropriately used as an identifier of source of the claimed compound, which is accurately described as an "elastomeric chlorosulphonated polythene."  Answers (D) and (E) also appropriately identify the claimed compound by its chemical identity, without reference to the trademark.    Therefore, assuming proper support, as required by the question instructions, answers (B) through (E) would not be rejected as indefinite.

Petitioner's arguments that all of the choices would be rejectable as indefinite are not persuasive.  Specifically, Petitioner argues that "all the answers can be 'properly rejected' for indefiniteness as they all contain members and structure which have no supporting disclosure."  These arguments ignore the premise of the question which expressly assumes that "no issue of support arises."  No points are awarded.

**Part 2 - Question 27**:

Question 27 reads as follows:

27.    Applicant filed a patent application relating to adhesive compositions having a paste-like consistency and comprising filler admixed with liquid monomer, the filler being water-insoluble solid filler which forms a paste with the liquid monomer, and is essentially inert with respect to the monomer and is insoluble in the monomer. The specification states, "The compositions of this invention must contain, as essential ingredients, at least one monomer of a class of alpha-cyanoacrylic acid

esters and at least one filler." The compositions are characterized as being capable of being applied to a substrate submerged in water. Claim 1 reads as follows:

1.    An adhesive composition having a paste-like consistency and comprising filler admixed with liquid monomer, the filler being water-insoluble solid filler which forms a paste with the liquid monomer, and is essentially inert with respect to the monomer and is insoluble in the monomer, the composition being capable of being applied to a substrate submerged in water.

The examiner rejected claim 1 under 35 U.S.C. § 112, second paragraph, by virtue of the functional statement regarding application to a substrate submerged in water therein, and under 35 U.S.C. § 112, first paragraph, as unduly broad. You decide to amend the application by canceling claim 1 and adding a new claim or claims. Assuming proper claim numbering, which of the following claims and arguments accords with proper PTO practice and procedure and would overcome the rejections?

\* \* \* \*

(B)    <u>Claim</u> - An adhesive composition having a paste-like consistency and comprising filler admixed with at least one liquid monomer of a class known as alpha-cyanoacrylic acid esters, the filler being water-insoluble solid filler which forms a paste with the liquid monomer, and is essentially inert with respect to the monomer and is insoluble in the monomer, the composition being capable of being applied to a substrate submerged in water.
<u>Argument</u> - The 35 U.S.C. § 112, second paragraph, rejection is traversed on the ground that functional language in patent claims is permissible so long as it sets out and circumscribes a particular area with a reasonable degree of precision and particularity. The 35 U.S.C. § 112, first paragraph, rejection is obviated because the breadth of the language "liquid monomer" has been narrowed to an essential ingredient, i.e., at least one liquid monomer of a class known as alpha-cyanoacrylic acid esters.

\* \* \* \*

(D)    <u>Claim</u> - An adhesive composition having a paste-like consistency and comprising filler admixed with at least one liquid monomer of a class known as alpha-cyanoacrylic acid esters, the filler being water-insoluble solid filler which forms a paste with the liquid monomer, and is essentially inert with respect to the monomer and is insoluble in the monomer.
<u>Argument</u> - The 35 U.S.C. § 112, second paragraph, rejection is obviated because the functional statement is no longer recited in the claim. The 35 U.S.C. § 112, first paragraph, rejection is obviated because the breadth of the language "liquid monomer" has been narrowed to an essential ingredient, i.e., at least one liquid monomer of a class known as alpha-cyanoacrylic acid esters.

(E)    (B) and (D).

In the model answer, choice (E) is identified as the best answer. The reason given is that the claims set forth in (B) and (D) do not violate 35 U.S.C. § 112, first and second paragraphs.

Petitioner asserts that choice (D) is the most correct answer because the claim set forth in choice (B) contains functional language. Petitioner argues that choice (B) is not the most correct answer because it requires an interpretation of whether the claim sets out and circumscribes a particular area with a reasonable degree of precision and particularity and because leaving this "subjective evaluation" up to the examiner might not result in allowance of the claim. Petitioner believes that choice (D) is more correct because it avoids functional issues and related opinions and because it takes discretion out of the examiner's hands. This argument assumes that the examiner will not act appropriately in response to arguments made that, according to the MPEP, would overcome a rejection. This is not a proper assumption to make for purposes of the examination. The question asks for both "claims and arguments" which accord with proper PTO practice to overcome the rejections.

