R-1987-2

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

| | | |
|---|---|---|
| In re | ) | Decision on Petition |
| | ) | for Review under |
| Petitioner | ) | Rule 10.2(c) |
| | ) | |
| _____ | ) | |

                         (hereafter "petitioner") petitions
under 37 CFR 10.2(c) for review of the Decision on Request
For Regrade on the Afternoon Section of the Examination Held
on April 8, 1986 rendered by the Director of the Office of
Enrollment and Discipline (OED) on September 19, 1986.
Petitioner seeks an award of at least seven points to his
score to give him a passing grade.

## BACKGROUND

     Petitioner took the examination for registration before
the Patent and Trademark Office on April 8, 1986; he passed
the morning section but was awarded less than the minimum of
70 points (out of 100) in the afternoon section, which he
needed in order to be registered to practice.  A Request For
Regrading of the Examination For Registration was timely
filed on August 13, 1986 wherein petitioner sought an award
of additional points in each of questions 1, 2, 3, and 5.
In the Decision on Request For Regrade on the Afternoon
Section of the Examination Held on April 8, 1986, the
Director of OED took the following action: As to question 1,
six points were added to petitioner's score but eight points
were deducted from petitioner's score; as to question 2, two
points were added to petitioner's score; as to questions 3
and 5, no points were added to petitioner's score.  Thus,
eight points were added to petitioner's score and eight
points were deducted from petitioner's score resulting in
the same total score for petitioner (63 points) as when he
filed his request for regrade.

     On October 14, 1986, petitioner filed A Petition For
Review Under Rule 10.2(c) seeking reinstatement of the eight
points deducted from question 1 and award of "at least a
passing grade" on question 5.

## FACTUAL REVIEW

### Question 1

Question I called upon the examinees to complete a "proper response" to the rejection of a claim under 35 USC 102(b) over a patent to Ullrich after the claim had been amended in a certain way and displayed in its entirety in the question.  The examinees were told to assume that the claim as amended is "the broadest claim to which your client is entitled" and that no affidavits under 37 CFR 1.131 or 37 CFR 1.132 "would be appropriate in your response."

Upon the first grading, four points were deducted for the reason, "All novel features not discussed vis-a-vis Ullrich." (Original emphasis.)  Two points were deducted with the comment, "Atomized spray not claimed."

In response to the request for regrade, the Director of OED agreed with petitioner's arguments regarding the six-point deduction and restored six points to petitioner's score. However, and this forms the first part of petitioner's request for review under 37 CFR § 10.2, the Director of OED, upon regrade of petitioner's answer, deducted eight points from the score because (1) petitioner's answer "did not point out the novelty of the invention as required by 37 CFR 1.111(c), namely, the simultaneous misting and watering functions of the invention" and (2) petitioner's argument "that Ullrich does not form a fine spray is against the clear teachings of the reference."  As to (2), the petitioner had argued in his answer that the "[p]roduction of an atomized spray of mist is not contemplated nor could it be accomplished [sic] according to the Ullrich patent."

The 37 CFR 10.2(c) petition points out that petitioner's answer included the phrase, "Claim 1 as amended recites a substantially closed reservoir and includes an internally formed handle, curved spout and a spray pump mounted on top of the container.  The use of a spray pump to provide mist is neither taught nor suggested by Ullrich."

### Question 5

This was an ethics question and petitioner received 10 out of a possible 20 points for his answer.  The question called upon the examiner to "[e]xplain all appropriate courses of action which you can take under the facts given above."  Upon the first grading of the answer, petitioner had one point deducted from his score because there was "ample time to obtain permission to withdraw" from the case in the period from April 8, 1986 to July 2, 1986.  Nine

- 2 -

points were deducted from petitioner's score because he had
not fully discussed the steps set forth in 37 CFR 10.40(a)
to protect the rights of the client.

In the Request for Regrading, petitioner pointed out that
the question specifically stated that the agent did "not <u>wish</u>
to incur further expenses or have further dealings with" the
client (petitioner's emphasis). Petitioner acknowledged that
the answer given by him differed substantially from the model
answer but argued that his answer followed "a reasonable
course which complies with my ethical obligations."

The Director of OED gave petitioner no additional points
for his answer to question 5 because, in the Director's view,
one option of paying the issue fee would necessarily incur
additional expenses, which would not be an appropriate answer,
and the answer appeared "to be what ifs [sic] rather than
setting forth definite courses of action."

The 37 CFR 10.2(c) petition states that the Director of
OED has ignored the ethical issues raised by the question, and
he should have understood that "ethical considerations often
take precedence over the 'wishes' of an attorney or agent."
Petitioner acknowledges that he took a "conservative position"
but points out that he listed courses of action (deemed "what
ifs" by the Director) as that was "plainly what the question
required." The petitioner believes that he should not have
points deducted from the answer because it did not clearly
define what course(s) of action he would have taken under the
given facts.

