BEFORE THE DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

In re ⎱
⎰  Decision on Request
   for Reconsideration

## MEMORANDUM AND ORDER ON RECONSIDERATION

(Petitioner) petitions the Director of the United States Patent and Trademark Office (USPTO) for review of the January 5, 2001, decision on his request for a regrade of the Registration Examination (exam) held on April 12, 2000. This petition is treated as a request for reconsideration because the January 5, 2001, regrade decision was a final agency action.

Petitioner's request for reconsideration of the regrade decision is granted. However, upon reconsideration, Petitioner's request for additional points and a passing grade is denied.

## BACKGROUND

Applicants for registration to practice before the USPTO in patent cases, who took the exam held on April 12, 2000, were required to achieve a passing grade of 70. The Director of the USPTO's Office of Enrollment and Discipline (OED) sent Petitioner "Notice of the Results of April 12, 2000 Examination," which stated that Petitioner scored 67 on the exam. The mailing included a set of "Model Answers" and a notice entitled "Procedure for a Regrade of the April 12, 2000 Registration Examination." The

notice explained that an examination regrade could be requested under 37 C.F.R. § 10.7(c).[1]

On June 19, 2000, Petitioner filed a request for regrade pursuant to 37 C.F.R. § 10.7(c). Petitioner requested regrading of six questions, arguing that the model answers were incorrect. On January 5, 2001, the USPTO regraded Petitioner's score to 68 by adding one point, but Petitioner still did not obtain a passing grade. On January 25, 2001, Petitioner filed the present petition requesting review under 37 C.F.R. § 10.2(c).[2] Petitioner needs two more points for a passing grade.

## **OPINION**

The USPTO condensed the regrade process for the April 12, 2000, exam. The previous two-step regrade and review process provided by 37 C.F.R. §§ 10.7(c) and 10.2(c) was superseded. The Director of the USPTO delegated authority for deciding petitions under 37 C.F.R. §§ 10.7(c) and 10.2(c) to the Deputy Commissioner for Patent Examination Policy, who in turn delegated this authority to the Director of the Office of Patent Legal Administration. Accordingly, the January 5th decision said it was a final agency decision: "[a]s indicated in the instructions for requesting regrading of the Examination, in order to expedite a petitioner's appeal rights, all regrade requests have been considered in the first instance by the Director of the USPTO . . . . This is a final

---

[1] "Within two months from the date an applicant is notified that he or she failed an examination, the applicant may request regrading of the examination upon payment of the fee set forth in § 1.21(a)(6). Any applicant requesting regrading shall particularly point out the errors which the applicant believed occurred in the grading of his or her examination." 37 C.F.R. § 10.7(c).

[2] "Any final decision of the Director [of OED] refusing to register an individual . . . may be reviewed by petition to the Commissioner [Director of the USPTO] . . . ." 37 C.F.R. § 10.2(c).

2

agency action." The January 5th decision was reviewable in the United States District Court for the District of Columbia under 35 U.S.C. § 32 because it was a final agency action.

Instead of seeking review in District Court, Petitioner filed this request for review under 37 C.F.R. § 10.2(c), styled "Review of Decision of Director, Office of Enrollment and Discipline." A review of Petitioner's file shows that the instructions for regrade that were sent to Petitioner did not include a notice of the condensed regrade process. That is, Petitioner was not informed in the instructions that the decision on his regrade request would be a decision by the Director of the USPTO in the first instance and, thus, a final agency action. Accordingly, this petition is being treated as a request for reconsideration. Klein v. Peterson, 6 USPQ2d 1556, 1557 (D.D.C. 1988) (an agency has inherent authority to reconsider its decision before an appeal has been taken or other rights vest).

Petitioner reiterates arguments concerning his answers to exam questions 1 and 48, and presents some new arguments. The arguments have been considered but are not persuasive. The reasons set forth in the Director's January 5th decision are incorporated into this decision, and the determination to grant Petitioner one additional point, but to deny Petitioner a passing grade, is affirmed. Petitioner's grade remains at 68. Petitioner's new arguments are responded to as follows.

Question 1

Question 1 reads:

1. Which of the following does not constitute probative evidence of commercial success to support a contention of non-obviousness?

    (A) In a utility case, gross sales figures accompanied by evidence as to market share.

