UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER RONALD KRAMER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES PATENT AND )<br>TRADEMARK OFFICE, )<br>JON W. DUDAS, Director, USPTO, )<br>JOHN J. DOLL, Commissioner for Patents, )<br>HARRY I. MOATZ, Director, Office of )<br>  Enrollment and Discipline, )<br>ROBERT J. SPAR, Director, Office of )<br>  Patent Legal Administration, )<br>)<br>Defendants. )<br>)<br>_____) | Civil Action No. 05-1455 (HHK) |

SECOND AMENDED COMPLAINT

I am seeking a writ of mandamus, pursuant to 28 U.S.C. 1361, ordering the Commissioner for Patents, United States Patent and Trademark Office (USPTO) and the Director of Enrollment and discipline, USPTO, to comply with rules and statutes concerning my application to practice as an agent before the USPTO.  Alternatively, I am seeking an injunction ordering the USPTO to comply with rules and statutes as stated above.  Alternatively, I seek relief under 35 U.S.C. § 32, and that the Court extend the 30-day deadline in LCvR 83.7 for cause shown herein.  The USPTO has refused to follow proper procedure according to the provisions of 37 C.F.R. §10.6, §10.7, and §10.2.  In particular, the provision for administrative review specified by Rule 10.2(c),

pursuant to 35 U.S.C. 32, is the essential issue at hand. Rule 10.2(c) states that any final decision of the Director of Enrollment and Discipline (OED) may be administratively reviewed. This rule provides the mechanism to fulfill the statutory mandate required by 35 U.S.C. 32 for administrative review to be performed by the USPTO prior to issuance of a final agency action denying admission to practice.

      I sat for the registration examination on October 15, 2003. I received a grade of 68, and notification of the result was received in December of 2003. I petitioned the Director of Enrollment and Discipline for regrading of the examination results according to 37 C.F.R. 10.7(c) in February, 2004. Seven and one-half months later I received a Memorandum and Order from the Office of Patent Legal Administration (OPLA), dated October 25, 2004, informing me that my score had been raised from 68 to 69[1]. Because the Opinion in the Memorandum and order recited several obvious and egregious errors, errors sufficiently severe to affect the score, I wrote to the Commissioner for Patents, and included a fee for $130.00 as specified by 37 C.F.R. 10.2(c), requesting administrative review of the regrade decision. Rather than to conduct the administrative review, another regrade was performed, and I was again notified by OPLA that my petition for regrade was denied insofar as I was seeking a passing grade. The second Memorandum an Order was dated February 17, 2005. Along with the second memorandum and Order was included a brief message from Harry Moatz, Director, OED, returning my $130 fee alleging that "the rules did not provide for a fee for reconsideration of the decision on

---

[1] The Memorandum and Order included an extemporaneously established new rule not provided for in the Code of Federal Regulations: "As indicated in the instructions for requesting regrading of the Examination, in order to expedite a petitioner's appeal rights, a single final agency decision will be made regarding each request for regrade. The decision will be reviewable under 35 U.S.C. § 32. The Director of the USPTO, pursuant to 35 U.S.C. § 2(b)(2)(D) and 37 CFR 10.2 and 10.7, has delegated the authority to decide requests for regrade to the Director of Patent Legal Administration."

regrade."

Upon receiving the February 17th notification, I called Robert J. Spar, Director of OPLA to express my concerns about the serious errors within the Opinion section of his Memorandum and Order. He directed me to write him a letter. I wrote to Mr. Spar on February 28, 2005, and then a follow-up letter on March 2. These letters detailed my concerns about the serious and transparently obvious errors in his Memorandum and Order. Mr. Spar replied in a letter dated March 28th, that there would be no further action from his office.

I then submitted a petition, filed April 11, 2005, to the Commissioner for Patents requesting review of the February 17th decision, according to 37 C.F.R. 10.2(c). In reply I received an astonishing letter from Mr. Spar, dated May 18th, informing me that my petition was improper:

"The petition under 37 C.F.R. 10.2(c) filed on April 11, 2005 is improper for requesting review of the decisions dated February 17, 2005 and October 25, 2004. 37 C.F.R. 10.2(c) provides for review of any final decision of the Director of Enrollment and Discipline. Thus, the petition under 37 C.F.R. 10.2(c) is improper because the decisions were not rendered by the <u>Director of Enrollment and Discipline</u>."

