UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER RONALD KRAMER,<br><br>     Plaintiff,<br><br>UNITED STATES PATENT AND TRADEMARK OFFICE; JON W. DUDAS, Director, USPTO; JOHN J. DOLL, Commissioner for Patents; HARRY I. MOATZ, Director, Office of Enrollment and Discipline; ROBERT J. SPAR, Director, Office of Patent Legal Administration,<br><br>     v.<br><br>     Defendants. | Civil Action 05–01455 (HHK) |

**MEMORANDUM OPINION**

Peter Kramer, proceeding *pro se*, commenced this action against the United States Patent and Trademark Office ("PTO"); Jon W. Dudas, Director of the PTO; John J. Doll, Commissioner for Patents; Harry I. Moatz, Director of the PTO's Office of Enrollment and Discipline ("OED"); and Robert J. Spar, Director of the Office of Patent Legal Administration ("OPLA") following his failure to receive a passing grade on the patent bar registration examination. Kramer seeks a writ of mandamus in order to compel the PTO to review a regrading of his exam. Before the court is defendants' motion to dismiss for lack of jurisdiction (Dkt. #4), and Kramer's motion for leave to file a second amended complaint (Dkt. #18). Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that defendants' motion must be granted and Kramer's motion denied.

## I. BACKGROUND

Kramer took the patent bar registration exam on October 15, 2003, and received a 68, two points below a passing grade of 70. Dissatisfied with his score, Kramer petitioned the Director of OED for a regrade of his examination on February 20, 2004.[1] The Director of OPLA responded to Kramer's request on October 25, 2004, and awarded Kramer an additional point. Nevertheless, Kramer was denied admission to the patent bar because his score remained below that which was required to pass.

Kramer disputed the results of the regrade and believed that he deserved additional credit for a number of answers that he contends were erroneously marked incorrect. Accordingly, on December 13, 2004 Kramer submitted a request to the Director of the PTO "pursuant to 37 C.F.R. § 10.2(b)(2)(d)" asking for review of the regrade.[2] Am. Compl. Ex. 8 (Dec. 13, 2004 Letter). The Director of OPLA replied to Kramer's petition and, once again, concluded that Kramer had not passed the patent bar examination. On the same day, the Director of OED returned to Kramer a personal money order in the amount of $130.00 that was sent as payment for the review of the October 25, 2004, regrade. The money was returned because, according to

---

[1] Subsequent to Kramer sitting for the patent bar examination, PTO revised the regulations governing the administration and review of the exam. 37 C.F.R. § 11.7 now dictates that: "Substantive review of the answers or questions may not be pursued by petition for regrade. An individual who failed the examination has the right to retake the examination an unlimited number of times . . . ." 37 C.F.R. § 11.7(e). In announcing this revision, however, PTO indicated that the new rules would only apply prospectively. *See* Changes to Representation of Others Before the United States Patent and Trademark Office, 69 Fed. Reg. 35,428, 35,428 (June 24, 2004). Consequently, the court will assess Kramer's claim under the rules as they existed at the time Kramer sat for the examination.

[2] Kramer acknowledges that this was not the proper regulation by which to request a regrade.

the correspondence accompanying the money order, "Inasmuch as the rules did not provide for a fee for reconsideration of the decision on regrade, the money order is being returned to you." Am. Compl. Ex. 7 (Feb. 17, 2005 Letter).