The question asks "which of the following claims and arguments accords with proper PTO practice and procedure and would overcome the rejections." Choice (E) is the best answer because the options given in (B) and (D) would both accord with proper PTO practice and procedure and would both overcome the rejections. While it is true that choice (B) requires the person taking the exam to determine whether the limitation "capable of being applied to a substrate submerged in water" circumscribes a particular area with a reasonable degree of particularity and requires a "subjective" decision to be made by the examiner, this does not make choice (B) any less correct than choice (D). Rather, because this limitation does circumscribe a particular area with a reasonable degree of particularity, the correct answer takes into account

that both (B) and (D) accord with proper PTO practice and procedure and would overcome the

rejections. As the test directions require: "Where two or more choices are correct, the <u>most</u>

<u>correct</u> answer is the answer which <u>refers to each and every one of the correct choices</u>."

(Emphasis added). Because (E) contemplates that both (B) and (D) satisfy this condition, (E) is

the best answer. No points are awarded.

**Part 3 - Section 3 - Question 3:**

Question 3 refers to a disclosure of a bottle stopper (not repeated here) and reads as

follows:

3.    Your client indicates that he wants protection on the ornamental aspects of his invention. You decide to prepare a design patent application for him. Which of the following would be a proper design patent claim covering your client's invention?

(A)    The ornamental design for a bottle stopper.
(B)    The ornamental design for a bottle stopper as shown and described.
(C)    The ornamental design for an item as shown and described.
(D)    A bottle stopper which controls the release of pressurized gas from the bottle as shown and described.
(E)    The ornamental design for a champagne bottle neck and cap as shown and described.

The model answer identifies (B) as correct, based on 37 C.F.R. § 1.153(a) and MPEP

§ 1503.03. Petitioner chose answer (A). Section 1.153(a) states in relevant part: "The claim

<u>shall</u> be in formal terms to the ornamental design for the article (specifying name) as shown, or as

shown and described." (Emphasis added). Petitioner argues that MPEP § 1503.03 makes use of

the language "as shown" or "as shown and described" optional. Therefore, petitioner asserts that

the MPEP is in conflict with 37 C.F.R. § 1.153 and, thus, answers (A) and (B) are equally correct

and that both should be given credit.

MPEP § 1503.03, as of the time of the examination in August 1997, states in relevant part:

> A design patent application may only include a single claim. The single claim should normally be in formal terms to "The ornamental design for (*the article as specified in the Title of the Invention*) as shown." The description of the article in the claim should be consistent in terminology with the title of the invention. See MPEP § 1503.01.
>
> When there is a properly included special description of the design in the specification (see MPEP § 1503.01), or a proper showing of modified forms of the design or other descriptive matter has been included in the specification, the words "and described" should be added to the claim following the term "shown"; i.e., the claim should read "The ornamental design for (*the article as specified in the Title of the Invention*) as shown and described". (Emphasis added).

Nothing in this passage of the MPEP suggests that the formal terms of claiming set out in 37 C.F.R. § 1.153 are optional. Petitioner's argument that the MPEP and the regulation are in conflict is not persuasive. Moreover, the lack of the terms "as shown and described" in the claim of answer (A) would fail to particularly point out and describe the claimed invention as required by 35 U.S.C. § 112, ¶ 2. In any case, answer (A) does not conform to the formal claiming requirements of the regulation, whereas answer (B) does comply. The examination directions state in relevant part that the "most correct answer" is the "policy, practice, and procedure which must, shall, or should be followed" in accordance with the law, regulations, and MPEP. (Emphasis added). Thus, answer (A) could not be the "best answer" to this question under any circumstances, because it does not conform to the requirements of the regulation and the policy that "should" be followed under the MPEP requires the "as shown and described" language. No points are awarded.

## CONCLUSION

Therefore, Petitioner's grade for the Afternoon Section is adjusted by the addition of two points, bringing the total score for the afternoon section to 67 points.

## **ORDER**

Upon consideration of the petition to the Commissioner, it is

ORDERED that the petition is <u>denied</u> to the extent that Petitioner seeks a passing score, although two points are added to the score on the afternoon section of the exam for a total of 67 points.

Q. Todd Dickinson
Acting Assistant Secretary of Commerce and
   Acting Commissioner of Patents and
   Trademarks

cc:

**BEFORE THE DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE**

|  | ) |  |
|---|---|---|
|  | ) | Decision on Request |
| In re | ) | for Reconsideration |
|  | ) |  |
|  | ) |  |

## <u>MEMORANDUM AND ORDER ON RECONSIDERATION</u>

(Petitioner) petitions the Director of the United States Patent and Trademark Office (USPTO) for review of the January 5, 2001, decision on his request for a regrade of the Registration Examination (exam) held on April 12, 2000. This petition is treated as a request for reconsideration because the January 5, 2001, regrade decision was a final agency action.