## DECISION

### Question 1

A thorough and detailed review of the entire record
indicates that eight points should not have been deducted for
petitioner's answer to Question 1. When considered as
a whole, the answer to question 1 shows that petitioner was
aware of the differences between the amended claim and the
device in Ullrich. Eight points will be added to
petitioner's score for question 1.

### QUESTION 5

A thorough and detailed review of the entire record
reveals no error in the Director's refusal to change the
scoring of petitioner's answer to question 5.

## CONCLUSION

The Director's decision of September 19, 1986, accordingly, is reversed in part to the extent of restoring 8 points deducted by the Director from petitioner's score in the afternoon section of the April 8, 1986, examination. Petitioner has, accordingly, achieved a passing score of 71 points for the afternoon section.

The petition is granted.


Dated: Jan 16, 1987

DONALD W. PETERSON
Deputy Commissioner of
    Patents and Trademarks


- 4 -

## BEFORE THE DIRECTOR OF THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | Decision on Request |
| In re | ) | for Reconsideration |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON RECONSIDERATION

                         (Petitioner) petitions the Director of the United States Patent and Trademark Office (USPTO) for review of the January 5, 2001, decision on his request for a regrade of the Registration Examination (exam) held on April 12, 2000. This petition is treated as a request for reconsideration because the January 5, 2001, regrade decision was a final agency action.

        Petitioner's request for reconsideration of the regrade decision is granted. However, upon reconsideration, Petitioner's request for additional points and a passing grade is denied.

## BACKGROUND

        Applicants for registration to practice before the USPTO in patent cases, who took the exam held on April 12, 2000, were required to achieve a passing grade of 70. The Director of the USPTO's Office of Enrollment and Discipline (OED) sent Petitioner "Notice of the Results of April 12, 2000 Examination," which stated that Petitioner scored 67 on the exam. The mailing included a set of "Model Answers" and a notice entitled "Procedure for a Regrade of the April 12, 2000 Registration Examination." The

notice explained that an examination regrade could be requested under 37 C.F.R. § 10.7(c).[1]

On June 19, 2000, Petitioner filed a request for regrade pursuant to 37 C.F.R. § 10.7(c). Petitioner requested regrading of six questions, arguing that the model answers were incorrect. On January 5, 2001, the USPTO regraded Petitioner's score to 68 by adding one point, but Petitioner still did not obtain a passing grade. On January 25, 2001, Petitioner filed the present petition requesting review under 37 C.F.R. § 10.2(c).[2] Petitioner needs two more points for a passing grade.

## OPINION

The USPTO condensed the regrade process for the April 12, 2000, exam. The previous two-step regrade and review process provided by 37 C.F.R. §§ 10.7(c) and 10.2(c) was superseded. The Director of the USPTO delegated authority for deciding petitions under 37 C.F.R. §§ 10.7(c) and 10.2(c) to the Deputy Commissioner for Patent Examination Policy, who in turn delegated this authority to the Director of the Office of Patent Legal Administration. Accordingly, the January 5th decision said it was a final agency decision: "[a]s indicated in the instructions for requesting regrading of the Examination, in order to expedite a petitioner's appeal rights, all regrade requests have been considered in the first instance by the Director of the USPTO . . . . This is a final

---

[1] "Within two months from the date an applicant is notified that he or she failed an examination, the applicant may request regrading of the examination upon payment of the fee set forth in § 1.21(a)(6). Any applicant requesting regrading shall particularly point out the errors which the applicant believed occurred in the grading of his or her examination." 37 C.F.R. § 10.7(c).

[2] "Any final decision of the Director [of OED] refusing to register an individual . . . may be reviewed by petition to the Commissioner [Director of the USPTO] . . . ." 37 C.F.R. § 10.2(c).

2

agency action." The January 5th decision was reviewable in the United States District Court for the District of Columbia under 35 U.S.C. § 32 because it was a final agency action.

Instead of seeking review in District Court, Petitioner filed this request for review under 37 C.F.R. § 10.2(c), styled "Review of Decision of Director, Office of Enrollment and Discipline." A review of Petitioner's file shows that the instructions for regrade that were sent to Petitioner did not include a notice of the condensed regrade process. That is, Petitioner was not informed in the instructions that the decision on his regrade request would be a decision by the Director of the USPTO in the first instance and, thus, a final agency action. Accordingly, this petition is being treated as a request for reconsideration. Klein v. Peterson, 6 USPQ2d 1556, 1557 (D.D.C. 1988) (an agency has inherent authority to reconsider its decision before an appeal has been taken or other rights vest).

Petitioner reiterates arguments concerning his answers to exam questions 1 and 48, and presents some new arguments. The arguments have been considered but are not persuasive. The reasons set forth in the Director's January 5th decision are incorporated into this decision, and the determination to grant Petitioner one additional point, but to deny Petitioner a passing grade, is affirmed. Petitioner's grade remains at 68. Petitioner's new arguments are responded to as follows.

Question 1

Question 1 reads:

1.     Which of the following does not constitute probative evidence of commercial success to support a contention of non-obviousness?

(A)     In a utility case, gross sales figures accompanied by evidence as to market share.