3

(B) In a utility case, gross sales figures accompanied by evidence as to the time period during which the product was sold.
(C) In a utility case, gross sales figures accompanied by evidence as to what sales would normally be expected in the market.
(D) In a utility case, gross sales figures accompanied by evidence of brand name recognition.
(E) In a design case, evidence of commercial success clearly attributable to the design, and not to improved performance of the device.

The answer choices apply to the same hypothetical contention that an invention is non-obvious. Choice (E) is not in dispute. Choices (A) through (D) all proffer "gross sales figures" evidence, but each adds a distinct second form of evidence. Thus, this question can be viewed simply as asking which of the distinct second forms of evidence in Choices (A) through (D) is <u>not</u> probative evidence. Probative evidence means "having the effect of proof; tending to prove or actually proving an issue; that which furnishes, establishes, or contributes toward proof." BLACK'S LAW DICTIONARY 836 (Abridged 6th Ed.1991).

The Model Answer is Choice (D), which proffers "brand name recognition" as evidence. Petitioner asks for credit for selecting Choice (B), which proffers "evidence as to the time period during which the product was sold." The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight. Graham v. John Deere, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966). To receive significant weight, commercial success must have a nexus with the claimed invention, and one must show that the commercial success results from the invention's features. See e.g., Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392, 7 USPQ2d 1222, 1226 (Fed. Cir. 1988) (e.g., nexus is shown when the thing being sold is the claimed invention).

Brand name recognition, advertising, etc., are not accepted as probative of commercial success in an obviousness analysis because commercial success must derive from the claimed invention, not from extraneous factors. MPEP § 716.03; see e.g., Demaco, 851 F.2d at 1393, 7 USPQ2d at 1226-27 ("It is thus the task of the challenger to adduce evidence showing that the commercial success was due to extraneous factors other than the patented invention, such as advertising, superior workmanship, etc."). Since brand name recognition is an extraneous factor, it cannot prove that commercial success derives from the claimed invention and it is not probative of commercial success. Thus, Choice (D) is the most correct answer because it includes brand name recognition, which is not probative evidence.

Petitioner argues that Choice (B) is the most correct answer, which includes "evidence as to the time period during which the product was sold." According to Petitioner, this kind of evidence cannot be probative. Petitioner is mistaken. This kind of evidence is probative of commercial success. See, e.g., Tec Air Inc. v. Denso Mfg. Michigan Inc., 192 F.3d 1353, 1360-61, 52 USPQ2d 1294, 1298-99 (Fed. Cir. 1999) (affirming a finding of commercial success based on sales figures alone; "Although sales figures coupled with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success."); J.T. Eaton & Co. v. Atlantic Paste & Glue Co., 106 F.3d 1563, 1566, 1572, 41 USPQ2d 1641, 1643, 1648 (Fed. Cir. 1997) (affirming a district court's finding of "strong commercial success," where the sales evidence consisted solely of the patentee's "$17 million of sales from 1979 through 1984, and its $4 million of annual sales from 1985 through 1989").

The treatise passage that Petitioner relies on states: "In view of the difficulties of isolating the cause of commercial success and its nexus to nonobviousness, it is

5

ordinarily not sufficient simply to show an increase in sales in absolute terms." CHISUM DIGEST § 5.05[2][*vi*]-*Sales Increase Evidence*, quoted at Petition page 2 of 3. However, exam Question 1 does not ask which evidence is "ordinarily sufficient" or "ordinarily not sufficient." Instead, the question asks which evidence is not probative. Petitioner's authority does not address the issue in the question because it addresses sufficiency of the evidence, not whether the evidence is probative.

Petitioner cites cases where sales evidence was found insufficient to support a conclusion of nonobviousness. In contrast to Tec Air and J.T. Eaton, these cases merely illustrate the point made by the CHISUM DIGEST. That a kind of evidence is found insufficient in some cases does not mean that this kind of evidence is not probative. In other cases, e.g., Tec Air or J.T. Eaton, this kind of evidence has been sufficient.

The directions for the exam were to choose the most correct answer. The contested choices in Question 1 effectively offer two kinds of evidence for consideration: Choice (B) includes a kind of evidence that is probative, and Choice (D) includes a kind of evidence that is extraneous. Since extraneous evidence can never be probative, the most correct selection is Choice (D), the Model Answer, because it includes extraneous evidence. Therefore, Petitioner will not be awarded credit for Question 1.