Mr. Spar's letter also included the following:

"The decisions also stated that "[t]his is <u>a final agency action</u>." The provision for regrade of an examination set forth in former 37 C.F.R. 10.7(c) has been eliminated and current 37 C.F.R. 11.7(e) provides that "[s]ubstantive review of the answers or questions may not be pursued by petition for regrade." "

3

Concerning the rules change, Mr. Spar cited 69 *Fed. Reg.* 35428 (June 24, 2004), despite the fact that the rule change announced on that day in the *Federal Register* included, "The rules adopted at this time apply only prospectively." The issue of the rules change is obviously not germane to my application for registration. I sat for the examination on October, 2003, and two regrades have been performed. The action by Mr. Spar's office is at best a counterfeit final agency action. Rule 10.2(c), which governs this case, is clear in its expectation that refusal to register an individual under §10.6 is a decision assigned to the Director of the Office of Enrollment and Discipline, and this decision is subject to administrative review; the review should be conducted by someone other than the individual who performed the regrade. Furthermore Rule 10.2(c) fulfills the statutory mandate of 35 U.S.C. 32: "to conduct the hearing <u>required</u> by this section." Indeed, even if administrative review is not absolutely required in every instance, there are sufficient grounds to require administrative review in this case. Deviation by the USPTO from established proper procedure outlined in 37 C.F.R. §10.2, §10.6 and §10.7 cannot cause my right for administrative review to spontaneously dematerialize. I petitioned the Commissioner according to established practice and rules. The USPTO's impropriety cannot render my petition improper. Rule 10.2(c) clearly provides the mechanism for an applicant to seek administrative review upon notification of exclusion according to Rule 10.6. The action by the Commissioner's office via OPLA has the appearance of sleight of hand, and no reasonable justification for denial has been stated.

For many years, the USPTO has followed the procedures dictated by 37 C.F.R. §10.2, §10.6, and §10.7. Reconsideration according to Rule 10.2(c) has been routinely conducted in the past. Indeed there are numerous final decisions of the Commissioner

answering §10.2(c) petitions in relation to regrade decisions that are posted at OED's FOI web page.  It has also been established for decades that 35 U.S.C. 32 applies to applicants seeking to register to practice.  Indeed, Mr. Spar himself stated on May 18th, "Both decisions stated that "in order to expedite a petitioner's appeal rights, a single final agency decision will be made regarding each request for regrade. The decision will be reviewable under 35 U.S.C. §32." "  However, there is no provision for a single final agency decision regarding regrade requests in 37 C.F.R. §10.2, §10.6, or §10.7, and these rules govern this case.  Not only does 35 U.S.C. 32 provide for judicial review of a final decision of the Commissioner, it also states that **administrative review** is "required by this section."  I have never been properly notified by OED concerning my regrade petition, administrative review has been improperly bypassed and disguised in the form of a regrade, and no proper final agency decision has been rendered.  Allegedly, in order to "expedite" my right of judicial review, the Commissioner and OPLA are trampling over my right for administrative review.

A Disquieting Pattern of Conduct

The details concerning the issues pertaining to the examination questions in dispute are included in the attached correspondence and will not be repeated here in their entirety.  I received a Memorandum and Order from OPLA dated October 25, 2004, that denied my petition for regrade insofar as I was seeking a passing grade. As noted above, I replied with a request for reconsideration.  In my petition, I noted that there were some disturbingly misleading statements therein.  For example, concerning question 31 AM session: "Even though there is no reason to assume that the apparatus claims of the fact pattern were drafted with "means for" functional language, petitioner cites *In re Freeman*,

5

197 USPQ 464 (CCPA 1978) to show that an apparatus claim expressed in "means for" functional terms may be indistinguishable from a method claim directed to the steps performed by the "means." However, the issue in *In re Freeman* was whether both the method and apparatus claims were directed to statutory subject matter under 35 U.S.C. § 101 in a situation where the apparatus claims recited "means for" every step recited in the method claims. Morning question number 31 concerns the scope of claims under reexamination, where issues under § 101 may not even be considered."