Despite this second decision from the PTO, Kramer persisted with his insistence that his exam had been improperly graded and expressed as much in a February 28, 2005 letter addressed to the Director of OPLA. This time, however, the Director of OPLA refused to reexamine the merits of Kramer's contentions. On March 28, 2005, the Director of OPLA informed Kramer that "[t]he Office's decisions on October 25, 2004 and February 17, 2005 fully addressed your arguments. There are no rules or procedures for a petitioner to request for reconsideration of a decision of a petition for regrade under 37 C.F.R. 10.7(c)." Am. Compl. Ex. 3 (Mar. 28, 2005 Letter). In addition, the letter noted that the previous decisions stated that they represented "final agency action" and that these final agency decisions "will be reviewable under 35 U.S.C. § 32." *Id.*

Undeterred, Kramer again wrote the PTO. In a letter dated April 8, 2005, Kramer sought "to petition according to 37 C.F.R. 10.2(c) in order to appeal" the February 17, 2005 decision reconsidering Kramer's regrade. Am. Compl. Ex. 2 (Apr. 8, 2005 Letter). Kramer's quest for an additional two points on his exam and a passing grade, however, was again unsuccessful. As it did in its March 28, 2005 letter, on May 18, 2005 OPLA declined to review the merits of Kramer's claims. Rather, OPLA stated that Kramer's "petition under 37 C.F.R. 10.2(c) . . . is improper for requesting review of the decisions dated February 17, 2005 and October 25, 2004. 37 C.F.R. 10.2(c) provides for review of any final decision of the *Director of Enrollment and Discipline*. Thus, the petition under 37 C.F.R. 10.2(c) is improper because the decisions were

not rendered by the Director of Enrollment and Discipline." Am. Compl. Ex. 1 (May 18, 2005 Letter) (emphasis in the original).

On July 22, 2005, Kramer filed the instant action seeking a writ of mandamus "ordering the Commissioner for Patents, United States Patent and Trademark Office and the Director of Enrollment and Discipline, to comply with rules and statutes concerning [his] application to practice as an agent before the USPTO."[3] Am. Compl. at 1. Defendants now move to dismiss Kramer's first amended complaint.

## II. ANALYSIS

### A. Motion to Dismiss

Defendants assert that the instant action should be dismissed because Kramer failed to file timely his complaint.[4] Defendants argue that LCvR 83.7 requires any individual seeking the district court to review his/her denial from admission to the patent bar to do so within thirty days

---

[3] On August 4, 2005, Kramer filed an amended complaint. Kramer's amended complaint is substantially similar to his initial complaint, however, it seeks in the alternative "an injunction ordering the USPTO to comply with rules and statutes . . . ." Am. Compl. at 1.

[4] Defendants move to dismiss Kramer's complaint based on a lack of jurisdiction. However, as discussed *infra* at n.6, both parties concede that the time bar embodied in LCvR 83.7 is not jurisdictional. Accordingly, the court construes defendants' motion as one to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1).

A motion to dismiss is appropriately granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged").

of the agency order denying said admission and Kramer simply did not comply with this requirement.

### 1.  28 U.S.C. § 1361 v. 35 U.S.C. § 32

In order to resolve this dispute the court must first determine the precise nature of the relief that Kramer seeks.  Kramer, proceeding *pro se*, has styled his complaint as a petition for a writ of mandamus pursuant to 28 U.S.C. § 1361.  Defendants object to this categorization arguing instead that, when properly construed, Kramer's complaint is a request for review under 35 U.S.C. § 32.

The court is cognizant that *pro se* complaints are to be interpreted liberally, *see, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In so doing, however, the court agrees with defendants and concludes that Kramer's complaint should be analyzed as an action filed pursuant to 35 U.S.C. § 32.  Section 32 provides, in pertinent part:

> The Director may, after notice and opportunity for a hearing, suspend or exclude, either generally or in any particular case, from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 2(b)(2)(D) of this title, or who shall, by word, circular, letter, or advertising, with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective applicant, or other person having immediate or prospective business before the Office. . . . The United States District Court for the District of Columbia, under such conditions and upon such proceedings as it by its rules determines, may review the action of the Director upon the petition of the person so refused recognition or so suspended or excluded.