Petitioner's request for reconsideration of the regrade decision is granted. However, upon reconsideration, Petitioner's request for additional points and a passing grade is denied.

## <u>BACKGROUND</u>

Applicants for registration to practice before the USPTO in patent cases, who took the exam held on April 12, 2000, were required to achieve a passing grade of 70. The Director of the USPTO's Office of Enrollment and Discipline (OED) sent Petitioner "Notice of the Results of April 12, 2000 Examination," which stated that Petitioner scored 67 on the exam. The mailing included a set of "Model Answers" and a notice entitled "Procedure for a Regrade of the April 12, 2000 Registration Examination." The

notice explained that an examination regrade could be requested under 37 C.F.R.

§ 10.7(c).[1]

On June 19, 2000, Petitioner filed a request for regrade pursuant to 37 C.F.R.

§ 10.7(c). Petitioner requested regrading of six questions, arguing that the model

answers were incorrect. On January 5, 2001, the USPTO regraded Petitioner's score to

68 by adding one point, but Petitioner still did not obtain a passing grade. On January 25,

2001, Petitioner filed the present petition requesting review under 37 C.F.R. § 10.2(c).[2]

Petitioner needs two more points for a passing grade.

## OPINION

The USPTO condensed the regrade process for the April 12, 2000, exam. The

previous two-step regrade and review process provided by 37 C.F.R. §§ 10.7(c) and

10.2(c) was superseded. The Director of the USPTO delegated authority for deciding

petitions under 37 C.F.R. §§ 10.7(c) and 10.2(c) to the Deputy Commissioner for Patent

Examination Policy, who in turn delegated this authority to the Director of the Office of

Patent Legal Administration. Accordingly, the January 5th decision said it was a final

agency decision: "[a]s indicated in the instructions for requesting regrading of the

Examination, in order to expedite a petitioner's appeal rights, all regrade requests have

been considered in the first instance by the Director of the USPTO . . . . This is a final

---

[1] "Within two months from the date an applicant is notified that he or she failed an examination, the applicant may request regrading of the examination upon payment of the fee set forth in § 1.21(a)(6). Any applicant requesting regrading shall particularly point out the errors which the applicant believed occurred in the grading of his or her examination." 37 C.F.R. § 10.7(c).

[2] "Any final decision of the Director [of OED] refusing to register an individual . . . may be reviewed by petition to the Commissioner [Director of the USPTO] . . . ." 37 C.F.R. § 10.2(c).

agency action." The January 5th decision was reviewable in the United States District Court for the District of Columbia under 35 U.S.C. § 32 because it was a final agency action.

Instead of seeking review in District Court, Petitioner filed this request for review under 37 C.F.R. § 10.2(c), styled "Review of Decision of Director, Office of Enrollment and Discipline." A review of Petitioner's file shows that the instructions for regrade that were sent to Petitioner did not include a notice of the condensed regrade process. That is, Petitioner was not informed in the instructions that the decision on his regrade request would be a decision by the Director of the USPTO in the first instance and, thus, a final agency action. Accordingly, this petition is being treated as a request for reconsideration. Klein v. Peterson, 6 USPQ2d 1556, 1557 (D.D.C. 1988) (an agency has inherent authority to reconsider its decision before an appeal has been taken or other rights vest).

Petitioner reiterates arguments concerning his answers to exam questions 1 and 48, and presents some new arguments. The arguments have been considered but are not persuasive. The reasons set forth in the Director's January 5th decision are incorporated into this decision, and the determination to grant Petitioner one additional point, but to deny Petitioner a passing grade, is affirmed. Petitioner's grade remains at 68. Petitioner's new arguments are responded to as follows.

Question 1

Question 1 reads:

1.     Which of the following does not constitute probative evidence of commercial success to support a contention of non-obviousness?

     (A)     In a utility case, gross sales figures accompanied by evidence as to market share.

(B)    In a utility case, gross sales figures accompanied by evidence as to the time period during which the product was sold.

(C)    In a utility case, gross sales figures accompanied by evidence as to what sales would normally be expected in the market.

(D)    In a utility case, gross sales figures accompanied by evidence of brand name recognition.