3

(B)   In a utility case, gross sales figures accompanied by evidence as to the time period during which the product was sold.

(C)   In a utility case, gross sales figures accompanied by evidence as to what sales would normally be expected in the market.

(D)   In a utility case, gross sales figures accompanied by evidence of brand name recognition.

(E)   In a design case, evidence of commercial success clearly attributable to the design, and not to improved performance of the device.

The answer choices apply to the same hypothetical contention that an invention is non-obvious. Choice (E) is not in dispute. Choices (A) through (D) all proffer "gross sales figures" evidence, but each adds a distinct second form of evidence. Thus, this question can be viewed simply as asking which of the distinct second forms of evidence in Choices (A) through (D) is not probative evidence. Probative evidence means "having the effect of proof; tending to prove or actually proving an issue; that which furnishes, establishes, or contributes toward proof." BLACK'S LAW DICTIONARY 836 (Abridged 6th Ed.1991).

The Model Answer is Choice (D), which proffers "brand name recognition" as evidence. Petitioner asks for credit for selecting Choice (B), which proffers "evidence as to the time period during which the product was sold." The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight. Graham v. John Deere, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966). To receive significant weight, commercial success must have a nexus with the claimed invention, and one must show that the commercial success results from the invention's features. See e.g., Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392, 7 USPQ2d 1222, 1226 (Fed. Cir. 1988) (e.g., nexus is shown when the thing being sold is the claimed invention).

4

Brand name recognition, advertising, etc., are not accepted as probative of commercial success in an obviousness analysis because commercial success must derive from the claimed invention, not from extraneous factors. MPEP § 716.03; see e.g., Demaco, 851 F.2d at 1393, 7 USPQ2d at 1226-27 ("It is thus the task of the challenger to adduce evidence showing that the commercial success was due to extraneous factors other than the patented invention, such as advertising, superior workmanship, etc."). Since brand name recognition is an extraneous factor, it cannot prove that commercial success derives from the claimed invention and it is not probative of commercial success. Thus, Choice (D) is the most correct answer because it includes brand name recognition, which is not probative evidence.

Petitioner argues that Choice (B) is the most correct answer, which includes "evidence as to the time period during which the product was sold." According to Petitioner, this kind of evidence cannot be probative. Petitioner is mistaken. This kind of evidence is probative of commercial success. See, e.g., Tec Air Inc. v. Denso Mfg. Michigan Inc., 192 F.3d 1353, 1360-61, 52 USPQ2d 1294, 1298-99 (Fed. Cir. 1999) (affirming a finding of commercial success based on sales figures alone; "Although sales figures coupled with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success."); J.T. Eaton & Co. v. Atlantic Paste & Glue Co., 106 F.3d 1563, 1566, 1572, 41 USPQ2d 1641, 1643, 1648 (Fed. Cir. 1997) (affirming a district court's finding of "strong commercial success," where the sales evidence consisted solely of the patentee's "$17 million of sales from 1979 through 1984, and its $4 million of annual sales from 1985 through 1989").

The treatise passage that Petitioner relies on states: "In view of the difficulties of isolating the cause of commercial success and its nexus to nonobviousness, it is

5

ordinarily not sufficient simply to show an increase in sales in absolute terms." CHISUM DIGEST § 5.05[2][*vi*]-*Sales Increase Evidence*, quoted at Petition page 2 of 3. However, exam Question 1 does not ask which evidence is "ordinarily sufficient" or "ordinarily not sufficient." Instead, the question asks which evidence is not probative. Petitioner's authority does not address the issue in the question because it addresses sufficiency of the evidence, not whether the evidence is probative.

Petitioner cites cases where sales evidence was found insufficient to support a conclusion of nonobviousness. In contrast to Tec Air and J.T. Eaton, these cases merely illustrate the point made by the CHISUM DIGEST. That a kind of evidence is found insufficient in some cases does not mean that this kind of evidence is not probative. In other cases, e.g., Tec Air or J.T. Eaton, this kind of evidence has been sufficient.

The directions for the exam were to choose the most correct answer. The contested choices in Question 1 effectively offer two kinds of evidence for consideration: Choice (B) includes a kind of evidence that is probative, and Choice (D) includes a kind of evidence that is extraneous. Since extraneous evidence can never be probative, the most correct selection is Choice (D), the Model Answer, because it includes extraneous evidence. Therefore, Petitioner will not be awarded credit for Question 1.

Question 48

Question 48 reads:

48.    Which of the following statements regarding 35 U.S.C. § 103 is most correct?

   (A)    PTO classification of prior art references used to reject a claim under 35 U.S.C. § 103, and the similarities and differences in structure and function carry equal weight as evidence of whether the references are analogous or non-analogous.

   (B)    The question of obviousness under 35 U.S.C. § 103 is resolved by determining whether the differences between the prior art and the claims would have been obvious.

(C)     Obviousness of an invention can be properly determined by identifying the "gist" of the invention, even where the "gist" does not take into regard an express limitation in the claims.