Question 48

Question 48 reads:

48.    Which of the following statements regarding 35 U.S.C. § 103 is most correct?

    (A)    PTO classification of prior art references used to reject a claim under 35 U.S.C. § 103, and the similarities and differences in structure and function carry equal weight as evidence of whether the references are analogous or non-analogous.

    (B)    The question of obviousness under 35 U.S.C. § 103 is resolved by determining whether the differences between the prior art and the claims would have been obvious.

6

(C)  Obviousness of an invention can be properly determined by identifying the "gist" of the invention, even where the "gist" does not take into regard an express limitation in the claims.
(D)  In delineating the invention, consideration is given not only to the subject matter recited in the claim, but also the properties of the subject matter which are inherent in the subject matter and disclosed in the specification.
(E)  Obviousness can be predicated on what is not known at the time an invention is made, where the inherency of the feature is later established.

The Model Answer is Choice (D). The Model Answer is a correct statement of the law because evidence of inherent properties must be considered when determining obviousness. "There is no question that <u>all evidence of the properties of the claimed compositions</u> and the prior art must be considered in determining the ultimate question of patentability." <u>In re Dillon</u>, 919 F.2d 688, 693, 16 USPQ2d 1897, 1901 (Fed. Cir. 1990) (in banc) (emphasis added); <u>see also</u> <u>In re Papesch</u>, 315 F.2d 381, 391, 137 USPQ 43, 51 (CCPA 1963) ("From the standpoint of patent law, <u>a compound and all its properties are inseparable</u>") (emphasis added).

Petitioner argues that the most correct answer is Choice (B). Choice (B) is an improper statement of the law. "Focusing on the obviousness of substitutions and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness." <u>The Gillette Co. v. S.C. Johnson & Son Inc.</u>, 919 F.2d 720, 724, 16 USPQ2d 1923, 1927 (Fed. Cir. 1990); <u>Hybritech, Inc. v. Monoclonal Antibodies, Inc.</u>, 802 F.2d 1367, 1383 n.6, 231 USPQ 81, 93 n.6 (Fed. Cir. 1986) ("Submitting to the court language like 'any differences . . . would have been obvious,' as was done here, violates the axiom that it is not whether the differences would have been obvious but the claimed invention *as a whole*") (original emphasis).

The Supreme Court explained the importance of developing the factual background for an obviousness determination with certain inquiries:

7

> Under § 103 the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

Graham v. John Deere, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966). Although Petitioner relies on Graham, that reliance is misplaced because Graham requires that "the differences between the prior art and the claims at issue be ascertained." Id. Thus, determining "whether the differences between the prior art and the claims would have been obvious" is not one of the inquiries set out in Graham and, according to Gillette, above, it is improper to resolve obviousness on such a basis.

Choice (B) is also wrong because it asserts that obviousness may be resolved with a single factual determination. Graham, upon which Petitioner relies, involved at least three factual inquiries and additional secondary considerations. Not only is a single factual determination insufficient to resolve an obviousness determination, "[t]he decisional process en route to a § 103 conclusion involves more than answers to the fact inquiries in Graham. It also involves: (1) legal determinations; and (2) legal standards for fact-finding." Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1567-68, 1 USPQ2d 1593, 1597 (Fed. Cir. 1987). Therefore, Petitioner will not be given credit for Question 48.

This is a final agency action.[3]

---

[3] "A person refused recognition to practice . . . before the Patent Office may file a petition in this court against the Commissioner of Patents for review of such action within 30 days after the date of the order recording the Commissioner's action." LCvR 83.7, United States District Court for the District of Columbia. The official title

## ORDER

The petition for reconsideration has been granted to the extent that it has been considered but it is otherwise <u>DENIED</u>.

APR 1 9 2001

*Nicholas P. Godici*
Nicholas P. Godici
Acting Under Secretary of Commerce for Intellectual Property and
Acting Director of the United States Patent and Trademark Office

cc:

Harry I. Moatz
Director, Office of Enrollment and Discipline
United States Patent and Trademark Office
Washington, D.C. 20231

---

for the head of the USPTO has recently changed to the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." Patent and Trademark Office Efficiency Act, Pub. L. 106-113 (Nov. 29, 1999).

9