    The excerpt above is adroitly constructed in its fraudulence. I correctly reasoned that the unrecited claims could contain certain language, and could include certain limitations in accord with MPEP 1412.03. I did not assume any facts not presented by the question. The statement above correctly states that there is no reason to assume that "the apparatus claims of the fact pattern were drafted with" any particular language. The statement reveals an intent to falsely imply that I made such an assumption. "Could have included," as I stated, simply does not equal, "were drafted with." The statement also gives the false impression that I cited *In re Freeman* to support the contention that means for functional language might be present. That was however, only an illustrative example describing how a 'method claim' may be indistinguishable from an 'apparatus claim.' I correctly cited *In re Freeman* to justify this latter contention. The OPLA statement above also attempts to falsely mislead the reader into believing that *In re Freeman* is not relevant to issues concerning 35 U.S.C. 305. That statement is beyond preposterous and is utterly fraudulent and reckless. It is apparently designed to deceive a non-practitioner and non-attorney applicant; an action that is highly questionable if not unethical. Incidentally, the USPTO has recognized that *In re Freeman* is relevant to 35 U.S.C. 305

6

in the context of a registration examination regrade. See for example,

http://www.uspto.gov/web/offices/com/sol/foia/oed/regrades/e04.pdf.

I strongly objected to those offending statements, and OPLA issued a second Memorandum and Order, which subtly shifted the falsity in a unseemly shell-game-like manner. "There is no indication in the question that the claims in the patent are written in means-plus-function language under 35 U.S.C. 112, sixth paragraph. MPEP § 2181 set forth that a claim limitation will be interpreted to invoke 35 U.S.C. 112, sixth paragraph, if it meets the 3-prong analysis." Indeed, there is no such indication, but I put forth no such assumption of fact either affirmatively or negatively. I.e., I did not assume that any claim <u>was written with</u> means-plus-function language. The issue of the 3-prong analysis is a bogus 3-pronged red herring. Similarly the Opinion in the February USPTO document stated, "Furthermore, the facts presented in the question do not support Petitioner's contention that certain method claims may be indistinguishable from the apparatus claims in Patent X. The question did not provide for any facts to indicate that the method claim in answer (C) contains all the limitations of any of the apparatus claims in the patent." It is true that the question did not *intentionally* provide facts to indicate that the method claim may be indistinguishable, as the issue is one of omission. The OPLA statement falsely implies that I assumed that the method claim <u>was</u> indistinguishable, and I made no such assumption. OPLA and the USPTO have never enumerated <u>any</u> improper facts that I allegedly assumed, but have resorted to fraudulently implying that I must have done so somehow.

Concerning PM question 33, OPLA has displayed similar behavior. The main argument put forth in both the October and February decisions dismissing my contention,

7

concerning the lack of clarity about the statutory basis of an examiners rejection, are patently absurd. I pointed out in my request for reconsideration in December, that their argument is self-contradictory and thus absurd on its face. Nevertheless, the February decision simply repeated the same ridiculous argument. I had caught them red-handed, and in response, they have attempted to behave as though it had never happened. In view of the above I question usage of the term "fully" in the statement of Mr. Robert J. Spar, March 28, 2005: "Even though there are no rules or procedures for a petitioner to request for reconsideration of a decision on a petition for regrade under 37 C.F.R. 10.7(c), the Office fully considered the arguments presented in the request." I also object to the improper procedure whereby Mr. Spar conducted the reconsideration of his abusive regrade decision, a decision that I had pointedly criticized. Mr. Spar should not have conducted the regrade, and he certainly should not have reviewed his own decision.

    Mr. Spar's contention that there are no rules or procedures for a petitioner to request reconsideration of a decision on regrade is also bogus. As noted above, the new rules (which I believe to be unlawful insofar as they improperly restrict applicants' sufficient access to exam questions and answers in order to pursue review according to 35 U.S.C. 32,) apply only prospectively, and reconsideration of regrades under 37 C.F.R. 10.7(c), have been performed according to 37 C.F.R. 10.2(c), by the PTO for many years. Furthermore, regrades of my examination answers <u>have already been performed</u>, and if the USPTO no longer wishes to perform regrades in the future, that is not germane to this matter. Additionally, I petitioned for regrade several months prior to the adoption of the 'new rules,' but OPLA waited over seven months to reply with a counterfeit final

agency action conveniently timed so that they could lamely attempt to state that there are no provisions in the rules for reconsideration.

Following receipt of Mr. Spar's March letter, I filed my second 10.2(c) petition, but was then advised by Mr. Spar, in a letter dated May 18th, that petition that heretofore was no longer provided for by the rules, was now improper because the decision had not been rendered by OED! This is indeed a curious response in view of the fact that the Commissioner's office has previously conducted administrative review of regrades not performed by OED. One such example rests at the USPTO's own web site: http://www.uspto.gov/web/offices/com/sol/foia/oed/regrades/e47.pdf.