The relief set forth in § 32 clearly parallels that which Kramer asks this court to provide. Although Kramer attempts to draw a distinction between asking the court to review the merits of his examination answers and merely asking the court to ensure that his examination is properly

5

reviewed by administrative officials, at base Kramer disputes the PTO's refusal to admit him to the patent bar and therefore seeks relief under 35 U.S.C. § 32.[5] *See Franchi v. Manbeck*, 972 F.2d 1283, 1287–88 (Fed. Cir. 1992) (holding that a claim seeking review of a patent bar examination was properly brought under 35 U.S.C. § 32, not 28 U.S.C. § 1361). Whether Kramer's objections focus on the administrative procedures utilized or the substance of the examination is of no moment; Kramer's claims are most appropriately brought before the court pursuant to 35 U.S.C. § 32.

A writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). In addition, "[o]rdinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27–28 (1943); *see also Cupples v. Marzall*, 101 F. Supp. 579, 580 (D.D.C. 1952) ("[i]n view of the statutory provision for judicial review of the Commissioner's denial of admission to practice [then 35 U.S.C. § 11], the court holds that mandamus will not lie."). In this instance, plaintiff has neither exhausted other possible means of

---

[5] Kramer's amended complaint contains a number of alternative requests for relief:

> I hereby request that the Director of OED be ordered to conduct regrading and notify me of his decision, in a timely manner. Alternatively, I request that the OED Director, should promptly notify me of his decision to exclude me from practice by relying on the OPLA regrades, thus enabling me to petition the Commissioner according to 37 C.F.R. 10.2(c). Alternatively, I request that the Commissioner be ordered to conduct an administrative review of the regrades that have been performed; to be <u>fairly</u> reviewed according to rule and statute, 37 C.F.R. 10.2(c) and 35 U.S.C. 32 respectively. Alternatively, I request that the Director of Enrollment and Discipline be ordered to enter my name into the register.

Am. Compl. at 12–13.

relief—specifically, that which is made available by § 32—nor is it clear that he is entitled to any specific action by any official from the PTO. The primary relief that Kramer seeks is an additional review of his examination, yet the PTO has already provided two substantive assessments of his answers.

Kramer concedes that his examination was graded, regraded, and that the regrade was reexamined. Am. Compl. at 9. Kramer's principal qualm is with *who* performed these tasks.[6] In particular, Kramer argues that he was never given an opportunity to appeal his denial of admission to the Director of the PTO as previously set forth in 37 C.F.R. § 10.2(c), which provided that "any final decision of the Director [of OED] refusing to register an individual under § 10.6 . . . may be reviewed by petition to the Commissioner upon payment of the fee set forth in § 1.21(a)(5)."[7] Kramer contends that, in contravention of this provision, the Director of

---

[6] Kramer contends that the review of his regraded examination was not valid "reconsideration" under § 10.2(c). As evidence of this procedural impropriety, Kramer relies in large part on the return of the $130.00 fee he submitted with his petition for reconsideration. While the court agrees that this refund was most likely a mistake, *see* 37 C.F.R. § 1.21(a)(5), it does not negate the validity of the review performed. The text of the February 17, 2005, decision indicates that a substantive response was provided to Kramer's petition. In addition, the court notes that it is somewhat ironic that Kramer would now fault the PTO for returning his $130.00 when he himself requested that "this sum be refunded" because he believed that he "should not have to pay for OED errors." Am. Compl. Ex. 8 (December 13, 2004 Letter).

[7] In 1999, 35 U.S.C. § 3(a) made the position of the Commissioner of Patents and Trademarks into two new positions—the Under Secretary of Commerce for Intellectual Property and the Director of the United States Patent and Trademark Office. *See Kersey v. Undersec'y of Commerce for Intellectual Prop.*, 2005 WL 486144, at *4 (D.D.C. Jan. 31, 2005). In addition, Congress indicated in the PTO Efficiency Act that "[a]ny reference in any other Federal law, Executive order, rule, regulation, or delegation of authority, or any document of or pertaining to the Patent and Trademark Office (1) to the Commissioner of the Patent and Trademarks is deemed to refer to the Under Secretary of Commerce for Intellectual Property and *Director* of the United States Patent and Trademark Office." Pub. L. No. 106-113, Div. B, § 1000(a)(9), *as quoted in* 35 U.S.C.A. § 1 (emphasis added). As such, the reference to the "Commissioner" in § 10(2)(c) is in fact a reference to the Director of the PTO.