(E)    In a design case, evidence of commercial success clearly attributable to the design, and not to improved performance of the device.

The answer choices apply to the same hypothetical contention that an invention is non-obvious.  Choice (E) is not in dispute.  Choices (A) through (D) all proffer "gross sales figures" evidence, but each adds a distinct second form of evidence.  Thus, this question can be viewed simply as asking which of the distinct second forms of evidence in Choices (A) through (D) is not probative evidence.  Probative evidence means "having the effect of proof; tending to prove or actually proving an issue; that which furnishes, establishes, or contributes toward proof."  BLACK'S LAW DICTIONARY 836 (Abridged 6th Ed.1991).

The Model Answer is Choice (D), which proffers "brand name recognition" as evidence.  Petitioner asks for credit for selecting Choice (B), which proffers "evidence as to the time period during which the product was sold."  The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight.  Graham v. John Deere, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966).  To receive significant weight, commercial success must have a nexus with the claimed invention, and one must show that the commercial success results from the invention's features.  See e.g., Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392, 7 USPQ2d 1222, 1226 (Fed. Cir. 1988) (e.g., nexus is shown when the thing being sold is the claimed invention).

Brand name recognition, advertising, etc., are not accepted as probative of commercial success in an obviousness analysis because commercial success must derive from the claimed invention, not from extraneous factors. MPEP § 716.03; see e.g., Demaco, 851 F.2d at 1393, 7 USPQ2d at 1226-27 ("It is thus the task of the challenger to adduce evidence showing that the commercial success was due to extraneous factors other than the patented invention, such as advertising, superior workmanship, etc."). Since brand name recognition is an extraneous factor, it cannot prove that commercial success derives from the claimed invention and it is not probative of commercial success. Thus, Choice (D) is the most correct answer because it includes brand name recognition, which is not probative evidence.

Petitioner argues that Choice (B) is the most correct answer, which includes "evidence as to the time period during which the product was sold." According to Petitioner, this kind of evidence cannot be probative. Petitioner is mistaken. This kind of evidence is probative of commercial success. See, e.g., Tec Air Inc. v. Denso Mfg. Michigan Inc., 192 F.3d 1353, 1360-61, 52 USPQ2d 1294, 1298-99 (Fed. Cir. 1999) (affirming a finding of commercial success based on sales figures alone; "Although sales figures coupled with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success."); J.T. Eaton & Co. v. Atlantic Paste & Glue Co., 106 F.3d 1563, 1566, 1572, 41 USPQ2d 1641, 1643, 1648 (Fed. Cir. 1997) (affirming a district court's finding of "strong commercial success," where the sales evidence consisted solely of the patentee's "$17 million of sales from 1979 through 1984, and its $4 million of annual sales from 1985 through 1989").

The treatise passage that Petitioner relies on states: "In view of the difficulties of isolating the cause of commercial success and its nexus to nonobviousness, it is

ordinarily not sufficient simply to show an increase in sales in absolute terms." CHISUM DIGEST § 5.05[2][*vi*]-*Sales Increase Evidence*, quoted at Petition page 2 of 3. However, exam Question 1 does not ask which evidence is "ordinarily sufficient" or "ordinarily not sufficient." Instead, the question asks which evidence is not probative. Petitioner's authority does not address the issue in the question because it addresses sufficiency of the evidence, not whether the evidence is probative.

Petitioner cites cases where sales evidence was found insufficient to support a conclusion of nonobviousness. In contrast to Tec Air and J.T. Eaton, these cases merely illustrate the point made by the CHISUM DIGEST. That a kind of evidence is found insufficient in some cases does not mean that this kind of evidence is not probative. In other cases, e.g., Tec Air or J.T. Eaton, this kind of evidence has been sufficient.

The directions for the exam were to choose the most correct answer. The contested choices in Question 1 effectively offer two kinds of evidence for consideration: Choice (B) includes a kind of evidence that is probative, and Choice (D) includes a kind of evidence that is extraneous. Since extraneous evidence can never be probative, the most correct selection is Choice (D), the Model Answer, because it includes extraneous evidence. Therefore, Petitioner will not be awarded credit for Question 1.

Question 48

Question 48 reads:

48.    Which of the following statements regarding 35 U.S.C. § 103 is most correct?

(A)    PTO classification of prior art references used to reject a claim under 35 U.S.C. § 103, and the similarities and differences in structure and function carry equal weight as evidence of whether the references are analogous or non-analogous.