(D)     In delineating the invention, consideration is given not only to the subject matter recited in the claim, but also the properties of the subject matter which are inherent in the subject matter and disclosed in the specification.

(E)     Obviousness can be predicated on what is not known at the time an invention is made, where the inherency of the feature is later established.

The Model Answer is Choice (D). The Model Answer is a correct statement of the law because evidence of inherent properties must be considered when determining obviousness. "There is no question that all evidence of the properties of the claimed compositions and the prior art must be considered in determining the ultimate question of patentability." In re Dillon, 919 F.2d 688, 693, 16 USPQ2d 1897, 1901 (Fed. Cir. 1990) (in banc) (emphasis added); see also In re Papesch, 315 F.2d 381, 391, 137 USPQ 43, 51 (CCPA 1963) ("From the standpoint of patent law, a compound and all its properties are inseparable") (emphasis added).

Petitioner argues that the most correct answer is Choice (B). Choice (B) is an improper statement of the law. "Focusing on the obviousness of substitutions and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness." The Gillette Co. v. S.C. Johnson & Son Inc., 919 F.2d 720, 724, 16 USPQ2d 1923, 1927 (Fed. Cir. 1990); Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1383 n.6, 231 USPQ 81, 93 n.6 (Fed. Cir. 1986) ("Submitting to the court language like 'any differences . . . would have been obvious,' as was done here, violates the axiom that it is not whether the differences would have been obvious but the claimed invention as a whole") (original emphasis).

The Supreme Court explained the importance of developing the factual background for an obviousness determination with certain inquiries:

7

> Under § 103 the scope and content of the prior art are to be determined;
> differences between the prior art and the claims at issue are to be
> ascertained; and the level of ordinary skill in the pertinent art resolved.
> Against this background, the obviousness or nonobviousness of the
> subject matter is determined.    Such secondary considerations as
> commercial success, long felt but unsolved needs, failure of others, etc.,
> might be utilized to give light to the circumstances surrounding the origin
> of the subject matter sought to be patented.  As indicia of obviousness or
> nonobviousness, these inquiries may have relevancy.

Graham v. John Deere, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966).  Although

Petitioner relies on Graham, that reliance is misplaced because Graham requires that

"the differences between the prior art and the claims at issue be ascertained."  Id.  Thus,

determining "whether the differences between the prior art and the claims would have

been obvious" is not one of the inquiries set out in Graham and, according to Gillette,

above, it is improper to resolve obviousness on such a basis.

Choice (B) is also wrong because it asserts that obviousness may be resolved with

a single factual determination.  Graham, upon which Petitioner relies, involved at least

three factual inquiries and additional secondary considerations.   Not only is a single

factual determination insufficient to resolve an obviousness determination, "[t]he

decisional process en route to a § 103 conclusion involves more than answers to the fact

inquiries in Graham.  It also involves: (1) legal determinations; and (2) legal standards

for fact-finding." Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1567-68,

1 USPQ2d 1593, 1597 (Fed. Cir. 1987).  Therefore, Petitioner will not be given credit for

Question 48.

This is a final agency action.[3]

_____

[3]  "A person refused recognition to practice . . . before the Patent Office may file a
petition in this court against the Commissioner of Patents for review of such action
within 30 days after the date of the order recording the Commissioner's action."
LCvR 83.7, United States District Court for the District of Columbia.  The official title

## ORDER

The petition for reconsideration has been granted to the extent that it has been considered but it is otherwise <u>DENIED</u>.

APR 1 9 2001

*Nicholas P. Godici*
Nicholas P. Godici
Acting Under Secretary of Commerce for Intellectual Property and
Acting Director of the United States Patent and Trademark Office

cc:

Harry I. Moatz
Director, Office of Enrollment and Discipline
United States Patent and Trademark Office
Washington, D.C. 20231

---

for the head of the USPTO has recently changed to the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." Patent and Trademark Office Efficiency Act, Pub. L. 106-113 (Nov. 29, 1999).



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

R - 1986 - 1

February 14, 1986

In re the Examination of

:   DECISION ON PETITION
:   TO THE COMMISSIONER
:   UNDER 37 CFR § 10.2 (c)
:   TO REGISTER
:   THEODORE A. BREINER AS
:   REGISTERED PATENT ATTORNEY

The above identified petition is granted with respect to
review of the final decision ("Decision") of the Director of
the Office of Enrollment and Discipline ("Director") of the
grading of          examination for registration to practice
before the Patent and Trademark Office under 37CFR §10.2(c).
The petition is denied with respect to registration.

A review of the regrading has not disclosed any areas in
which additional points should be granted.  On the contrary,
the grader and regrader were generous in not deducting more
points.  A point should have been deducted for lack of antecedent
for "tapered tip" which was apparently introduced to refer
back to the "tapered tip member."  The same can be said of
the recitation of "tip" at the end of claim 1.

More points should probably have been deducted for failure to
recite the pen and ink cartridge, lamp and battery as being
located within the "tubular barrel."  In the claim those
elements are not located with respect to the barrel.  They
could be located outside.  Neither is the end of the pen and
ink cartridge recited to extend from the end of the barrel.