Following receipt of Mr. Spar's May 18th letter, I called the Commissioner's office, and left a message for someone identified as "Mr. Barr." I spoke with "Mr. Barr" on two occasions. On the first occasion I had pointed out that I should be entitled to administrative review as provided for by 35 U.S.C. 32. He then responded that my situation is not governed by 35 U.S.C. 32 because I had not previously practiced. This is obviously false and I don't believe it necessary to cite case law. However, I should mention that I have at least thrice received correspondence from the USPTO indicating that I can seek judicial review of their allegedly final action via 35 U.S.C. 32. The USPTO has hundreds of documents posted at their web site that also include that type of statement. When I brought up this point, "Mr. Barr" advised me that I could include that fact when I would proceed in a civil action. I also pointed out that I had not been notified properly by OED. He responded that OED never performed regrades. This is quite curious since there are several documents posted at the USPTO web site indicating that OED had conducted regrades in the past, according to 37 C.F.R. 10.2, 10.6, and 10.7,

9

including http://www.uspto.gov/web/offices/com/sol/foia/oed/regrades/R1987-01.pdf, and more recently http://www.uspto.gov/web/offices/com/sol/foia/oed/regrades/e23.pdf. On a second occasion I spoke with "Mr. Barr," he called me after I had expressed my displeasure to one of the office personnel about the lack of consistency of his statements. He asked me not to call anymore. I expressed my intention that I would probably write to the Commissioner one last time[2]. He advised me that I would receive the same type of reply that I had previously received.

In view of the foregoing, it is clear that there is substantial justification to support administrative review of the regrade decisions, and that the USPTO does not intend to fulfill its obligation to proceed in an equitable manner. I have provided <u>substantial arguments</u> on several occasions, however, the USPTO has displayed steadfast intent to deny opportunity for fair administrative review. It is also evident that no legitimate final office action has been executed, and I have never been properly notified by OED that my application to practice has been denied. They have admitted that OED has not notified me, c.f., letter from Mr. Spar, May, 18, 2005, but used this as an excuse to avoid responsibility for their errors and conduct.

**Action Requested**

In view of the fact that the USPTO actions are both improper and inequitable:

I hereby request that the Director of OED be ordered to conduct regrading and notify me of his decision, in a timely manner.

---

[2] I was uncertain how to proceed at this point. The PTO's deceptive deviation from proper procedure made it impossible for me to be certain concerning the next appropriate step.

Alternatively, I request that the OED Director should promptly notify me of his decision to exclude me from practice by relying on the OPLA regrades, thus enabling me to petition the Commissioner according to 37 C.F.R. 10.2(c).

Alternatively, I request that the Commissioner for Patents or the Director of the USPTO be ordered to conduct an administrative review of the regrades that have been performed; to be fairly reviewed according to rule and statute, 37 C.F.R.10.2(c) and 35 U.S.C. 32 respectively.

Alternatively, I request that the Director of Enrollment and Discipline or the Director of the USPTO be ordered to enter my name into the register. Ordinarily, mandamus or injunction may not be resorted to as a mode of review when there is a statutory method of appeal prescribed or to review an appealable decision of record, *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27-28 (1943), *Franchi v. Manbeck*, 19 U.S.P.Q.2D (BNA) 1316, and *Cupples v. Marzall*, 101 F, Supp, 579. However, this is hardly an ordinary situation. The USPTO has improperly attempted to deny that administrative review is available[3], and has then subsequently refused administrative review without justification. I would indeed seek relief by judicial review according to 35 U.S.C. 32 and Local Rule 83.7 <u>following</u> a legitimate final agency action which relies on <u>proper administrative review</u>. By willfully and improperly refusing to conduct administrative review, the USPTO has opened the door to mandamus or an injunctive

---

[3] Unlike Franchi, who received legitimate review according to Rule 10.2(c) prior to filing for relief under mandamus, I have not received § 10.2(c) review according to due process, and the defendants have attempted to conceal the fact that § 10.2(c) review was available to me and other applicants. They continue to insist that § 10.2(c) was superseded simply by stating so in a letter, despite the fact that new rules must be established according to 5 U.S.C. § 553 as required by 35 U.S.C. § 2(b)(2)(B).

11

remedy. It is only this final alternative that necessarily invokes 28 U.S.C. 1361. The Court may decide according to its discretion to treat this case under 35 U.S.C. § 32.

                                                Respectfully Submitted

                                                _____/s/_____

                                                Peter R. Kramer