OPLA—not the Director of the PTO—reconsidered his score following the regrading of his examination.

Kramer neglects, however, to consider the effect of 35 U.S.C. § 3(b)(3)(B), which permits the Director of the PTO to delegate many of his responsibilities. *See* 35 U.S.C. § 3(b)(3)(B) ("The Director shall define the title, authority, and duties of such officers and employees and delegate to them such of the powers vested in the Office as the Director may determine. The Office shall not be subject to any administratively or statutorily imposed limitation on positions or personnel, and no positions or personnel of the Office shall be taken into account for purposes of applying any such limitation."). As such, the court finds no error in the Director of OPLA conducting the review of Kramer's regraded examination rather than the Director of the PTO. *See Kersey v. Undersec'y of Commerce for Intellectual Prop.*, 2005 WL 486144, at *6 (D.D.C. Jan. 31, 2005) (finding that the Director of the PTO had the authority to delegate the issuance of a final decision suspending the plaintiff from practicing to the PTO General Counsel); *Robertson v. United States*, 285 F. 911, 914–15 (D.C. Cir. 1922) ("[i]f Congress could by statute legally authorize the Commissioner of Patents . . . to hear, determine, and finally decide disbarment cases, it could, by statute, legally empower those officials to delegate the performance of such duties to a designated subordinate."). Consequently, it is far from certain that defendants "owe" Kramer "a clear nondiscretionary duty," and as such, the court concludes § 32 is the more appropriate avenue to pursue Kramer's claim.

### 2. Compliance with LCvR 83.7

Having found that Kramer's complaint is best treated as one seeking relief pursuant to 35 U.S.C. § 32, the court proceeds to the question of whether Kramer's complaint was timely filed.

35 U.S.C. § 32 states that "[t]he United States District Court for the District of Columbia, *under such conditions and upon such proceedings as it by its rules determines*, may review the action of the Director upon the petition of the person so refused recognition or so suspended or excluded." 35 U.S.C. § 32 (emphasis added). Exercising the rule-making power conferred upon it by § 32, the District Court for the District of Columbia has propagated LCvR 83.7, which requires those persons "refused recognition to practice or suspended or excluded from practice before the Patent Office [to] file a petition in this court against the Commissioner of Patents for review of such action within 30 days after the date of the order recording the Commissioner's action." Defendants argue, and the court agrees, that Kramer filed his complaint outside of this 30-day limitation.

Defendants issued their decision with respect to Kramer's request for a regrade of his examination on October 25, 2004, and their decision resolving his petition for reconsideration of that regrade on February 17, 2005. Kramer did not file his complaint until July 22, 2005, more than four months after the applicable deadline. Accordingly, his complaint is untimely.

Given that defendants concede that this filing limitation is not a jurisdictional requirement,[8] Defs.' Mot. at 6–7, the only remaining consideration is whether the application of equitable tolling is warranted. The doctrine of equitable tolling, which permits a plaintiff to

---

[8] The parties agree, as does the court, that LCvR's 30-day filing period is not jurisdictional and therefore principles of equitable tolling may apply. The Supreme Court has recently advised that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (2006). In this instance, there is no indication in 35 U.S.C. § 32 that the limits on filing established by the District Court for the District of Columbia should be construed as a jurisdictional bar.

9

avoid the bar of the statute of limitations period in situations where the plaintiff is unable to discover the existence of a claim despite the use of due diligence, should "be exercised only in extraordinary and carefully circumscribed instances." *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 579–80 (D.C. Cir. 1998) (quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)).  It is a doctrine that should "be employed 'only sparingly.'" *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) (quoting *Irwin v. Dep't of Vets. Affs.*, 498 U.S. 89, 96 (1990)).  "'[E]quitable tolling is unwarranted where a litigant 'has failed to exercise due diligence in preserving his legal rights.'" *Commc'ns Vending Corp. of Ariz., Inc. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting *Irwin*, 498 U.S. at 96).