(B)    The question of obviousness under 35 U.S.C. § 103 is resolved by determining whether the differences between the prior art and the claims would have been obvious.

(C)    Obviousness of an invention can be properly determined by identifying the "gist" of the invention, even where the "gist" does not take into regard an express limitation in the claims.

(D)    In delineating the invention, consideration is given not only to the subject matter recited in the claim, but also the properties of the subject matter which are inherent in the subject matter and disclosed in the specification.

(E)    Obviousness can be predicated on what is not known at the time an invention is made, where the inherency of the feature is later established.

The Model Answer is Choice (D). The Model Answer is a correct statement of the law because evidence of inherent properties must be considered when determining obviousness. "There is no question that <u>all evidence of the properties of the claimed compositions</u> and the prior art must be considered in determining the ultimate question of patentability." <u>In re Dillon</u>, 919 F.2d 688, 693, 16 USPQ2d 1897, 1901 (Fed. Cir. 1990) (in banc) (emphasis added); <u>see also</u> <u>In re Papesch</u>, 315 F.2d 381, 391, 137 USPQ 43, 51 (CCPA 1963) ("From the standpoint of patent law, <u>a compound and all its properties are inseparable</u>") (emphasis added).

Petitioner argues that the most correct answer is Choice (B). Choice (B) is an improper statement of the law. "Focusing on the obviousness of substitutions and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness." <u>The Gillette Co. v. S.C. Johnson & Son Inc.</u>, 919 F.2d 720, 724, 16 USPQ2d 1923, 1927 (Fed. Cir. 1990); <u>Hybritech, Inc. v. Monoclonal Antibodies, Inc.</u>, 802 F.2d 1367, 1383 n.6, 231 USPQ 81, 93 n.6 (Fed. Cir. 1986) ("Submitting to the court language like 'any differences . . . would have been obvious,' as was done here, violates the axiom that it is not whether the differences would have been obvious but the claimed invention *as a whole*") (original emphasis).

The Supreme Court explained the importance of developing the factual background for an obviousness determination with certain inquiries:

7

> Under § 103 the scope and content of the prior art are to be determined;
> differences between the prior art and the claims at issue are to be
> ascertained; and the level of ordinary skill in the pertinent art resolved.
> Against this background, the obviousness or nonobviousness of the
> subject matter is determined.    Such secondary considerations as
> commercial success, long felt but unsolved needs, failure of others, etc.,
> might be utilized to give light to the circumstances surrounding the origin
> of the subject matter sought to be patented.  As indicia of obviousness or
> nonobviousness, these inquiries may have relevancy.

Graham v. John Deere, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966).  Although

Petitioner relies on Graham, that reliance is misplaced because Graham requires that

"the differences between the prior art and the claims at issue be ascertained."  Id.  Thus,

determining "whether the differences between the prior art and the claims would have

been obvious" is not one of the inquiries set out in Graham and, according to Gillette,

above, it is improper to resolve obviousness on such a basis.

Choice (B) is also wrong because it asserts that obviousness may be resolved with

a single factual determination.  Graham, upon which Petitioner relies, involved at least

three factual inquiries and additional secondary considerations.   Not only is a single

factual determination insufficient to resolve an obviousness determination, "[t]he

decisional process en route to a § 103 conclusion involves more than answers to the fact

inquiries in Graham.  It also involves: (1) legal determinations; and (2) legal standards

for fact-finding." Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1567-68,

1 USPQ2d 1593, 1597 (Fed. Cir. 1987).  Therefore, Petitioner will not be given credit for

Question 48.

This is a final agency action.[3]

---

[3]  "A person refused recognition to practice . . . before the Patent Office may file a
petition in this court against the Commissioner of Patents for review of such action
within 30 days after the date of the order recording the Commissioner's action."
LCvR 83.7, United States District Court for the District of Columbia.  The official title

## ORDER

The petition for reconsideration has been granted to the extent that it has been
considered but it is otherwise <u>DENIED</u>.

APR 1 9 2001

Nicholas P. Godici
Acting Under Secretary of Commerce for Intellectual Property and
Acting Director of the United States Patent and Trademark Office

cc:

Harry I. Moatz
Director, Office of Enrollment and Discipline
United States Patent and Trademark Office
Washington, D.C. 20231

---

for the head of the USPTO has recently changed to the "Under Secretary of Commerce
for Intellectual Property and Director of the United States Patent and Trademark Office."
Patent and Trademark Office Efficiency Act, Pub. L. 106-113 (Nov. 29, 1999).

9