Petition argues at page 18 that Gomes has no means for retracting
or extending the cartridge in Gomes.  Petitioner's amended
claim recites a means for retaining but fails to recite a

means for retracting or extending.  On page 7, petitioner argues that his application "claims a combination flashlight and pen having a means for retaining the writing cartridge when the pen is not in use and for extending said cartridge when in use."  That is not what the claim recites.

The first amendment to the claim recites "retaining"----in a retracted---or extended in a writing position.  Without reciting placement and relations of parts, it is difficult to determine what the "position" relates to.  The pen and ink cartridge, the lamp and battery could each be outside the "tubular barrel." There is no recited basis for the recitation" whereby when said lamp is energized" for there is no recited means for energizing the lamp.

Petitioner should test his claim by trying to draw the device defined by the amended claim, locating each part as specifically recited in the claim.  In doing so, it will be apparent that the amendments to the claim did not give sufficient specificity to distinguish patentability over Gomes.

Probably as many as 9 additional points should have been deducted for failure to properly recite the parts and their relationship.

Note has been taken of petitioner's arguments with respect to Questions 2 and 3.  There is no basis for changing the position spelled out in Mr. Cameron Weiffenbach's decision dated January 24, 1985.

The petition is GRANTED to the extent of reviewing the final decision but is DENIED with respect to registration.

- 3 -


_Donald J. Quigg_
Donald J. Quigg
Assistant Secretary and
 Commissioner of Patents and Trademarks

2-14-86
Date



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

R - 1986 - 1 (R)

February 28, 1986

In re the Examination of        :    DECISION ON REQUEST

                                :    FOR RECONSIDERATION
                                :    TO THE COMMISSIONER
                                :    TO REGISTER
                                :                          AS
                                :    REGISTERED PATENT ATTORNEY

                    DECISION ON RECONSIDERATION

Petitioner,                     has requested Reconsideration
of the Decision on Petition to the Commissioner under 37
C.F.R. 10.2(c) to register                    as Registered
Patent Attorney, dated February 14, 1986.


The Request for Reconsideration is granted to the extent
that Petitioner wishes to have a specific discussion spelled
out as to question Nos. 2. and 3. and to the extent of considering
Respondent's answer to No. 4.  The Decision on Petition
dated February 14, 1986, was complete with respect to question
No. 1 and Request for Reconsideration of that question is
denied.


Question No. 2: Petitioner argues at great length that his
answer with respect to question No. 2. was correct.  As
stated in the Decision on Petition dated February 14, 1986,
there is no basis for  changing the position spelled out in
Mr. Weiffenbach's Decision dated January 24, 1985.  Despite
the prolix arguments made by Petitioner as to the correctness
of his answer, it is still concluded that the Petitioner did
not properly answer the question.

- 2 -

Petitioner argues that Gomes does not show the use of annular
grooves in taper tip No. 9 of applicant's invention.  He
also argues that Gomes fails completely to disclose connector
member 25 of applicant's invention also having annular grooves.
He properly argues that Kenney disclosed lens for a right
and left headlamp to provide illumination over a wide area.

The real question is whether or not there is a teaching
for a combination of Gomes and Kenney.  Obviously, Kenney
teaches the use of grooves in order to direct rays of light
in a given direction.  The thing that is missing is a suggestion
that Gomes would want to direct the rays of light to a certain
point.  The thing that Petitioner failed to point out was
that Gomes does not provide a teaching of a need to focus
light at a given point, but rather provides a teaching of
diffusion of light to cover a fairly broad area.  Petitioner
needed to make that distinction so as to clearly show that
there was no teaching for the combination.  Instead, Petitioner
simply argued that Gomes did not disclose the use of annular
grooves.  Such a statement does not rule out some teaching
that Gomes may have made of an object to focus the rays of
light in a given small area.

Petitioner argued that Gomes did not show the connector
having grooved light directors.  That argument has no real
merit with respect to a question of the 103 rejection.  The
point was whether or not there was a light source, and what
disposition was made of rays from the light source in the
teaching of the reference.  Gomes teaches diffusing the
light and that would be determinative of the question.

As stated in the Decision on Petition to the Commissioner
dated February 14, 1986, there is no basis for changing the
position taken by Mr. Weiffenbach's Decision dated January
24, 1985, with respect to claim 2.

- 3 -

Question No. 3: Petitioner argues strenuously that the only requirement he had with respect to this question was to show a way in which to respond to the situation where new references were found. That argument is untenable. Several questions must be considered as possibilities when new references are found. 1. Would it be possible to swear behind the references with a 1.131 affidavit? That was not considered by Petitioner. 2. The possibility exists that the reference is old enough that it would not be possible to swear behind it. In such an event, it would be necessary to consider whether the claims would have to be amended in order to differentiate from the reference. Obviously, time being short, after receipt of form PTOL-327 consideration of the possibililty of amendment of the claims and presentation of such amendment along with the Information Disclosure Statement should have been considered. Despite Petitioner's arguments to the contrary, the fact that he did not consider the Information Disclosure Statement content under 37 C.F.R. 1.98, leaves in doubt the question of whether or not Petitioner was cognizant of the necessary content of such a statement. Two requirements of that Disclosure are mandatorily set by 1.98. Although the remaining provisions of the Rule are not mandatory, Petitioner should have called attention to the requirements set by 1.98.