      The court finds that Kramer is not entitled to the benefit of the equitable tolling doctrine. Kramer asserts that equity demands a relaxed filing deadline because "defendants have affirmatively acted with misleading statements from the outset.  They have acted to conceal from this applicant (and others) that 37 C.F.R. 10.2(c) review was available and attempted to deceive me into believing that I should bypass administrative process and seek judicial review prematurely."  Pl.'s Opp'n at 7.  There is, however, nothing in the pleadings or the record to support such an inference.  If anything, Kramer's argument appears to suggest that defendants attempted to induce him to file *earlier* than he did by concealing his administrative options.  As discussed *supra*, however, the PTO reviewed Kramer's examination twice and Kramer has not provided the court any reason to conclude that additional administrative review was available.

      Moreover, both the October 25, 2004, and February 17, 2005 decisions by the PTO indicate that they represent "final agency action" and that "they will be reviewable under 35 U.S.C. § 32."  *See* Am. Compl. Ex. 9 (Oct. 25, 2004 Decision); Am. Compl. Ex. 6 (Feb. 17, 2005

10

Decision). Accordingly, Kramer was advised to consult § 32 to determine what, if any, filing requirements existed for commencing a civil action. That he did not do so does not militate in favor of affording him the benefit of equitable relief. Furthermore, PTO's responses to Kramer's letters dated February 28, 2005, and April 8, 2005, do not in anyway affect the calculation of the filing period. Neither letter calls into question the finality of the October 25, 2004, or February 17, 2005, decisions. Rather, both letters unequivocally reinforce the earlier determinations and indicate that no further administrative review is available.[9] Consequently, the court holds that Kramer did not comply with the applicable time limitations and is not entitled to equitable tolling, therefore his complaint is dismissed.

**B. Motion to Amend**

Perhaps concerned that the court would dismiss his amended complaint, Kramer moves for leave to file a second amended complaint.[10]

A decision to grant such leave is within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977). Leave is to be freely

---

[9] While it is true that the PTO's March 28, 2005, and May 18, 2005, letters in response to Kramer's pleas for additional administrative review do provide inconsistent statutory authority for their refusal to further consider Kramer's objections to his failing grade on the patent bar examination, the overall message in both is the same—"The decisions on October 25, 2004 and February 17, 2005 fully addressed the petitioner's arguments." Am. Compl. Ex. 1 (May 18, 2005 Letter); *see also* Am. Compl. Ex. 3 (Mar. 28, 2005 Letter). It is inconsequential that both letters discuss the subsequent changes to the patent exam review procedure that eliminated the availability of regrading since Kramer had already had his exam regraded. Perhaps the language was unnecessary, but it was not sufficiently confusing to excuse Kramer's late filing.

[10] A party seeking to amend her complaint a second time may do so only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a).

given, however, if a court denies a plaintiff's motion for leave to amend, the court must provide a sufficiently compelling reason for the denial. Adequate reasons are: undue delay, undue prejudice to the non-moving party, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment. *See Foman*, 371 U.S. at 182; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Here, the court denies Kramer's motion because the time-related inadequacies in his complaint cannot be remedied, therefore amendment would be futile. *See Rivers v. Montgomery*, 842 F. Supp. 1, 1 (D.D.C. 1993) (denying *pro se* plaintiff leave to amend his complaint where timing defects could not be rectified).

### III.  CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss (Dkt. #4) is granted, and Kramer's motion for leave to file a second amended complaint (Dkt. #18) is denied. An appropriate order accompanies this memorandum.

                                      Henry H. Kennedy, Jr.
                                      United States District Judge

Dated: August 9, 2006