With respect to question No. 3, as stated in the Decision on Petition dated February 14, 1986, there is no basis for changing Decision spelled out in Mr. Weiffenbach's Decision dated January 24, 1985.

Question No. 4: A review of Petitioner's answer to Question No. 4. emphasizes the weakness that was displayed in connection with the amendment of the claim in Question No. 1. I would reject Petitioner's claim 4 under 35 U.S.C. 112, second paragraph. Petitioner's claim does not particularly point out and distinctly claim the subject matter which the applicant

- 4 -

regards as his invention.

As suggested in the Decision dated February 14, 1986, with
respect to Question No. 1, Petitioner should learn to test
his claims by trying to draw the device defined by his claim,
locating each part in respect to its relation to the other
remaining parts of the claim.  Such a procedure would help
him establish a unity of his device.

In sub-paragraphs A. and B. of claim No.4, Petitioner recited
the first and second longitudinal legs, each having an end-
plate at one end.  The function of that plate and its purpose
is not clear.  If the purpose of the plate is to provide a
means by which a headboard could be attached to the frame,
it would be necessary to recite that the plates are on the
same ends of each of the longitudinal legs.  Petitioner does
not indicate the relationship between the crossrails which
are recited in sub-paragraph C of the claim.  Sub-paragraph
E of the claim provides that the first and second longitudinal
legs and crossrails are held in their extended horizontal
positions by clamp means.  There is no indication that the
crossrail attached to one end of a longitudinal leg has any
relationship to the crossrail attached to a similar end of
the other longitudinal leg.

It is not understood as to what is intended by the recitation
in sub-paragraph F of the claim in the statement "Said crossrails
and longitudinal rails each lying in a vertical plane."  If
this is a bed frame, those rails would normally lie in a
horizontal plane.  The claim is also obscur in sub-paragraph
D in which flanged leg supports have caster assembly attached
in vertical relation.  Sub-paragraph G is also obscur in
stating that the flanged leg members with caster assemblies
are attached at the junction of the crossrails and longitudinal
rails and lying in a horizontal plane.  This portion of the

- 5 -

claim further is ambivalent in that there is no recitation
as to whether it is the caster end or the other end of the
legs that is attached to the crossrails.  It is my opinion
that there is a such a lack of clarity, conciseness, support
in Exhibit D and completeness with respect to related parts
that 20 points should have been deducted for this claim.

The Petition is Granted to the extent of reviewing questions
2, 3, and 4.  It is DENIED with respect to Reconsideration
of the Decision with respect to question 1.  No change in
the grading will be made.  With regard to petitioner's request
as to whether this Decision represents a final agency action,
petitioner's attention is directed to 5 U.S.C.A. 704.


_____                    2-28-86
Donald J. Quigg                            Date
Assistant Secretary
 and Commissioner of Patents and Trademarks



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE DEPUTY COMMISSIONER OF PATENTS AND TRADEMARKS

|  |  |  |
|---|---|---|
| In the Matter of: | ) | Decision Granting |
|  | ) | Petition Under |
|  | ) |  |
|  | ) | 37 C.F.R. § 10.2(c) |
| _____ | ) |  |

## BACKGROUND

By a letter dated December 13, 1985, petitioner was informed that he had failed the afternoon section of the October 8, 1985, examination for registration to practice before the Patent and Trademark Office.  Petitioner was advised that his score for that section was 50 points, whereas the passing grade for that section is 70 points.  After requesting and being granted a regrading of that part of the examination pursuant to a January 20, 1986, request for reconsideration, petitioner was informed in a March 11, 1986, decision by the Director of the Office of Enrollment & Discipline (O.E.D.) that seven points had been added to his afternoon grade, bringing it up to 57 points, which is still not a passing grade.

On April 3, 1986, petitioner, pursuant to 37 C.F.R. § 10.2(c), filed a petition, the subject of this decision, in which he requested review of the regrading of his answers for the afternoon section.

Decision on petition
under 37 C.F.R. § 10.2(c)

## REVIEW OF THE REGRADING

Petitioner's answers for the afternoon section have been reviewed.  In light of his arguments in the petition and the March 11, 1986, decision of the Director of O.E.D., the following adjustments have been made in the scoring of the answers to Questions 1 and 4.  With respect to Question 1, the number of points deducted has been reduced from 18 to 5 points, and for Question 4 from 17 to 14 points.  Since 8 points were deducted for Question 2 and no points were deducted for Question 3, the total number of points deducted is 27, giving petitioner a passing score of 73 for the afternoon section.

## DECISION

The petition is granted.  Consequently, petitioner's application for registration is being returned to O.E.D. for processing in accordance with this decision.


**MAY 15 1986**
_____
Date

DONALD W. PETERSON
Deputy Commissioner of
Patents and Trademarks

cc:

-2-

*Copy mailed 5/16/86 - Sd*

R-1986-3

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

In re                              )
                                   )   On petition from decision
        Petitioner                 )   of Director of Enrollment
                                   )   and Discipline
_____)

## DECISION DISMISSING PETITION

Petitioner seeks review under 37 CFR 10.2(c)(1985) of
a decision of the Director of Enrollment and Discipline
(Director) holding that petitioner failed to achieve a
passing grade on the afternoon section of the examination
for registration to practice before the Patent and Trademark
Office in patent cases given on October 8, 1985.

Petitioner took the examination on October 8, 1985.
He passed the morning section, but failed the afternoon
section.  Thereafter, a timely request for regrading of the
afternoon portion of the examination was filed pursuant to
37 CFR 10.7(c)(1985).  After considering the request on the
merits, the Director denied any relief concluding that
petitioner had not passed the examination.  This petition
was filed on April 10, 1986.  Two days before filing the

Decision Dismissing Petition
Page 2

petition, petitioner took the afternoon section of the
examination for registration given on April 8, 1986.  The
Director has advised that petitioner passed the afternoon
section of the April 8, 1986, examination.

The relief sought in the petition is a declaration that
petitioner has passed the afternoon section examination
given October 8, 1985.  Having passed the morning section of
the examination of October 8, 1985, and the afternoon
section of the examination of April 8, 1986, petitioner is
deemed to have passed the "examination" required by 37 CFR
10.7(b)(1985).  At this point in time, therefore, it does
not matter whether petitioner passed or failed the afternoon
section of the October 8, 1985, examination.  Accordingly,
the petition is dismissed as moot.

Date: June 20, 1986

DONALD W. PETERSON
Deputy Commissioner

cc:

R-1987-1

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

In re                           )    Decision on Petition
                                )    To Review a Final
      Petitioner                )    Decision of the
_____  )    Director of Enrollment
                                     and Discipline

                      (hereinafter "petitioner")
petitions under 37 CFR 10.2(c) for review of a decision of
the Director of the Office of Enrollment and Discipline
(OED) denying petitioner's request to be admitted to
practice before the Patent and Trademark Office (PTO).
Petitioner took the afternoon section of the April 8, 1986
examination for registration; he had successfully taken the
morning section previously.  Petitioner received a grade of
less than 70 points in the afternoon section; a score of at
least 70 points is required for admission to practice.
Petitioner asserts the following points I-VI in challenging
the Director's decision (petitioner's wording):

      I.   Receiving less than three hours to write the
afternoon examination on April 8, 1986, should not result in
a loss of all 20 points for an incomplete answer to question
5.

      II.  OED violates PTO rules by inserting question 5,
an ethics question, into the afternoon examination of
April 8, 1986.

      III. Questions 4 and 5 of the afternoon examination of
April 8, 1986, bear arbitrarily inflated point-values when
compared to the 100 questions posed in the morning
examination.

      IV.  Questions 1, 2 and 3 of the afternoon examination
of April 8, 1986, bear arbitrarily deflated point values
when compared to questions 4 and 5.

      V.   Using two questions arbitrarily inflated to 40%
of the afternoon examination transforms the grade into an
invalid indicator of the candidate's ability to practice
before the PTO.

VI.  My answers to questions 4 and 5 of the afternoon examination on April 8, 1986, were misgraded.

Petitioner prays for the following relief:  a hearing regarding this petition; prompt addition of his name to the register of attorneys; reversal of OED's denial of registration; and a refund of the $250.00 examination fee sent to OED in July of 1986 in support of his application for the October 1986 registration examination.

Petitioner's points are considered seriatim as follows.

I.  Petitioner has shown no error in the Director's decision to sustain the grader's deduction of the full 20 points for question 5.  The record fully supports the Director's analysis of petitioner's allegation that two minutes less than the full 3 hours were given to complete the afternoon section of the examination.  The Director noted that petitioner's partial answer to question 5 did not respond to the question.  The first sentence of the answer in fact is in direct conflict with the requirement in the question to avoid further dealings with the client.

II.  It is not a violation of PTO rules for an ethics question, question 5, to have been included in the afternoon section of the examination.  No PTO rule limits ethics questions to the morning section or prohibits them in the afternoon section.  The following statement which you quote from the "General Requirements for Admission to the Examination for Registration to Practice * * *" (July 1985) does not support your position:

> The morning section of the examination will ordinarily include questions dealing with standards of ethical and professional conduct applicable to registered patent attorneys and agents.

The word "ordinarily" cannot be read out of the statement.

III.  The Director correctly held that petitioner's comparison of the morning and afternoon sections with regard to the weight which should be given to the questions in the afternoon section is without merit.  As the Director indicated, questions 4 and 5 of the afternoon section involved much more than simply copying a regulation as petitioner contends.

-2-

IV & V.   The Director correctly upheld the scoring of the afternoon section on the grounds that each of the 5 questions "was deemed equally complex," and that the matters considered in questions 4 and 5 are "just as important" as the description and differentiation of inventions (questions 1, 2, 3).   The questions themselves do not bear out petitioner's assertion of a distinction between questions 1, 2, and 3 on the one hand and questions 4 and 5 on the other hand on the basis that correct answers to questions 1, 2, and 3, unlike the answers to questions 4 and 5, could not be found in the statutes, regulations, and other materials a candidate might bring to the examination.

VI.   The Director fully considered and correctly sustained the grading of questions 4 and 5.   Contrary to petitioner's contentions, the wording of question 4 simply does not lend itself to any correct interpretation other than that of the Director.   Moreover, as the Director pointed out, questions 4 and 5 were not designed solely to test for writing skills but also to test for knowledge and understanding of PTO rules and procedures and the ability to explain their application to a factual situation in essay form.

Since your petition fails to provide any basis for revising the Director's decision refusing to grant your request for a passing grade, the Director's decision is affirmed.

Your request for an oral hearing is denied since it has not been found necessary for consideration of the questions raised in your petition.   See 37 CFR § 10.2(c), last sentence.

The denial by OED of your request for refund of the $250.00 fee submitted in July 1986 is affirmed.   The record shows that the fee was submitted with your application to take the afternoon section of the October 14, 1986, examination.   By letter dated October 3, 1986, you returned the admission card for the October 14 examination, stated you had no reason to take the examination and requested reimbursement of the fee.   On November 11, 1986, the Director of OED denied reimbursement on the ground the fee was not paid by mistake.   The Director's ruling is clearly in accordance with 35 U.S.C. § 42(d) which provides that the Commissioner's authority to make refunds is limited to "any fee paid by mistake or in excess of that required."   Moreover, since you obviously changed your mind after applying to take the October examination, the Director's ruling is clearly supported by 37 CFR § 1.26(a) which

-3-

precludes a refund because of "a mere change of purpose after the payment of money, as when a party desires to withdraw an application."

The petition is denied.

Dated: Jan 15, 1987

DONALD W. PETERSON
Deputy Commissioner of
    Patents and Trademarks

cc:

-4-

MAILED
12/04/87

R-1987-4

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARKS

In re                           )    Decision on Petition to
                                )    Review Decision of Director
                                )    of Enrollment and Discipline
_____   )

This is a decision on petitioner Hintz's Petition To
Invoke The Supervisory Authority Of The Commissioner Under
37 CFR 1.182 [sic] To Overturn The Grading Of Examination,
filed September 1, 1987.  Petitioner asks the Commissioner
to review and reverse the decision of the Director of
Enrollment and Discipline, entered July 31, 1987, which
granted the addition of only two of the requested thirty
points to petitioner's grade in the Afternoon Section of the
PTO Registration Examination For Patent Attorneys And Agents
of April 7, 1987.  Review of the decision of the Director is
specifically authorized under 37 CFR 10.2(c).  The petition
is construed as seeking relief under this rule.

In the petition, petitioner repeats and incorporates
by reference the arguments made before the Director in his
Request For Regrading Of Examination In Accordance With
37 CFR 10.7(c), filed July 8, 1987, and additionally argues
that the decision of the Director on regrade ignored and
disregarded the applicable case law on language in claim
preambles as limitations in claims.

Decision on Petition

The decision of the Director has been reviewed in
light of the petition and petitioner's answers to Questions
2 and 3 of the Afternoon Section of the Examination.  No
reversible error is found in the Director's decision.  The
following is added for emphasis.

Petitioner's claim for relief is based on the
contention that the coating thickness recitation in claim 1
of the application filed January 14, 1987 is in the preamble
to the claim and thus, is not a limitation on the claim.  In
support of his argument, petitioner cites "MPEP 1.77(e)" and
various cases.  Claim 1 reads as follows:

> 1.  A widget having a resin coating of up to 0.1
> mm thickness, said resin coating comprising a
> mixture of polyhexathisnthat and platonic acid.

Neither the cited cases nor 37 CFR 1.75(e) (the rule
petitioner presumably intended since it contains the quoted
language and there is no section 1.77(e) in the MPEP)
support petitioner's contention that matter in the preamble
to a claim is not a limitation of that claim, nor is this
true as a rule of law.  At any rate, there is no doubt that
the thickness recital in the above claim 1 is, in fact, a
limitation on the claim.

Even if the petitioner's contention were correct,
it was not made in any of petitioner's answers in the
Examination.  Indeed, it is inconsistent with the answer

Decision on Petition


which petitioner wrote for Question 2, which shows clearly

that petitioner at that time believed the thickness

recitation to be a limitation on the claim.

The $140 received with the petition was in excess

of the $92 fee required under 37 CFR 10.2(c). See 37 CFR

1.21(a)(5). The Office of Enrollment and Discipline will

process a refund in the amount of $48.

The petition is <u>denied</u>.


Date: Dec. 3, 1987

DONALD W. PETERSON
Deputy Commissioner of
    Patents and Trademarks